1                    **UNITED STATES DISTRICT COURT**
                     **WESTERN DISTRICT OF NEW YORK**
2
UNITED STATES OF AMERICA,          )
3                                  ) Case No. 1:20-CR-00029-3
                                   )            (RJA)(HKS)
4                    Plaintiff,    )
                                   )
5    vs.                           ) December 21st, 2022
                                   ) 2:00 p.m.
6    DAVID BURGIN,                 )
                                   )
7                    Defendant.    )

8
                  **TRANSCRIPT OF EVIDENTIARY HEARING**
9         **BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.**
                  **UNITED STATES MAGISTRATE JUDGE**
10

11   <u>APPEARANCES</u>:

12   For the Plaintiff:    TRINI E. ROSS, ESQ.
                          UNITED STATES ATTORNEY
13                        BY:  EVAN GLABERSON, ESQ.
                             TIMOTHY LYNCH, ESQ.
14                        ASSISTANT UNITED STATES ATTORNEYS
                          138 Delaware Avenue
15                        Buffalo, NY 14202

16   For the Defendant:   Donald M. Thompson, Esq.
                          16 West Main Street, Suite 243
17                        Rochester, NY 14614

18                        Harrington and Mahoney
                          By:  James P. Harrington, Esq.
19                        70 Niagara Street
                          Third Floor
20                        Buffalo, NY 14202

21   Audio Recorder:      LLANE GUIDOTTI

22   Transcriber:         MEGAN E. PELKA, RPR
                          Robert H. Jackson US Courthouse
23                        2 Niagara Square
                          Buffalo, NY 14202
24                        (716) 229-0880

25           Proceedings recorded with electronic sound recording,
     transcript prepared with computer-aided transcription.

| | | |
|---|---|---|
| 02:04PM | 1 | THE CLERK:  This is United States v. David Burgin, |
| 02:05PM | 2 | docket number 20-CR-29.  This is a continuation of the |
| 02:05PM | 3 | evidentiary hearing.  Assistant United States Attorneys |
| 02:05PM | 4 | Timothy Lynch and Evan Glaberson appearing on behalf of the |
| 02:05PM | 5 | government and James Harrington and Donald Thompson appearing |
| 02:05PM | 6 | with defendant. |
| 02:05PM | 7 | THE COURT:  Good afternoon. |
| 02:05PM | 8 | MR. HARRINGTON:  Good afternoon, Judge. |
| 02:05PM | 9 | MR. LYNCH:  Good afternoon, Judge. |
| 02:05PM | 10 | THE COURT:  The government, having rested, defense |
| 02:05PM | 11 | ready to proceed? |
| 02:05PM | 12 | MR. HARRINGTON:  We are, Judge. |
| 02:05PM | 13 | THE COURT:  All right.  Mr. Harrington? |
| 02:05PM | 14 | MR. HARRINGTON:  Judge, we call Judge Kenneth Case. |
| 02:05PM | 15 | MR. GLABERSON:  And Your Honor, before we start, I |
| 02:06PM | 16 | just wanted to relay that -- and we've spoken to |
| 02:06PM | 17 | Mr. Harrington about this -- yesterday evening, I got an |
| 02:06PM | 18 | email -- a call from some attorneys with the Office of Court |
| 02:06PM | 19 | Administration. |
| 02:06PM | 20 | THE COURT:  Why am I not surprised? |
| 02:06PM | 21 | MR. LYNCH:  Well, it's not bad.  Let him finish. |
| 02:06PM | 22 | It's not as bad as you might think, Judge. |
| 02:06PM | 23 | MR. GLABERSON:  So, the way I understand it, they |
| 02:06PM | 24 | don't have any objection to Judge Case testifying as a fact |
| 02:06PM | 25 | witness, and the only concern they wanted to convey -- and, |

02:06PM   1    from our perspective, we would object to these questions as

02:06PM   2    well as kind of beyond the scope of the hearing -- is

02:06PM   3    questions that get into the Judge's deliberative process such

02:06PM   4    as hypotheticals that ask what he would have done or about his

02:06PM   5    thought process or thinking in making decisions.  We've

02:07PM   6    conveyed that to Mr. Harrington and I believe these same folks

02:07PM   7    that have spoken to Judge Case about this as well.

02:07PM   8        So, we just wanted to convey that to the Court here that,

02:07PM   9    you know, what we'd expect, at least, is the Judge to be asked

02:07PM  10    questions about factually what happened on that evening and --

02:07PM  11    with these documents, rather than into his deliberative

02:07PM  12    thought process.

02:07PM  13             THE COURT:  All right.  Let the record reflect that

02:07PM  14    the Office of Court Administration and the State of New York's

02:07PM  15    message has been received.  Judge Case?

02:08PM  16    (The witness was sworn at 2:36 p.m.)

02:08PM  17             THE COURT:  Please be seated.  State your full name

02:08PM  18    for the record and spell it, please.

02:08PM  19             THE WITNESS:  Kenneth F. Case, C-A-S-E.

02:08PM  20             THE COURT:  Mr. Harrington?

02:09PM  21             MR. HARRINGTON:  Judge, before we begin with the

02:09PM  22    testimony from Judge Case, I told you yesterday that the

02:09PM  23    deputy chief clerk of the Erie County Clerk's Office advised

02:09PM  24    me that she would give me the original search warrants'

02:09PM  25    applications and returns to Judge Case granted, and he has

02:09PM 1    handed me those.  And it's our understanding that they would

02:09PM 2    like the originals back for the clerk's office records.  And

02:09PM 3    so, to the -- I think the main -- we have copies, obviously,

02:10PM 4    that are in evidence already.  And we have -- those are true

02:10PM 5    and accurate copies.  We don't dispute that.

02:10PM 6        The main issue for them bringing here was because of the

02:10PM 7    Wite Out on the one search warrant.  So, I have these here.

02:10PM 8    Mr. Lynch has just taken a quick look at them.  And so, fairly

02:10PM 9    soon into his testimony, we'll bring that up.  I don't know

02:10PM 10   how you want me to mark this.

02:10PM 11           THE COURT:  I would suggest we not mark what is

02:10PM 12   really an official document now of the Erie County Clerk's

02:10PM 13   Office.  I can verbally reflect on the record what is

02:11PM 14   happening.  I assume you're going to put that on the ELMO when

02:11PM 15   questioning --

02:11PM 16           MR. HARRINGTON:  Right.  And you may want to inspect

02:11PM 17   it, Judge.  That's all.

02:11PM 18           THE COURT:  I'll want to take a look at it.  And I --

02:11PM 19           MR. HARRINGTON:  I could put a mark on the cover page

02:11PM 20   on this and then we could, like --

02:11PM 21           THE COURT:  All right.  And then, I'm assuming you're

02:11PM 22   going to give it to Judge Case to return to the clerk's

02:11PM 23   office.

02:11PM 24           MR. HARRINGTON:  Correct.  Correct.  Yes.

02:11PM 25           THE COURT:  All right.  So, we have a chain of

02:11PM   1   custody.  So, if you want to mark it as Defendant's Exhibit P.

02:11PM   2           MR. HARRINGTON:  Okay.

02:12PM   3           THE COURT:  O having been the last Defendant's

02:13PM   4   Exhibit.

02:13PM   5

02:08PM   6                        DIRECT EXAMINATION

02:08PM   7

02:13PM   8   BY MR. HARRINGTON:

02:13PM   9   Q.  Judge Case, could you tell the Court what you do for a

02:13PM  10   living?

02:13PM  11   A.  I'm an Erie County Court Judge.

02:13PM  12   Q.  How long have been an Erie County Court Judge?

02:13PM  13   A.  I began my term January 1st of 2011.

02:13PM  14   Q.  And, today, were you designated as a courier to bring

02:13PM  15   some original records from the Erie County Clerk's Office to

02:13PM  16   the Court?

02:13PM  17   A.  Yes.

02:13PM  18   Q.  Let me show you Defendant's Exhibit P, and ask you if

02:13PM  19   that is -- those are the documents that you brought with you

02:14PM  20   today?

02:14PM  21   A.  I did.  This is the original, and she also gave me

02:14PM  22   another packet, which is a certified copy of the original,

02:14PM  23   but yes.

02:14PM  24   Q.  Now, Judge Case, could you tell us what your education

02:14PM  25   is?

02:14PM   1   A.   I graduated from Saint Michael's College with a BA in

02:14PM   2   Business and Economics, and then I graduated from the Western

02:14PM   3   New England University School of Law.  I graduated from

02:14PM   4   college in '84 and law school in '87.

02:14PM   5   Q.   And after you graduated from law school, what did you do?

02:14PM   6   A.   I did -- worked for my father's firm, which was a civil

02:15PM   7   litigation firm in Albany, for two and a half years.

02:15PM   8   Q.   What was the name of that firm?

02:15PM   9   A.   Carter, Convoy, Bartwell, Case, and Blackmore at the

02:15PM   10  time.  It changed a few times.

02:15PM   11  Q.   And then after that?

02:15PM   12  A.   After that, I moved out here and I worked for John Condon

02:15PM   13  doing criminal defense work and Mike Tohari (phonetic).  I

02:15PM   14  did that only for about a year, and I thought I was going to

02:15PM   15  go into the District Attorney's Office, but I had worked on a

02:16PM   16  case that created a conflict of interest, so I was not able

02:16PM   17  to.  I was hired and fired before I started.

02:16PM   18       And, then, I worked for West Publishing Company for three

02:16PM   19  and a half years, and then finally went to the DA's office

02:16PM   20  from 1994 through 2007.  In 2007, I went to the Commission on

02:16PM   21  Judicial Conduct, and then, in my infinite wisdom, I ran for

02:16PM   22  district attorney in 2008 and lost, and I worked for --

02:16PM   23  briefly for, I think at the time, it was called Bender

02:16PM   24  Crawford and Bender doing more civil litigation.  And then, I

02:16PM   25  was hired to create and manage the Felony Office of Legal Aid

02:17PM   1   from 2008 until 2000 -- well, when I was elected to the bench.

02:17PM   2   Q.  When you started that narrative, you said you moved out

02:17PM   3   here.  I take it here is Western New York?

02:17PM   4   A.  Correct.  Yes.

02:17PM   5   Q.  And how long were you in the DA's office?

02:17PM   6   A.  Thirteen and a half years.

02:17PM   7   Q.  And what responsibility did you have there?

02:17PM   8   A.  Well, I worked my way up through the ranks.  I started in

02:17PM   9   city court.  Then, I went to the Justice Court Bureau, the

02:17PM  10   Grand Jury bureau, felony trials, and then I spent the last

02:17PM  11   seven years in the Homicide Bureau.

02:17PM  12   Q.  And in the course of your work in the district attorney's

02:17PM  13   office, did you prepare search warrants and applications?

02:17PM  14   A.  Often, particularly in the Homicide Bureau.

02:18PM  15   Q.  And did you also review the work product of law

02:18PM  16   enforcement officers and other assistant district attorneys

02:18PM  17   in preparing search warrants?

02:18PM  18   A.  Yes.

02:18PM  19   Q.  And can you give us any idea of how many search warrants

02:18PM  20   you have prepared over the years?

02:18PM  21   A.  Probably about 150.

02:18PM  22   Q.  So, obviously, you are familiar with the Criminal

02:18PM  23   Procedure Law Section 690 and all the subsections; is that

02:18PM  24   right?

02:18PM  25   A.  Yes.

CASE -- BY MR. HARRINGTON -- 12/21/2022

02:18PM   1   Q.  And as an Erie County Court Judge, what is the primary

02:18PM   2   responsibility you have there, as what type of judge?

02:18PM   3   A.  With regard to search warrants?

02:19PM   4   Q.  Yes.

02:19PM   5   A.  So, we handle appeals from the lower courts, from

02:19PM   6   village, town, and city courts, and handle some *in rems*, some

02:19PM   7   foreclosures.  I do acting supreme for expedited

02:19PM   8   matrimonials, but 95 percent of what I do is handling

02:19PM   9   criminal cases.

02:19PM  10   Q.  And those would be on the felony level; is that right?

02:19PM  11   A.  Yes.  Correct.

02:19PM  12   Q.  And in your role as an Erie County Court Judge, are you

02:19PM  13   asked to sign search warrants?

02:19PM  14   A.  Yes.

02:19PM  15   Q.  Are you also asked to make determinations about whether

02:19PM  16   search warrants are sufficient or improper in some way in

02:20PM  17   suppression hearings?

02:20PM  18   A.  Yes.

02:20PM  19   Q.  And do you have any idea of how many search warrants you

02:20PM  20   might have reviewed in the course of being a judge?  And I'm

02:20PM  21   talking now about the -- in litigation?

02:20PM  22   A.  Okay, not the ones I've signed, but the ones -- oh, boy.

02:20PM  23   I'd say perhaps about 50.

02:20PM  24   Q.  And do you have any idea of how many search warrants you

02:20PM  25   have signed as an Erie County Court Judge?

CASE -- BY MR. HARRINGTON -- 12/21/2022

8

02:20PM 1    A.  Over 500.

02:21PM 2    Q.  And can you tell me in people bringing you search warrant

02:21PM 3    applications, are those always district attorneys that bring

02:21PM 4    them to you?

02:21PM 5    A.  Most of the time, it's someone from law enforcement, a

02:21PM 6    sheriff department or trooper or local police agency.

02:21PM 7    Q.  Without the assistance of the district attorney's office,

02:21PM 8    correct?

02:21PM 9    A.  Correct.

02:21PM 10   Q.  And do you have a -- well, first of all, let me ask you

02:21PM 11   generally, in the -- Erie County Court is part of the New

02:22PM 12   York State Office of Court Administration Judicial System; is

02:22PM 13   that right?

02:22PM 14   A.  Yes.

02:22PM 15   Q.  And in New York's very screwed up system, we have

02:22PM 16   concurrent courts that handle the same type of matters; is

02:22PM 17   that true?

02:22PM 18   A.  True.

02:22PM 19   Q.  So, we have county court and supreme court judges who do

02:22PM 20   the same type of work for a felony case, is that right?

02:22PM 21   A.  Yes.

02:22PM 22   Q.  So that a case might be charged and may go to supreme

02:22PM 23   court judge or it may go to a county court judge; is that

02:22PM 24   right?

02:22PM 25   A.  Correct.

02:22PM    1    Q.  And can you tell me, is somebody in charge of search

02:22PM    2    warrants in Erie County or the Eighth Judicial District, and

02:22PM    3    I'm talking about managing them, (inaudible) and all the rest

02:23PM    4    of them?

02:23PM    5    A.  Not that I'm aware of.

02:23PM    6    Q.  Do you know are there any set procedures in Erie County

02:23PM    7    for how judges are selected for a search warrant application?

02:23PM    8    A.  Generally, it would be the responsibility of whoever is

02:23PM    9    the special term judge, which is, all 365 days of the year,

02:23PM   10    we have a judge designated as a special term judge that

02:23PM   11    handles all the motions and new matters coming in, and that

02:23PM   12    is usually the first call for law enforcement, and if they

02:23PM   13    don't get an answer, then they start going down the list and

02:23PM   14    look for other judges that might be available.

02:23PM   15    Q.  All right.  Is there any central database that you're

02:24PM   16    aware of that keeps track of search warrants and how many

02:24PM   17    went to Judge Case how many went to Judge DiTullio, anything

02:24PM   18    like that?

02:24PM   19    A.  Not that I'm aware of.  No.

02:24PM   20    Q.  And is there any particular system of keeping track of

02:24PM   21    the paperwork for search warrants such as the original

02:24PM   22    warrants, the original applications, the original returns?

02:24PM   23    A.  There's supposed to be filed with the clerk's office, but

02:24PM   24    prior to that, I mean, I keep my in camera notes if there are

02:24PM   25    any and a copy of the search warrant usually, if I'm in the

02:24PM   1   office, in a locked drawer until I hear back from the police

02:24PM   2   officer that they had been returned.  And then, once I have

02:25PM   3   the original application warrant and return, my secretary

02:25PM   4   files the -- all that material with the clerk's office.

02:25PM   5   Q.  And is that your personal system?

02:25PM   6   A.  Yes.

02:26PM   7   Q.  Are you aware what the other judges do?

02:26PM   8   A.  I don't have any idea.

02:26PM   9   Q.  And you just mentioned that that was in the case of an in

02:26PM   10   camera warrant application.  Could you tell us what that is?

02:26PM   11   A.  If they bring in a confidential informant before me for

02:26PM   12   live testimony, where I would have either have my

02:27PM   13   stenographer or I'd take the best notes that I'm able to take

02:27PM   14   during a question-and-answer.

02:27PM   15   Q.  And those are the notes or recordings that you said you

02:27PM   16   keep; is that right?

02:27PM   17   A.  Correct.

02:27PM   18   Q.  With a copy of the search warrant; is that right?

02:27PM   19   A.  Yes.

02:27PM   20   Q.  Do you keep the original or a copy?

02:27PM   21   A.  I keep a copy of the application and warrant with my

02:27PM   22   notes or the transcript.

02:27PM   23   Q.  And then, after you have the return, you file those in

02:27PM   24   the -- you have your staff file those in the Erie County

02:27PM   25   Clerk's Office?

02:27PM   1   A.   Correct.

02:27PM   2   Q.   Now, what about a search warrant application that's not

02:27PM   3   what you just called in camera?  How is that processed?

02:28PM   4   A.   So, in that case, I would just keep a copy of the

02:28PM   5   application and the warrant and wait, again, for the police

02:28PM   6   officer to bring the return in and then, I would have the --

02:28PM   7   ask them for the originals, and those would be filed with the

02:28PM   8   clerk's office.

02:28PM   9   Q.   Do you direct the police officers to bring the originals

02:28PM  10   back to you with the return?

02:28PM  11   A.   Yes.

02:28PM  12   Q.   So, you don't tell them to file them directly in the Erie

02:28PM  13   County Clerk's Office?

02:28PM  14   A.   There's a small minority, I think, of law enforcement

02:29PM  15   agencies that file their own, but, for the most part, they're

02:29PM  16   relieved when I say we'll take care of the filing for you.

02:29PM  17   Q.   Now, if you know, have there been times when you have

02:29PM  18   signed search warrants and you never heard anything about

02:29PM  19   them again?

02:29PM  20   A.   Yes.

02:29PM  21   Q.   Had you ever gotten a return that says nothing was found?

02:29PM  22   A.   Yes.

02:29PM  23   Q.   How often does that happen?

02:29PM  24   A.   Maybe 20 percent, 25 percent.

02:29PM  25   Q.   And that should happen under the process that you have

02:29PM   1   outlined, correct?

02:29PM   2   A.   Yes.

02:29PM   3   Q.   Because an original search warrant application and return

02:30PM   4   in every search warrant should be filed with the clerk's

02:30PM   5   office; would that be correct, sir?

02:30PM   6   A.   Yes, correct.

02:30PM   7   Q.   Now, are there times when you sign search warrants when

02:30PM   8   you're not in your office?

02:30PM   9   A.   Yes.

02:30PM  10   Q.   And where else have you signed search warrants?

02:30PM  11   A.   I've been asked to go to the CPS building, which is the

02:30PM  12   building utilized by the sheriff's department, if they have a

02:30PM  13   confidential informant that they don't want to bring out into

02:30PM  14   public, for lack of a better way of saying it.  So, I will go

02:30PM  15   to there, to the CPS building, and they have a video audio

02:30PM  16   recording system that they use.  I've also been pulled out of

02:31PM  17   dinner at The Left Bank, and signed one at a hockey game,

02:31PM  18   so -- and many at my home.

02:31PM  19   Q.   And do you know -- do you keep a record of how many

02:31PM  20   search warrants you've signed for each agency or department

02:31PM  21   such as state police, Erie County Sheriffs, Buffalo Police?

02:31PM  22   A.   No.

02:31PM  23   Q.   Have you signed many warrants for detectives in the Erie

02:31PM  24   County Sheriff's Office Narcotics Bureau?

02:31PM  25   A.   I think I probably signed in the last -- going back a

02:31PM   1   year ago, and for my first ten years on the bench, I

02:31PM   2   probably -- I feel like I signed the majority of their

02:32PM   3   warrants, but --

02:32PM   4   Q.  And you just said going back 10 years.  Are you in your

02:32PM   5   second term as a judge?

02:32PM   6   A.  I just started my second term in 2021.

02:32PM   7   Q.  Your terms are 10 years?

02:32PM   8   A.  Yes.

02:32PM   9   Q.  Now, has anyone told you from the sheriff's department

02:32PM   10  why you would have signed the majority of these warrants?

02:32PM   11  A.  No, I think because I was more easily accessed than some,

02:32PM   12  but I'm not sure.

02:32PM   13  Q.  Have you ever refused to sign a search warrant

02:32PM   14  application?

02:32PM   15  A.  You mean because it was insufficient or -- yes, I have.

02:32PM   16  Q.  What percentage of your cases would that happen?

02:32PM   17  A.  Probably a total of five in all of the warrants I've

02:33PM   18  done.

02:33PM   19  Q.  Five applications or five search warrants?

02:33PM   20  A.  Yeah.  Yes.  Five search warrants I probably rejected for

02:33PM   21  being insufficient, and I've modified some, but they bring

02:33PM   22  them to me and I'll amend them if I think there's something

02:33PM   23  missing.

02:33PM   24  Q.  Right.  Now, if you were at home and someone comes and

02:47PM   25  brings a search warrant and an application to you, do you

02:47PM   1   have the ability to keep a copy of those forms too?

02:47PM   2   A.  I don't.  And so, in that case, I would tell the officer

02:47PM   3   to bring me a copy to my office at the next business day.

02:48PM   4   So, I know, particularly, like in this case, I don't know on

02:48PM   5   the occasion that I signed this where I was, but I know it

02:48PM   6   was signed at -- one was at 8:30.  I think one was at 9:48

02:48PM   7   p.m.  So, I'm assuming, on that occasion, I was at home, but

02:48PM   8   I don't obviously know.  But, obviously, I wasn't in my

02:48PM   9   office.

02:48PM  10   Q.  Have you ever told the sheriff's detectives or anybody

02:48PM  11   else to bring a second copy with them so that you could keep

02:48PM  12   a copy even if it was not the original?

02:48PM  13   A.  I don't think I've done that.  I usually ask for the copy

02:49PM  14   after it's been signed.

02:49PM  15   Q.  So that when you give the officer the original warrant,

02:49PM  16   you're relying on their integrity that that's not going to be

02:49PM  17   changed; is that correct?

02:49PM  18   A.  Correct.

02:49PM  19   Q.  When you mentioned an in camera search warrant with an

02:49PM  20   informant, under the Criminal Procedure Law, is that the only

02:49PM  21   type of in camera warrant that could be held just with an

02:49PM  22   informant?

02:49PM  23   A.  Well, I mean, sometimes the informant can be law

02:49PM  24   enforcement.

02:49PM  25   Q.  Right.  So, it doesn't have to be, like, a confidential

02:49PM    1    informant, correct?

02:49PM    2    A.   True.   Right.

02:50PM    3    Q.   And the statute doesn't say anything about an informant,

02:50PM    4    right?

02:50PM    5    A.   True.   No.   Correct.

02:50PM    6    Q.   Just talks about a formal application?

02:50PM    7    A.   Correct.

02:50PM    8    Q.   Now, when an officer comes to you and has a search

02:50PM    9    warrant application that's not in camera, right, do you have

02:50PM   10    a standard practice that you follow with them in terms of how

02:50PM   11    you review it, what you say to them, what you don't say?

02:50PM   12    A.   Really, I just -- I read the four corners of the

02:50PM   13    application to see if, in my opinion, they're sufficient and,

02:50PM   14    you know, if I feel like there's a gap somewhere in the

02:50PM   15    factual part of the affidavit, I may ask them to clarify

02:51PM   16    something and then make a determination as to whether I need

02:51PM   17    to amend the application or not or whether they need to amend

02:51PM   18    it, I guess is a better way of saying it, but -- and I would

02:51PM   19    let them know, I think you need this or you need more of

02:51PM   20    that.

02:51PM   21    Q.   So, if somebody comes to you and you look at it and you

02:51PM   22    feel there's something missing, right, you ask the person

02:51PM   23    bringing you the application some questions about what's

02:51PM   24    missing; is that right?

02:51PM   25            MR. GLABERSON:   Objection.   I think we're getting

02:51PM   1   close to a call for speculation and deliberative process at

02:51PM   2   this point asking hypotheticals.

02:51PM   3           MR. HARRINGTON:  Judge, it's not deliberative

02:51PM   4   process.  It's just the process.

02:51PM   5           THE COURT:  Right.  Yeah.  It's a mechanical process.

02:52PM   6   Overruled.

02:52PM   7           THE WITNESS:  Yes.

02:52PM   8   BY MR. HARRINGTON:

02:52PM   9   Q.  And can you tell me -- did you consider that part of the

02:52PM  10   in camera -- an in camera process or not?

02:52PM  11   A.  I don't -- in that case, I thought that if amendments

02:53PM  12   were made, that the amendments speak for themselves, but I

02:53PM  13   guess -- so, I don't make -- other than that record, there

02:53PM  14   isn't another record produced.

02:53PM  15   Q.  So, if some information is given to you, it is written

02:53PM  16   onto the application, correct, that you -- correct, right?

02:53PM  17   A.  Correct.

02:53PM  18   Q.  And then, that becomes part of document itself where

02:53PM  19   that's contained right in the application so someone looking

02:53PM  20   at it later can see, correct?

02:53PM  21   A.  Correct.

02:53PM  22   Q.  So, in terms of your granting a search warrant, does

02:53PM  23   information provided by the police officers that doesn't go

02:54PM  24   into the warrant, is that ever considered by you in terms of

02:54PM  25   granting a warrant?

02:54PM  1   A.  So, you're saying it's not an in camera?

02:54PM  2   Q.  It's a regular police bringing an application to you, and

02:54PM  3   they come, and you look at it, there seems to be something

02:54PM  4   missing.

02:54PM  5   A.  Okay.

02:54PM  6   Q.  And you ask them some questions.  They answer your

02:54PM  7   questions, but they gave you other information; perhaps about

02:54PM  8   the defendant, perhaps about something else, right, but

02:54PM  9   doesn't make its way into the application.  Does that -- is

02:54PM  10  that part of your deliberative process in terms of granting

02:54PM  11  the search warrant?

02:54PM  12          MR. GLABERSON:  Objection.

02:54PM  13          THE COURT:  I understand the question, and I

02:55PM  14  understand the objection, and I'm cluttering my mind with a

02:55PM  15  third process, and it's basically what I do when I'm presented

02:55PM  16  with a warrant that -- and the way I go about it.

02:55PM  17      Let me preface my ruling with this.  I treat a warrant, a

02:55PM  18  search warrant, an arrest warrant, be it federal or be it

02:55PM  19  state, as being the document within its four corners that must

02:56PM  20  comply with the Fourth Amendment or the state procedural laws

02:56PM  21  as well as substantive laws if it's a state warrant.  And so,

02:56PM  22  anything outside of that, for purposes of establishing

02:56PM  23  probable cause if it's not reflected somehow, would create, in

02:57PM  24  my legal opinion, an invalid warrant.  So, I'm going to

02:57PM  25  sustain the objection.

02:57PM    1            MR. GLABERSON:  And Your Honor, if I could just --

02:57PM    2    from the government's perspective, we're here to talk about a

02:57PM    3    specific warrant and what happened on the specific occasion.

02:57PM    4    And if we could -- understanding Judge Case's background,

02:57PM    5    while interesting, we can kind of focus the questioning on the

02:57PM    6    facts at issue that Judge Case is here to testify about.

02:57PM    7            THE COURT:  Let me add this.  And I do this only as

02:57PM    8    clarification for the record and not in any way trying to

02:57PM    9    interject myself into the processes followed by either Judge

02:58PM   10    Case or any other judge, state or federal.

02:58PM   11        Normally -- and I've been called upon numerous times to

02:58PM   12    review a state court issued warrant based on information given

02:58PM   13    by a confidential informant when a motion to suppress in the

02:58PM   14    federal case has been made attacking that warrant.

02:58PM   15        And, normally, what I have observed reviewing those

02:58PM   16    warrants, as well as the judge's handwritten notes or a

02:58PM   17    transcription of an audio recording or a video audio recording

02:58PM   18    that I have also reviewed, normally, what happens is the

02:58PM   19    police officer will say that he has information from a

02:58PM   20    reliable confidential informant that lists then what that

02:59PM   21    information is so it's contained in the written application or

02:59PM   22    affidavit.

02:59PM   23        And then the state court issuing judge may ask the

02:59PM   24    informant in an in camera proceeding about what is contained

02:59PM   25    in the officer's affidavit or application and make notes that

02:59PM  1   that was corroborated by the confidential informant.  But, as

02:59PM  2   far as new information to be used to make a finding of

02:59PM  3   probable cause, if it's not within the application and the

02:59PM  4   warrant itself, it would not be proper.

02:59PM  5       So, let's focus on the February 19th, 2020 warrant issued,

02:59PM  6   which is Government Exhibit 8, and then, the warrant later in

02:59PM  7   the evening, which is Government Exhibit 9.  And, as I

03:00PM  8   understand it, in both warrants, there was no confidential

03:00PM  9   informant.

03:00PM  10          MR. HARRINGTON:  You might find this hard to believe,

03:00PM  11  but I was actually there (inaudible).

03:00PM  12          THE COURT:  All right.

03:00PM  13  BY MR. HARRINGTON:

03:00PM  14  Q.  So, Judge Case, you have looked at Defendant's Exhibit P,

03:00PM  15  which is what you brought from the Erie County Clerk's

03:00PM  16  Office, correct?

03:00PM  17  A.  Yes.

03:00PM  18  Q.  And, in fact, you and I have met several times to talk

03:00PM  19  about these search warrants, correct?

03:00PM  20  A.  Yes.

03:00PM  21  Q.  And you have a copy to look at, right?

03:00PM  22  A.  Yes.

03:00PM  23  Q.  So, on February the 19th of 2020, when these warrants

03:00PM  24  were signed, do you recall where it was that you were when

03:00PM  25  these warrants were signed?

03:00PM  1   A.   I don't have any specific recollection as to where I was

03:01PM  2   on that particular occasion.

03:01PM  3   Q.   Okay.  We had testimony from Detective Patrick McMahon

03:01PM  4   who is the affiant for the application and he said these were

03:01PM  5   done at your house.  Based upon his representation, would

03:01PM  6   that seem to fit with what you believe happened?

03:01PM  7   A.   Yes.

03:01PM  8   Q.   Now, can you tell me, did you have Wite Out at your house

03:01PM  9   back then?

03:01PM  10  A.   No.

03:01PM  11  Q.   No?  Did you have a copy machine then?

03:01PM  12  A.   I did not.

03:01PM  13  Q.   Judge Case, I'm going to show you the cover sheet for

03:02PM  14  Defendant's Exhibit P and ask you just to look at that --

03:02PM  15  A.   Sure.

03:02PM  16  Q.   -- to yourself?

03:02PM  17       MR. HARRINGTON:  Judge, I'm going to offer this into

03:02PM  18  evidence, the copy.

03:02PM  19       MR. LYNCH:  I think Judge Case said he brought a

03:02PM  20  certified copy, correct?

03:02PM  21       THE WITNESS:  I do.  I left the folder in the back

03:02PM  22  but, yeah, there's a certified copy in there.

03:03PM  23       THE COURT:  In the meantime, let me look at the

03:03PM  24  original.

03:03PM  25       MR. LYNCH:  Judge, what should we mark the certified

03:03PM    1    copy?

03:03PM    2              THE COURT:  Let's mark it P-1.

03:03PM    3              MR. HARRINGTON:  Okay.  I'll do that.

03:03PM    4              THE WITNESS:  Okay.

03:03PM    5    BY MR. HARRINGTON:

03:03PM    6    Q.  Judge Case, just -- if you could look at --

03:03PM    7              MR. HARRINGTON:  I've offered that.

03:03PM    8              MR. GLABERSON:  No objection.

03:03PM    9              MR. HARRINGTON:  Is that received, Judge?

03:03PM   10              THE COURT:  Pardon me?

03:03PM   11              MR. HARRINGTON:  Is that received?  I offered.  They

03:03PM   12    don't object.

03:03PM   13              THE COURT:  There being no objection, Defendant's

03:03PM   14    Exhibit P-1 is received in evidence.

03:04PM   15    (Defendant's Exhibit P-1 was received in evidence.)

03:04PM   16

03:04PM   17    BY MR. HARRINGTON:

03:04PM   18    Q.  Judge Case, could you look at just the first sheet, the

03:04PM   19    cover sheet here?

03:04PM   20    A.  Yes.

03:04PM   21    Q.  Does that indicate when it was that the search warrant

03:04PM   22    and applications were filed?

03:04PM   23    A.  It says June 9th of 2021.

03:04PM   24    Q.  Could you look into the package there and find the

03:04PM   25    returns that are -- the first return is fine.

03:04PM  1          MR. LYNCH:  Judge, could we get a copy of the -- just

03:04PM  2  because we don't have a copy of the packet that Judge Case is

03:04PM  3  looking at.

03:04PM  4          THE WITNESS:  Sure.

03:05PM  5          THE COURT:  We can put it on the ELMO for now.

03:05PM  6          MR. LYNCH:  Okay.

03:05PM  7          THE COURT:  Before you proceed any further,

03:05PM  8  Mr. Harrington, I want the record to reflect that the original

03:05PM  9  search warrant package, which was marked Defendant's Exhibit

03:05PM  10  P, as in Paul, my review of that packet, more specifically,

03:05PM  11  the search warrant itself issued by the Honorable Kenneth F.

03:05PM  12  Case on February 19th, 2020 at 8:32 p.m. establishes, to my

03:06PM  13  satisfaction, that, in the first page of the warrant

03:06PM  14  describing the premises that is to be searched, there is the

03:06PM  15  Wite Out after the words 56 Grimes Street that has been

03:06PM  16  discussed in the testimony of prior witnesses.  But I also

03:06PM  17  note for the record that I can see through that Wite Out and I

03:06PM  18  see underneath it the words lower front.  Ms. Guidotti?

03:06PM  19  BY MR. HARRINGTON:

03:06PM  20  Q.  Judge Case, do you have any recollection of whiting out

03:06PM  21  part of the first warrant that you signed that night?

03:06PM  22  A.  I do not.

03:06PM  23  Q.  Judge Case, let me show you a page from Exhibit P-1,

03:07PM  24  Defendant's Exhibit P-1, which is part of the package that

03:07PM  25  you brought over with you.  Can you see that that document

03:07PM    1    says the return and also says inventory; is that correct?

03:07PM    2    A.  Correct.

03:07PM    3    Q.  Do you recognize the signature there?

03:07PM    4    A.  I believe that's officer -- excuse me -- Deputy or

03:08PM    5    Detective McMahon, Pat McMahon.

03:08PM    6    Q.  And then going onto the next page at the top, it begins

03:08PM    7    26th day of February 2020; is that right?

03:08PM    8    A.  Yes.

03:08PM    9    Q.  And is that Detective McMahon's signature there?

03:08PM   10    A.  Yes.

03:08PM   11    Q.  Is that your signature underneath?

03:08PM   12    A.  Yes.

03:08PM   13    Q.  And what does that indicate to you?

03:08PM   14    A.  That he brought the return to me on February 26th.

03:08PM   15    Q.  You said your practice was you would take that and give

03:09PM   16    that to somebody in your staff and they would file it with

03:09PM   17    the clerk's office; is that right?

03:09PM   18    A.  Correct.

03:09PM   19    Q.  And going back again to the first page of P-1, it shows

03:09PM   20    the filing on June 9th, 2021, which is a year and some four

03:09PM   21    months later.  Do you have any explanation for that?

03:09PM   22    A.  I don't.

03:10PM   23         MR. HARRINGTON:  Judge, the reason I am taking so

03:10PM   24    long here is this doesn't seem to have, in this copy P-1, the

03:10PM   25    first search warrant.  There's a couple copies of the second

03:10PM   1   one.  If I could just have a different exhibit before.

03:11PM   2        MR. LYNCH:  Just want to use the original one?  We'd

03:11PM   3   prefer to use the one.

03:11PM   4        THE COURT:  If you're going to use the ELMO, the

03:11PM   5   original one will not, in any way, be subject to any

03:11PM   6   destruction, so.

03:12PM   7   BY MR. HARRINGTON:

03:12PM   8   Q.  Judge Case, I have on the ELMO a page from Exhibit P-1

03:12PM   9   which purports to be the first search warrant that you signed

03:12PM  10   on February the 19th of 2020, correct?

03:12PM  11   A.  Yes.

03:12PM  12   Q.  Now, at the top of the warrant, it says, search warrant

03:14PM  13   application, in camera hearing held; is that correct?

03:14PM  14   A.  Correct.

03:14PM  15   Q.  There was no in camera note, correct?

03:15PM  16   A.  Correct.

03:15PM  17   Q.  Do you know why that's there?

03:15PM  18   A.  For some reason, the form they used -- they frequently

03:15PM  19   use the in camera form and usually, I would cross that off,

03:15PM  20   but obviously, on this case, I did not cross that off.

03:15PM  21   Q.  And the designation on this exhibit, it says, to any

03:16PM  22   plaintiff or federal agent; is that right?

03:16PM  23   A.  Yes.

03:16PM  24   Q.  Does that satisfactory the Criminal Procedure Law for a

03:16PM  25   designation of a person to execute a warrant?

03:16PM  1    A.  Preferably, it should be a little more specific than

03:16PM  2    that.

03:16PM  3    Q.  Does it not require that you have to designate what

03:16PM  4    agency the person is from?

03:16PM  5    A.  Right.  Generally, it would be whatever agents or

03:16PM  6    agencies are involved in this.

03:16PM  7    Q.  If you can?

03:16PM  8    A.  Yes.

03:16PM  9    Q.  But you're supposed to be specific in the designation;

03:16PM  10   are you not?

03:16PM  11   A.  Correct.

03:16PM  12   Q.  And can you tell me, have you read Section 1.2 of the

03:16PM  13   Criminal Procedure Law that has the definition sections in it

03:17PM  14   in the course of your duties?

03:17PM  15   A.  Yes.

03:17PM  16         MR. GLABERSON:  Objection.  Relevance of the inquiry

03:17PM  17   about the Criminal Procedure Law for this hearing.

03:17PM  18         THE COURT:  Well, it goes to his underlying knowledge

03:17PM  19   as to the issuance of search warrants and what's required.

03:17PM  20   Overruled.

03:17PM  21   BY MR. HARRINGTON:

03:17PM  22   Q.  And can you tell me whether federal agents are included

03:17PM  23   in the definition of New York State Criminal Procedure Law?

03:17PM  24   A.  I believe they are.  I haven't looked at that section in

03:17PM  25   a while, but I believe it's any agency working in that region

03:17PM  1  that could be involved in the execution of the search

03:17PM  2  warrant.

03:17PM  3  Q.  And does that encompass all federal agents, like even

03:18PM  4  Fish and Wildlife or something else like that, do you know?

03:18PM  5  A.  Well, yeah.  Well, as I said, that should probably be

03:18PM  6  more specific than it is here.

03:18PM  7  Q.  Do you believe that you have the authority to give

03:18PM  8  federal agents the power to execute search warrants?

03:18PM  9          MR. GLABERSON:  Objection.

03:18PM  10         THE COURT:  Basis?

03:18PM  11         MR. GLABERSON:  Getting into the Judge's thought

03:18PM  12  process about his authority and what he can and cannot do

03:18PM  13  under the law.  And the purpose of this hearing deals with,

03:18PM  14  under federal law, whether this particular warrant is subject

03:18PM  15  to challenge by the defense.

03:18PM  16         THE COURT:  But the state warrant itself contains a

03:18PM  17  reference to federal agents, and he's merely asking him if the

03:19PM  18  Judge believed he had the authority to include the federal

03:19PM  19  agent in a warrant.  Overruled.

03:19PM  20         MR. GLABERSON:  And, as Your Honor said, this Court

03:19PM  21  is going to look at the four corners of the document and

03:19PM  22  write -- today, our understanding was, we were asking about

03:19PM  23  specifically alterations and what happened with this specific

03:19PM  24  document.

03:19PM  25         THE COURT:  But within the four corners of

03:19PM   1   Defendant's Exhibit P-1, as well as the same exhibit for the

03:19PM   2   government, Exhibit 8, there's a reference made in the search

03:19PM   3   warrant itself to a federal agent when it says in the name of

03:19PM   4   the People of the State of New York to any police officer or

03:19PM   5   federal agent.

03:19PM   6           MR. GLABERSON:  And there's no dispute that the

03:19PM   7   document says --

03:19PM   8           THE COURT:  And the question that I understand

03:19PM   9   Mr. Harrington putting to Judge Case is a provision he's

03:20PM  10   citing in New York State Criminal Procedure Law as to the

03:20PM  11   definitions of law enforcement officers, who would be defined

03:20PM  12   in that provision, that would be covered in the issuance of

03:20PM  13   the state search warrant.

03:20PM  14           MR. LYNCH:  But, Judge, as we noted in our papers,

03:20PM  15   Judge, there is Supreme Court cases that say, for instance,

03:20PM  16   *Elkins v. United States*, the test is one of federal law,

03:20PM  17   neither in large by what one state may have countenanced

03:20PM  18   diminished by what another may have colloquially suppressed.

03:21PM  19           THE COURT:  I said that yesterday on the record.

03:21PM  20           MR. LYNCH:  Right, so I guess --

03:21PM  21           THE COURT:  The question isn't going to the validity

03:21PM  22   of the warrant as I understand it right now.  And he's asking

03:21PM  23   the Judge what his understanding or knowledge is as to his

03:21PM  24   authority in issuing warrants to be executed by federal

03:21PM  25   agents.

03:21PM   1          MR. LYNCH:  But they made a claim in their papers

03:21PM   2   that they said that this was an invalid state warrant.  That's

03:21PM   3   what they claim in their papers.  We responded that state law

03:21PM   4   doesn't control.  The federal law is the law that must

03:21PM   5   control.  And so --

03:22PM   6          THE COURT:  I said that yesterday.

03:22PM   7          MR. LYNCH:  Right.  And we said it in our papers.

03:22PM   8   And I guess my point is that, we're going down the rode of

03:22PM   9   whether there were any deficiencies in a state procedural law

03:22PM  10   doesn't have any relevance to the issue of whether this was a

03:22PM  11   valid warrant under federal law.  That's our objection.

03:22PM  12          THE COURT:  I understand that.  That's what I

03:22PM  13   understand the law to be.  But his question at this moment is

03:22PM  14   basically a preliminary one asking the Judge what he

03:22PM  15   understood the provisions of Section 1.20 of New York State

03:22PM  16   Criminal Procedure Law provided, correct?

03:22PM  17          MR. HARRINGTON:  Yes, Judge.  But, Judge, there's

03:22PM  18   other issues that are involved here.  They have alleged good

03:23PM  19   faith on the part of the police officers based upon the

03:23PM  20   potential deficiencies in the warrant.  And --

03:23PM  21          THE COURT:  Right.  And they're basically relying on

03:23PM  22   *Leon*.

03:23PM  23          MR. HARRINGTON:  Right.

03:23PM  24          THE COURT:  And *Leon* stands for the proposition that

03:23PM  25   where law enforcement officers act in good faith, believing

03:23PM   1   they have a valid search warrant, it's the issue of whether

03:23PM   2   there's probable cause or not for the warrant is -- doesn't

03:23PM   3   require the application of the exclusionary rule, which would

03:23PM   4   result in suppression of the evidence.

03:23PM   5         MR. HARRINGTON:  But the events that happened here,

03:23PM   6   which you heard about for the last two days, show pretty gross

03:23PM   7   behavior on the part of people getting this warrant and

03:23PM   8   executing this warrant and flaunting all sorts of newer

03:23PM   9   federal procedures, and I have to be able to make a record of

03:24PM  10   it.  The whole situation --

03:24PM  11         THE COURT:  I understand that.

03:24PM  12         MR. HARRINGTON:  And even with the cases the Court

03:24PM  13   cited and Mr. Lynch has cited.

03:24PM  14         THE COURT:  I'm not stopping you from that, but I

03:24PM  15   don't see any allegations by the government, or anybody else

03:24PM  16   at this stage, to indicate that Judge Case has acted in any

03:24PM  17   type of reckless disregard that would bring into play the

03:24PM  18   question of whether *Leon* should apply or not.  He, himself,

03:24PM  19   has stated that perhaps that should have been more definitive,

03:24PM  20   that phrase any police officer or federal agent, but --

03:24PM  21         MR. HARRINGTON:  But, Judge, in this case, we have

03:25PM  22   somebody that you asked the government if they were going to

03:25PM  23   call Agent Webb.

03:25PM  24         THE COURT:  I know.  Your point is the law works when

03:25PM  25   people did something improper.  I don't see Judge Case signing

03:25PM   1   the warrant in the form that he signed it because it has the

03:25PM   2   words federal agent means he did something wrong.

03:25PM   3           MR. HARRINGTON:  Well, that --

03:25PM   4           THE COURT:  And I -- and whether he committed a

03:25PM   5   procedural error, as we all do --

03:25PM   6           MR. HARRINGTON:  -- remains to be seen and

03:25PM   7   oftentimes, there are multiple procedure errors that lead to a

03:25PM   8   sufficient procedural error to grant some sort of relief.  All

03:25PM   9   I want to do is make a record of what happened.

03:25PM   10          THE COURT:  I understand.  And that's why I overruled

03:25PM   11  the objection.  I'm going to let you make a record within

03:25PM   12  limits.

03:25PM   13  BY MR. HARRINGTON:

03:26PM   14  Q.  Judge Case, I should ask you about the search warrant

03:26PM   15  8:32 p.m. on July [sic] 19th, 2020.  After the words 56

03:26PM   16  Grimes, there appears to be a blank space there; is that

03:26PM   17  right?

03:26PM   18  A.  Yes.

03:26PM   19  Q.  And the Judge just indicated on the record that he could

03:26PM   20  see through the covering there that he could see lower front.

03:26PM   21  Q.  Can you see that too?

03:26PM   22  A.  Yes.

03:26PM   23  Q.  Do you recall whether, when you first got that search

03:27PM   24  warrant, lower front was on there?

03:27PM   25  A.  I don't specifically recall because I've signed so many

CASE -- BY MR. HARRINGTON -- 12/21/2022

03:27PM   1    warrants, but I would never sign a warrant that had Wite Out

03:27PM   2    tape on it.

03:27PM   3    Q.  Well, if the rest of the sentence was sufficient to cover

03:27PM   4    the scope of the search, would you sign it then with Wite Out

03:27PM   5    on it?

03:27PM   6    A.  I would still tell them to cross off whatever is wrong

03:27PM   7    and initial it and then I would initial it as well.

03:27PM   8    Q.  Okay.  Now, it says, does it not, in the second part of

03:28PM   9    that sentence where it says two-and-a-half-story multiple-

03:28PM   10   residence building with a white front and brick exterior,

03:28PM   11   correct?

03:28PM   12   A.  Correct.

03:28PM   13   Q.  And what did multiple residence mean to you?

03:28PM   14   A.  Whether it was a two, three, four-unit building.

03:29PM   15   Q.  All right.  And what did lower front mean to you?

03:29PM   16   A.  I assumed from that there was a lower -- at the very

03:29PM   17   least, a lower front and a lower rear, and, perhaps, an upper

03:29PM   18   front and an upper rear.

03:29PM   19   Q.  Do you remember, did Detective McMahon provide you with

03:29PM   20   any other information about the inside of that premises

03:29PM   21   before you signed the warrant?

03:29PM   22   A.  I'm going to say no.  I don't recall that he did.  I

03:29PM   23   would assume that I would have had him amend it if it needs

03:30PM   24   something more.

03:30PM   25   Q.  Now, directing your attention --

03:30PM  1              THE COURT:  Let me interrupt at this moment so I

03:30PM  2  don't lose it.  Did you put the white tape on that warrant

03:30PM  3  that is Government Exhibit 8 also marked Defendant's Exhibit

03:30PM  4  P-1?

03:30PM  5              THE WITNESS:  No, Your Honor.

03:30PM  6              THE COURT:  All right.

03:30PM  7  BY MR. HARRINGTON:

03:30PM  8  Q.   Judge Case, showing you a different page from Defendant's

03:31PM  9  Exhibit P-1, do recognize that as an application that

03:31PM 10  supported the search warrant we just talked about?

03:31PM 11  A.   Yes, sir.

03:31PM 12  Q.   And on these search warrant applications, much of the

03:31PM 13  information is what we might call boilerplate; is that right?

03:31PM 14  A.   Yes.

03:31PM 15  Q.   And that doesn't mean that you don't consider that

03:31PM 16  information, it just means that it comes from being used over

03:31PM 17  and over, correct?

03:31PM 18  A.   Correct.

03:31PM 19  Q.   And on this particular warrant application, it appears

03:31PM 20  that the only part of the application that contains factual

03:31PM 21  information that supports the warrant would be paragraph 2;

03:32PM 22  is that fair to say?

03:32PM 23  A.   I assume so.  It goes onto the second page, correct.

03:32PM 24  Q.   Now, in paragraph 2, it starts off with, on 02/19/2020,

03:33PM 25  members of the ECSO Narcotics and Intelligence, I assume

| | | |
|---|---|---|
| 03:33PM | 1 | that's Erie County Sheriff's Office? |
| 03:33PM | 2 | A.  Yes. |
| 03:33PM | 3 | Q.  Did conduct surveillance in the area of Grimes Street |
| 03:33PM | 4 | Buffalo, New York, correct? |
| 03:33PM | 5 | A.  Yes. |
| 03:33PM | 6 | Q.  Okay.  And did -- were the members of that identified? |
| 03:33PM | 7 | A.  I don't believe so. |
| 03:33PM | 8 | Q.  Did McMahon tell you who it was he learned this |
| 03:33PM | 9 | information from? |
| 03:33PM | 10 | A.  I guess, at that point, I thought it was his personal |
| 03:33PM | 11 | knowledge or that he was involved as part of the Narcotics |
| 03:33PM | 12 | and Intelligence Unit. |
| 03:33PM | 13 | Q.  And then he says, Rodney Pierce was observed a short time |
| 03:34PM | 14 | later pulling up to the area of 56 Grimes Street and entered |
| 03:34PM | 15 | the building, correct? |
| 03:34PM | 16 | A.  Yes. |
| 03:34PM | 17 | Q.  And did he tell you the source of that or did you then |
| 03:34PM | 18 | assume that that was his personal (inaudible)? |
| 03:34PM | 19 | A.  Right.  I assumed that was his personal knowledge. |
| 03:34PM | 20 | Q.  And then it says Pierce was observed carrying a black bag |
| 03:34PM | 21 | into the building, correct? |
| 03:34PM | 22 | A.  Yes. |
| 03:34PM | 23 | Q.  And, again, did you assume that that was his personal |
| 03:34PM | 24 | knowledge? |
| 03:34PM | 25 | A.  Yes. |

03:34PM   1   Q.  And then, moments later, the person of David Burgin was

03:34PM   2   observed in front of 56 Grimes Street operating registration

03:34PM   3   number HEG469, 2016 Tundra, color white, right, that's what

03:34PM   4   that says, right?

03:34PM   5   A.  Yes.

03:34PM   6   Q.  Did you again assume that was the personal knowledge of

03:35PM   7   the officer?

03:35PM   8           MR. GLABERSON:  Objection.  The question is calling

03:35PM   9   for assumptions.

03:35PM  10           THE COURT:  It calls for a yes or no answer.  Did you

03:35PM  11   assume?  Yes.  Did you assume?  No.

03:38PM  12           MR. GLABERSON:  Assumptions, though, are all

03:38PM  13   speculation.

03:38PM  14           THE COURT:  No.  He's asking if he did have an

03:38PM  15   assumption, yes or no, not what he assumed.  There's a

03:38PM  16   difference.  Did he have an assumption, that's the question.

03:38PM  17   Did you have an assumption?

03:39PM  18           THE WITNESS:  Yes.  Yes.

03:39PM  19           THE COURT:  All right.  Now, let's wait for the next

03:39PM  20   question.

03:39PM  21   BY MR. HARRINGTON:

03:39PM  22   Q.  And, like the other items, that was -- this is Officer

03:39PM  23   McMahon's personal knowledge; is that right?

03:39PM  24   A.  Yes.

03:39PM  25   Q.  Now, Judge, are you familiar with the term information

CASE -- BY MR. HARRINGTON -- 12/21/2022

03:39PM     1   and belief?

03:39PM     2   A.   Yes.

03:39PM     3   Q.   It's often used in legal writings; is that right?

03:40PM     4   A.   Yes.

03:40PM     5   Q.   It's also used in search warrant applications, is it not?

03:40PM     6   A.   Yes.

03:40PM     7   Q.   In fact, it's actually provided for in the Criminal

03:40PM     8   Procedure Law Section 690, correct?

03:40PM     9   A.   Right.

03:40PM    10   Q.   And information and belief signifies what to you?

03:40PM    11   A.   That it's not personal knowledge.

03:40PM    12   Q.   And paragraph 2 does not say upon information and belief;

03:40PM    13   is that right?

03:40PM    14   A.   Correct.

03:40PM    15   Q.   It continues with surveillance was continued and, a short

03:41PM    16   time later, Rodney Pierce was observed driving from 56 Grimes

03:41PM    17   Street to Auto Zone at 1224 Broadway, correct?

03:41PM    18   A.   Yes.

03:41PM    19   Q.   And, again, you assume that was personal knowledge

03:41PM    20   (inaudible)?

03:41PM    21           MR. GLABERSON:  Objection.

03:41PM    22           THE COURT:  Same answer.  Did you assume something?

03:41PM    23   Yes or no.  Overruled.

03:41PM    24           MR. GLABERSON:  The document speaks for itself.  What

03:41PM    25   it says --

| | | |
|---|---|---|
| 03:41PM | 1 | THE COURT:  He's not asking what's in the document. |
| 03:41PM | 2 | He's asking if he had an assumption. |
| 03:41PM | 3 | MR. GLABERSON:  And again, the -- |
| 03:41PM | 4 | THE COURT:  The answer is either yes or no; yes, I |
| 03:41PM | 5 | had an assumption or no, I did not have an assumption.  You're |
| 03:41PM | 6 | anticipating the next question. |
| 03:41PM | 7 | MR. GLABERSON:  But the objection is to the entire |
| 03:42PM | 8 | line of questioning. |
| 03:42PM | 9 | THE COURT:  No.  Your objection is to a particular |
| 03:42PM | 10 | question, not the entire line.  It's each question as it's |
| 03:42PM | 11 | asked.  We had -- the question before the witness is whether |
| 03:42PM | 12 | he had an assumption or not, yes or no. |
| 03:42PM | 13 | MR. GLABERSON:  And the question is -- |
| 03:42PM | 14 | THE COURT:  Overruled.  Did you have an assumption? |
| 03:42PM | 15 | THE WITNESS:  Yes. |
| 03:42PM | 16 | BY MR. HARRINGTON: |
| 03:42PM | 17 | Q.  And was that assumption that it was McMahon's personal |
| 03:42PM | 18 | knowledge? |
| 03:42PM | 19 | MR. GLABERSON:  Objection. |
| 03:42PM | 20 | THE COURT:  All right.  What's the basis? |
| 03:42PM | 21 | MR. GLABERSON:  This is getting beyond any relevance |
| 03:42PM | 22 | to what we're here for.  This warrant has been submitted. |
| 03:42PM | 23 | Your Honor will determine whether the four corners of this |
| 03:42PM | 24 | document support probable cause or not.  Judge Case is not |
| 03:42PM | 25 | here to testify about what he thought at the time and what he |

03:42PM   1   thought beyond the corners of this document, and his opinions

03:42PM   2   about what was happening at the time.  Factually, he's here to

03:43PM   3   testify as a fact witness, not what his opinions or thought

03:43PM   4   processes were when he was reading this document.

03:43PM   5          THE COURT:  So, what was Judge Case to think about in

03:43PM   6   determining whether probable cause existed or not?  If he's

03:43PM   7   not supposed to think about what deputy -- Detective McMahon

03:43PM   8   has put before him in a written application, how is he to

03:43PM   9   discern probable cause?

03:43PM   10          MR. GLABERSON:  But the question is --

03:43PM   11          THE COURT:  The question is, he's asking him about

03:43PM   12   specific language that McMahon had submitted to him asking for

03:43PM   13   a search warrant.  His job, then, is to determine whether that

03:43PM   14   information put before him is sufficient to determine whether

03:43PM   15   there's probable cause, isn't it?

03:43PM   16          MR. GLABERSON:  At the time it is.  Here, today, that

03:43PM   17   is not before this Court.  And the rehashing his thought

03:43PM   18   processes in signing or not signing the warrant, it's

03:44PM   19   undisputed that Judge Case signed the warrant, and that now it

03:44PM   20   has been objected to in federal court and Your Honor decides

03:44PM   21   whether it is supported by probable cause or not; not based on

03:44PM   22   Judge Case's determination whether he would have or wouldn't

03:44PM   23   have signed the warrant or what he thought at the time, we're

03:44PM   24   getting into --

03:44PM   25          THE COURT:  He wasn't asked that.  He wasn't asked

03:44PM   1   whether he would have signed the warrant or not.  He's asked

03:44PM   2   what he assumed was in that application, the actual writing,

03:44PM   3   what it was, what it meant to him.  That's all he's asked.

03:44PM   4   And he's the witness that had to do the discerning of what was

03:44PM   5   in front of him to determine whether probable cause existed.

03:44PM   6   My role would be to review that warrant after it was executed

03:44PM   7   to determine whether what was in that application constituted

03:45PM   8   probable cause.

03:45PM   9           MR. GLABERSON:  Correct, on its face, but regardless

03:45PM  10   of what --

03:45PM  11           THE COURT:  But we're talking about the issue of the

03:45PM  12   warrant and what he understood at the time.  That is part of

03:45PM  13   the input as to whether there is something amiss here as the

03:46PM  14   defense had claimed.

03:46PM  15           MR. GLABERSON:  But --

03:46PM  16           THE COURT:  This is the judge that executed the

03:46PM  17   warrant.  He's telling us what it is that he was -- his

03:46PM  18   thought process was.

03:46PM  19           MR. GLABERSON:  And that's not the process for

03:46PM  20   challenging the warrant on its face.

03:46PM  21           THE COURT:  I understand that.  I will say it again

03:46PM  22   for both of you.  Under federal law, when you have a Fourth

03:46PM  23   Amendment issue, federal law applies notwithstanding it's a

03:46PM  24   state warrant.

03:46PM  25           MR. GLABERSON:  And the objection is that Judge

03:46PM    1    Case's current opinion about what he was thinking at the time

03:46PM    2    is not relevant to the issue.

03:46PM    3             THE COURT:  He's not being asked for an opinion.

03:46PM    4    He's being asked what he thought at the time.

03:46PM    5             MR. GLABERSON:  He being asked what --

03:46PM    6             THE COURT:  That's not an opinion.  That's what I --

03:46PM    7    this is what I thought at the particular point in time.

03:46PM    8    That's not an opinion.  An opinion is I believe that something

03:46PM    9    may have occurred.  What he's being asked about is what he

03:47PM   10    actually did.

03:47PM   11             MR. GLABERSON:  He --

03:47PM   12             THE COURT:  He took a document that was in the form

03:47PM   13    of an application for a search warrant.  He examined it and

03:47PM   14    made a decision.  He's not being asked what it is he used to

03:47PM   15    make that decision.  That's paragraph --

03:47PM   16             MR. GLABERSON:  But the decision was made, and now

03:47PM   17    the challenge is to the document itself.  And this is going

03:47PM   18    beyond the scope of the four corners, and asking him to

03:47PM   19    testify about things that are outside the scope.

03:47PM   20             THE COURT:  But he's the man that executed the

03:47PM   21    warrant.  It's rare when we have the actual judge who signs

03:47PM   22    the warrant to tell us what it was that he did and considered

03:47PM   23    in finding probable cause.  Overruled.

03:47PM   24    BY MR. HARRINGTON:

03:47PM   25    Q.  Judge, did you assume that the sentence here was based

03:48PM   1   upon McMahon's personal knowledge?

03:48PM   2   A.  Yes.

03:48PM   3   Q.  Next sentence is, DMV check Rodney Pierce reveals that

03:48PM   4   his license is currently revoked, correct?

03:48PM   5   A.  Yes.

03:48PM   6   Q.  That information came from McMahon?

03:49PM   7   A.  Yes.

03:49PM   8   Q.  And this is his affidavit, correct?

03:49PM   9   A.  Yes.

03:49PM  10   Q.  Did you use someone else's personal knowledge?

03:50PM  11   A.  Yes.

03:50PM  12   Q.  Then that says, Narcotics Unit members did conduct a

03:51PM  13   traffic stop and transported his vehicle 2005 Dodge Caravan

03:51PM  14   bearing New York registration KNB9145 (inaudible), correct?

03:51PM  15   A.  Yes.

03:51PM  16   Q.  You assumed that it was McMahon's personal knowledge?

03:51PM  17   A.  Yes.

03:51PM  18   Q.  And then it says, an inventory search was conducted of

03:51PM  19   the white vehicle and revealed a black bag containing in

03:51PM  20   excess of a kilogram of cocaine, correct?

03:51PM  21   A.  Yes.

03:51PM  22   Q.  And did you assume that was based on personal knowledge?

03:51PM  23   A.  Yes.

03:51PM  24   Q.  Now, also attached to this affidavit is -- or to this

03:51PM  25   application is an affidavit.  Do you see that on the screen

03:52PM  1   there?

03:52PM  2   A.   Yes.

03:52PM  3   Q.   Okay.  Do you recall whether this was attached to the

03:52PM  4   search warrant application?

03:52PM  5           THE COURT:  The search warrant application for the

03:52PM  6   warrant that was issued at 8:32 p.m.?

03:52PM  7           MR. HARRINGTON:  Yes, for the vehicle.

03:52PM  8           THE COURT:  So, that's Government Exhibit 8?

03:52PM  9           MR. HARRINGTON:  Right.  Maybe I can help you.

03:52PM  10  BY MR. HARRINGTON:

03:52PM  11  Q.   Do you recall off the top of your head?

03:52PM  12  A.   Off the top of my head, I don't specifically recall.

03:53PM  13  Q.   In the search warrant itself, Exhibit P-1, in addition to

03:53PM  14  56 Grimes, there's also an order to search a vehicle we

03:53PM  15  mentioned before, a 2016 Toyota Tundra; is that right?

03:53PM  16  A.   Yes.

03:53PM  17  Q.   And the affidavit that I showed you from Sheriff's Deputy

03:54PM  18  Robert Galbraith would have supported your granting of a

03:54PM  19  search warrant for that vehicle, correct?

03:54PM  20  A.   Yes.

03:54PM  21  Q.   Now, would the -- filings of affidavits with applications

03:55PM  22  for search warrants is one of the accepted procedures under

03:55PM  23  the Criminal Procedure Law Section 690; is that right?

03:55PM  24  A.   Yes.

03:55PM  25  Q.   And would seeing an affidavit in that form lead you to

03:55PM  1   believe that Officer McMahon knew what the process was --

03:55PM  2   A.  Yes.

03:55PM  3   Q.  -- for filing applications?  Now, we're going to go to

03:55PM  4   the second search warrant.

03:56PM  5           THE COURT:  Which is Government Exhibit 9?

03:56PM  6           MR. HARRINGTON:  Right.

03:56PM  7   BY MR. HARRINGTON:

03:57PM  8   Q.  Judge Case, when you signed the first search warrant, do

03:57PM  9   you know whether Detective McMahon left your residence

03:57PM 10   (inaudible)?

03:57PM 11   A.  I don't specifically recall.  I'm sorry.

03:57PM 12   Q.  Do you remember that he came back a different time that

03:57PM 13   evening?

03:57PM 14   A.  No.

03:57PM 15   Q.  Do you remember having any telephone calls with either

03:57PM 16   him or any other Erie County Sheriff's detectives?

03:57PM 17   A.  On that evening you mean about?

03:58PM 18   Q.  Do you know Chief DJ Granville?

03:58PM 19   A.  Yes.

03:58PM 20   Q.  And you have signed search warrants for him, have you

03:58PM 21   not?

03:58PM 22   A.  Yes.

03:58PM 23   Q.  And how long have you known him?

03:58PM 24   A.  Probably 15 years.

03:58PM 25   Q.  And you -- in fact, you've signed many warrants for him,

03:58PM     1   would that be fair to say?

03:58PM     2   A.   Yes.

03:58PM     3   Q.   And now, I'm showing you copy of the second search

03:58PM     4   warrant as part of Exhibit P-1.

03:58PM     5   A.   Okay.

03:58PM     6           THE COURT:   Which is also Exhibit 9?

03:58PM     7           MR. HARRINGTON:   Correct.

03:58PM     8   BY MR. HARRINGTON:

03:58PM     9   Q.   And that's your signature there?

03:59PM    10   A.   Yes.

03:59PM    11   Q.   And that says at 9:48 p.m., correct?

03:59PM    12   A.   Yes.

03:59PM    13   Q.   So, that's an hour and 20 minutes after the first

03:59PM    14   warrant; is that right?

03:59PM    15   A.   Yes.

03:59PM    16   Q.   Now, on the search warrant page itself, is that --

03:59PM    17   without the writing on that, does that appear to be the same

03:59PM    18   as the first search warrant?

03:59PM    19   A.   Yes.

03:59PM    20   Q.   And it no longer says lower front, correct?

03:59PM    21   A.   Correct.

03:59PM    22   Q.   It's got written in here upper rear added and detached

03:59PM    23   garage, correct?

03:59PM    24   A.   Yes.

03:59PM    25   Q.   Whose writing is that?

03:59PM     1   A.   That's my writing.

03:59PM     2   Q.   And there are two initials there.  Whose initials are

03:59PM     3   those?

03:59PM     4   A.   Mine and Deputy McMahon -- Detective McMahon.  I'm sorry.

04:00PM     5   Q.   Now, the Judge asked you a few questions about the

04:00PM     6   whiting out on the first warrant.  Do you recall whiting that

04:00PM     7   out?

04:00PM     8   A.   No.

04:00PM     9   Q.   Do you recall seeing McMahon white that out?

04:00PM    10   A.   No.

04:00PM    11   Q.   Did you see anyone use Wite Out on that paper?

04:00PM    12   A.   No.

04:00PM    13   Q.   Do you remember -- I assume that McMahon came to your

04:00PM    14   house again, correct?

04:00PM    15   A.   I don't have any specific recollection, but I'm assuming

04:00PM    16   he did because -- yeah.

04:00PM    17   Q.   Do you remember whether he was with anybody?

04:00PM    18   A.   I don't specifically recall, but, normally, there's

04:01PM    19   always at least one other.

04:01PM    20   Q.   Do you know his brother Paul, his twin brother?

04:01PM    21   A.   Yes.

04:01PM    22   Q.   Do you recall him being there that night?

04:01PM    23   A.   He could have been.  I'm not sure.

04:01PM    24   Q.   What was said to you about the return?  What were they

04:01PM    25   looking for, asking for, do you remember?

04:01PM   1   A.  Assume the second --

04:01PM   2   Q.  With the second warrant.

04:01PM   3   A.  I think they had indicated to me they had cleared the

04:02PM   4   house or something and had seen that, from the apartment from

04:02PM   5   the first warrant, there was access to the upper rear and the

04:02PM   6   attic and the detached garage.  So, they wanted to search

04:02PM   7   those areas.  And I can't remember if they said in clearing

04:02PM   8   the house if they saw other evidence.  I think that seems to

04:02PM   9   me to be the case.

04:02PM   10  Q.  Right.  Well, that's part of the application that was

04:02PM   11  written.  We'll get to that in a minute.

04:02PM   12  A.  Okay.

04:02PM   13  Q.  But do you remember -- now, there's writing on here on

04:02PM   14  the search warrant itself.  And then later in the

04:02PM   15  application, there's more writing.  Do you remember where

04:02PM   16  that was done in your house?

04:03PM   17  A.  In my kitchen.

04:03PM   18  Q.  Were you sitting at the table?

04:03PM   19  A.  I believe.  I think I was standing at my kitchen counter.

04:03PM   20  Q.  And so, the information that's put in here on the search

04:03PM   21  warrant with the additional places to be searched, there's

04:03PM   22  your writing.  Were they telling you what it was that they

04:03PM   23  wanted?

04:03PM   24  A.  Yes.

04:03PM   25  Q.  Why is it you were doing the writing rather than them?

04:03PM  1  A.  I don't know.  Normally, the only time I do the writing

04:03PM  2  is if, in my review, I see something missing.  So, if I saw

04:03PM  3  that there was 56 Grimes Street, and then he's telling me he

04:03PM  4  wants to search those specific areas, then I would say you

04:04PM  5  need to put in the specific areas that you want to search.

04:04PM  6  And I guess the -- it was probably sitting in front of me at

04:04PM  7  the time, and I said, so where do you want to search?  And

04:04PM  8  so, I just wrote it in.

04:04PM  9  Q.  Now, when you -- when somebody brings a search warrant to

04:04PM  10  you, a police officer, and it's not an in camera, right, are

04:04PM  11  those search warrants usually signed before they come or are

04:04PM  12  they signed later?

04:04PM  13  A.  No.  They sign them in front of me.

04:04PM  14  Q.  Your best recollection that's what happened here; is that

04:04PM  15  right?

04:04PM  16  A.  Yes.

04:04PM  17  Q.  Do you actually put the person under oath when they sign

04:04PM  18  it?

04:04PM  19  A.  Yes.

04:04PM  20  Q.  Do you have any idea where McMahon went after he left

04:05PM  21  your house the first time until they came back the second

04:05PM  22  time?

04:05PM  23  A.  No.  I have no personal knowledge.

04:05PM  24  Q.  Did anyone tell you?

04:05PM  25  A.  I don't know.  I'm sorry.

CASE -- BY MR. HARRINGTON -- 12/21/2022

04:05PM   1   Q.   Okay.  Now, if you look at the bottom of the page that's

04:05PM   2   on the ELMO machine, which is another page of the Defendant's

04:05PM   3   Exhibit P-1, and I'll represent to you that that's additional

04:06PM   4   language that was added to the factual basis for the new

04:06PM   5   warrant, direct your attention to 2A at the bottom of the

04:06PM   6   page if I could?

04:06PM   7   A.   Okay.

04:06PM   8   Q.   And whose writing is that?

04:06PM   9   A.   That is also my handwriting.

04:06PM  10   Q.   And this is factual allegations that are being presented

04:06PM  11   to you in support of a new warrant, would that be fair to

04:06PM  12   say?

04:06PM  13   A.   Yes.

04:06PM  14   Q.   Now, it says, on 02/19/2020, search warrant was executed

04:06PM  15   at 56 Grimes Street, lower front, correct?

04:06PM  16   A.   Yes.

04:06PM  17   Q.   And it doesn't say upon information and belief, does it?

04:06PM  18   A.   No.

04:06PM  19   Q.   All right.  Did you assume that was personal knowledge of

04:06PM  20   McMahon?

04:06PM  21   A.   Yes.

04:06PM  22   Q.   And it says, during the execution of that search warrant,

04:07PM  23   a door was discovered leading to the upper rear, which leads

04:07PM  24   to the attic, correct?

04:07PM  25   A.   Yes.

04:07PM   1   Q.  Did you assume that was personal knowledge of Detective

04:07PM   2   McMahon?

04:07PM   3   A.  Yes.

04:07PM   4   Q.  And it says, three areas were cleared for officer safety

04:07PM   5   and documents, electronic storage devices, and material

04:07PM   6   identifying David Burgin were seen in plain view as well as a

04:07PM   7   DVR surveillance system for 56 Grimes Street, correct?

04:07PM   8   A.  Correct.

04:07PM   9   Q.  And did you assume that was personal knowledge of

04:07PM  10   McMahon?

04:07PM  11   A.  Yes.

04:07PM  12   Q.  Is there anything in that language that gives authority

04:07PM  13   to search the part of the premises at 56 Grimes Street which

04:08PM  14   is being amended?

04:08PM  15   A.  Can you rephrase that for me?  I'm sorry.

04:08PM  16   Q.  Sure.  Is there anything in that factual basis that gave

04:08PM  17   you reason to believe there was probable cause to search the

04:08PM  18   upper rear, the attic, and the garage?

04:08PM  19             MR. GLABERSON:  Objection.

04:08PM  20             THE COURT:  Basis?

04:08PM  21             MR. GLABERSON:  The Judge reviewed and signed the

04:08PM  22   warrant.  It speaks for itself.

04:09PM  23             THE COURT:  Repeat that.

04:09PM  24             MR. GLABERSON:  The Judge reviewed the document as

04:09PM  25   written and signed the warrant the day in question.

04:09PM 1              THE COURT:  Right.

04:09PM 2              MR. GLABERSON:  So, questions about speculating now

04:09PM 3    are -- the document speaks for itself.  Asking these questions

04:09PM 4    is beyond the scope and not relevant to this Court's

04:09PM 5    determination.

04:09PM 6              THE COURT:  Well, first of all, yes.  The document

04:09PM 7    speaks for itself.  Secondly, the warrant was issued, so it

04:09PM 8    means that the Judge found probable cause.

04:09PM 9              MR. GLABERSON:  Right.

04:09PM 10             THE COURT:  Sustained.

04:09PM 11             MR. HARRINGTON:  And I asked him whether, if he looks

04:09PM 12   at it now, if he could tell us what it was that led him to

04:09PM 13   that --

04:09PM 14             THE COURT:  Well, it's a *fait accompli*.

04:09PM 15             MR. HARRINGTON:  Right.

04:10PM 16   BY MR. HARRINGTON:

04:10PM 17   Q.  Judge Case, paragraph 2A doesn't specifically indicate to

04:10PM 18   you where these things were seen, is that right; the things

04:10PM 19   that they say they observed?

04:10PM 20   A.  Right.  Right.  No, it doesn't mention where any of the

04:11PM 21   items were found.

04:11PM 22   Q.  Does it mention about a garage?

04:11PM 23   A.  No.

04:11PM 24   Q.  And each of the items that are designated there are items

04:11PM 25   that anybody could have in their house.  They're not illegal,

| | | |
|---|---|---|
| 04:11PM | 1 | correct? |
| 04:11PM | 2 | A.  Correct. |
| 04:11PM | 3 | MR. GLABERSON:  Objection. |
| 04:11PM | 4 | THE COURT:  Basis? |
| 04:11PM | 5 | MR. GLABERSON:  The same question put another way, |
| 04:11PM | 6 | whether or not an item is or is not illegal kind of has no |
| 04:11PM | 7 | bearing on what we're discussing here. |
| 04:11PM | 8 | THE COURT:  Well, that's true.  It certainly |
| 04:11PM | 9 | points -- again, my role will be, in reviewing all of the |
| 04:11PM | 10 | evidence, whether there was probable cause established for the |
| 04:12PM | 11 | issuance of Government Exhibit 8 and 9 based on what's |
| 04:12PM | 12 | contained within the documents themselves.  Sustained. |
| 04:12PM | 13 | BY MR. HARRINGTON: |
| 04:12PM | 14 | Q.  Judge Case, do you recall whether you had ever heard of |
| 04:12PM | 15 | David Burgin or Burgin before that evening? |
| 04:12PM | 16 | MR. GLABERSON:  Objection. |
| 04:12PM | 17 | THE COURT:  Basis? |
| 04:12PM | 18 | MR. GLABERSON:  Irrelevant. |
| 04:12PM | 19 | THE COURT:  Not necessarily.  Overruled.  I'm going |
| 04:12PM | 20 | to let him explore it a little bit.  It may have played a part |
| 04:13PM | 21 | if he had prior knowledge about the defendant. |
| 04:13PM | 22 | MR. GLABERSON:  But it's not a part of the warrant |
| 04:13PM | 23 | application. |
| 04:13PM | 24 | THE COURT:  I understand that, Mr. Glaberson, but |
| 04:13PM | 25 | it's a preliminary question as far as I'm concerned. |

04:13PM    1    Overruled.

04:13PM    2            THE WITNESS:  I don't recall having any prior

04:13PM    3    information about Mr. Burgin.

04:13PM    4    BY MR. HARRINGTON:

04:13PM    5    Q.  Judge, have you ever had federal agents come and apply

04:13PM    6    for state search warrants?

04:13PM    7    A.  Yes.

04:13PM    8    Q.  Have you ever had federal agents come without a state law

04:14PM    9    enforcement person with them?

04:14PM   10    A.  I don't think so.  Often when the DEA came, they had

04:14PM   11    local law enforcement officers from various departments

04:14PM   12    assigned to the DEA and so, I think they were there as well.

04:14PM   13    Q.  Well, there's what we call task forces around here,

04:14PM   14    correct?

04:14PM   15    A.  Correct.

04:14PM   16    Q.  You're familiar with that?

04:14PM   17    A.  Yes.

04:14PM   18    Q.  And they have officers from different agencies, federal

04:14PM   19    and state, correct?

04:14PM   20    A.  Correct.

04:15PM   21    Q.  But do you recall a federal officer coming and asking you

04:15PM   22    for a search warrant without somebody from the state law

04:15PM   23    enforcement agency?

04:15PM   24    A.  I couldn't say yes or no, honestly.  I don't know.

04:15PM   25    Q.  Criminal Procedure Law Section 690.55 talks about who has

04:19PM  1   the ownership or control of evidence or contraband that is

04:19PM  2   seized under a search warrant, correct?

04:19PM  3   A.  Yes.

04:19PM  4   Q.  And whose property was that?

04:19PM  5           MR. GLABERSON:  Objection.

04:19PM  6           THE COURT:  Basis?

04:19PM  7           MR. GLABERSON:  Beyond the scope, and asking for

04:20PM  8   legal analysis.

04:20PM  9           THE COURT:  Are we talking about property that was

04:20PM  10  seized under either warrant, Government Exhibit 8 or

04:20PM  11  Government Exhibit 9?

04:20PM  12          MR. HARRINGTON:  Yes.

04:20PM  13          THE COURT:  What difference does it make who had

04:20PM  14  possession of the property after the seizure?  My role is

04:20PM  15  going to be only to the issue of whether there was probable

04:20PM  16  cause for the issuance of either warrant.  The rest is a

04:20PM  17  ministerial act for purposes of the Fourth Amendment.

04:20PM  18          MR. HARRINGTON:  It violates the statute --

04:20PM  19          THE COURT:  That's why I emphasize for purposes of

04:20PM  20  the Fourth Amendment.  Whether there's compliance or non-

04:20PM  21  compliance with a state court or state statute is irrelevant

04:20PM  22  for purposes of determining the federal question of whether a

04:21PM  23  Fourth Amendment violation has occurred.  The Fourth Amendment

04:21PM  24  requirement is to be determined based on federal law.  And all

04:21PM  25  I'm concerned about is whether there was probable cause under

04:21PM  1   the Fourth Amendment to the United States Constitution for the

04:21PM  2   issuance of these warrants, Government Exhibit 8 and

04:21PM  3   Government Exhibit 9.

04:21PM  4           MR. HARRINGTON:  And you're trying to get that

04:21PM  5   message into my thick Irish head.

04:21PM  6           THE COURT:  Oh, no, I'm just trying to make a record,

04:21PM  7   as everybody is trying to do.

04:21PM  8           MR. HARRINGTON:  Judge, I, again, go back that there

04:21PM  9   are more issues here.  If you determine that this warrant was

04:21PM  10  improper that resulted in this thing, and then you say that

04:22PM  11  these officers acted in good faith --

04:22PM  12          THE COURT:  Well, no, I wouldn't get to that second

04:22PM  13  question.  If I determined there was probable cause for the

04:22PM  14  issuance of the warrant under federal law, I don't ask anymore

04:22PM  15  whether *Leon* should apply or not because I found probable

04:22PM  16  cause.  *Leon* only comes into play, *Leon* v. United States, if I

04:22PM  17  find it was not probable cause.

04:22PM  18      But, notwithstanding that, I find the officers acted in

04:22PM  19  good faith and, therefor, under the principle in *Leon,* and its

04:22PM  20  progeny, the exclusionary rule should not be applied.  It's a

04:22PM  21  two-step process.  But if there's a finding of probable cause,

04:22PM  22  that's the end of it.

04:22PM  23          MR. HARRINGTON:  Judge, I misspoke there.  What I'm

04:22PM  24  saying is, if you find there isn't probable cause, and then we

04:23PM  25  go onto the issue of good faith, right?

04:23PM    1              THE COURT:  True.

04:23PM    2              MR. HARRINGTON:  One of the elements of good faith is

04:23PM    3    bad faith.

04:23PM    4              THE COURT:  Right, or reckless disregard, or

04:23PM    5    misrepresentation, or outright lying.

04:23PM    6              MR. HARRINGTON:  And this is just a couple of

04:23PM    7    questions about the provision in the Criminal Procedure Law

04:23PM    8    that tells law enforcement what they're supposed to do --

04:23PM    9              THE COURT:  But this is after the fact.  This is

04:23PM   10    after the execution of the warrant when they take into control

04:23PM   11    the property.

04:23PM   12              MR. HARRINGTON:  But they brought the warrant to him

04:23PM   13    prepared.  That's what I'm saying.  And they didn't -- if they

04:23PM   14    were going to put the stuff in the possession of the police,

04:23PM   15    it's supposed to be in the warrant.  4.

04:23PM   16         I mean, obviously, as a practical matter, judges never

04:23PM   17    take this.  I understand that.  But we're talking about what

04:23PM   18    the law says.  And it has a separate section for taking

04:23PM   19    property from a state law enforcement that's authorized to a

04:23PM   20    different law enforcement such as the federal.  I'm just

04:24PM   21    trying to bring that out.  That's all.

04:24PM   22              THE COURT:  Okay.  I guess there's some confusion

04:24PM   23    here, because even in federal warrants, there's a requirement

04:24PM   24    under the Fourth Amendment that there has to be some

04:24PM   25    specificity or some particularization.  And normally, in a

04:24PM   1    drug case, they'll say we're looking for methamphetamine,

04:24PM   2    fentanyl, cocaine, crack cocaine, whatever, and we're also

04:24PM   3    looking for guns, and drug paraphernalia such as digital

04:24PM   4    scales, packaging materials, et cetera.

04:24PM   5        So, they -- there is a description to meet the

04:25PM   6    particularity requirement of what it is they wish to seize.

04:25PM   7    So, there's nothing improper about that.  And the state

04:25PM   8    warrant, the fact that they say we want to seize electronic

04:25PM   9    equipment, and whatever, and you get that into federal

04:25PM   10   warrants too, you want to seize records, digital records, cell

04:25PM   11   phones, so on and so forth.  So, stating or describing what it

04:25PM   12   is you want to seize is not --

04:25PM   13           MR. HARRINGTON:  It's not finished, Judge.  I'm

04:26PM   14   talking about the custody of the things that are seized.  All

04:26PM   15   I'm pointing out are there are a number of things that were

04:26PM   16   done here, and this warrant application, and warrants that

04:26PM   17   were brought to Judge Case, that didn't comply with the law.

04:26PM   18           THE COURT:  Okay.  I'm merely addressing your

04:26PM   19   statement that they already had it put in the application for

04:26PM   20   the search warrant what it was they were going to take, and

04:26PM   21   that's what I was having a hard time understanding what's

04:26PM   22   wrong with that.

04:26PM   23           MR. HARRINGTON:  I'm talking about what they did

04:26PM   24   afterward.

04:26PM   25           THE COURT:  All right.

04:26PM   1                 MR. HARRINGTON:  It's a small point.

04:26PM   2                 THE COURT:  Okay.  Go ahead.

04:26PM   3                 MR. GLABERSON:  Well, the objection stands that the

04:26PM   4   question is about a section of the CPL about who has custody

04:26PM   5   of certain pieces of evidence.  And this witness --

04:26PM   6                 THE COURT:  I'm going to allow it in as part of the

04:26PM   7   overall totality of the circumstances the defense has raised

04:26PM   8   with respect to the actions of good faith on the part of the

04:26PM   9   officer.

04:26PM  10                 MR. GLABERSON:  Understood.  The objection is that

04:26PM  11   the CPL speaks for itself, and Mr. Harrington can submit a

04:27PM  12   copy to the Court.

04:27PM  13                 THE COURT:  I can take judicial notice of the New

04:27PM  14   York State procedural law.

04:27PM  15                 MR. GLABERSON:  Absolutely.  But Judge Case

04:27PM  16   testifying about what may or may not be in Article 690 really

04:27PM  17   should play no role in that.

04:27PM  18                 THE COURT:  No.  He's now asking about taking control

04:27PM  19   of evidence after the seizure has been made if he knows what's

04:27PM  20   done, I guess.  Ask your question again.  We're getting

04:27PM  21   burdened with wordsmithing here.

04:27PM  22   BY MR. HARRINGTON:

04:27PM  23   Q.  Judge Case, do you know that Section 690.55 of the

04:27PM  24   Criminal Procedure Law directs that the evidence that's

04:27PM  25   seized, contraband, whatever it is, be returned to the Court

04:27PM   1   with a return?  That's what it says, correct?

04:27PM   2   A.  Correct.

04:27PM   3   Q.  That's totally impractical; is that right?

04:28PM   4   A.  True.

04:28PM   5   Q.  And so it always goes to the law enforcement or somebody

04:28PM   6   else for storage, correct?

04:28PM   7   A.  Correct.

04:28PM   8   Q.  Okay.  But the section specifically says that you, as a

04:28PM   9   judge, have to direct that that be done; is that correct?

04:28PM  10   A.  That I would direct them to turn the evidence over to

04:28PM  11   the --

04:28PM  12   Q.  No, to keep it.

04:28PM  13   A.  Oh, to keep it?  I believe so.  Yes.

04:28PM  14   Q.  And it also says that if it's going to be turned over to

04:28PM  15   another agency, there's supposed to be your consent to that,

04:28PM  16   correct?

04:28PM  17   A.  Correct.

04:28PM  18              MR. HARRINGTON:  Judge, can I just have a minute?

04:28PM  19              THE WITNESS:  Sure thing.

04:29PM  20              MR. HARRINGTON:  That's all I have.

04:29PM  21              THE COURT:  Mr. Lynch?

04:29PM  22              MR. LYNCH:  Mr. Glaberson is going to do it.  Can we

04:29PM  23   just have a moment to look at the exhibit, Judge?

04:29PM  24              THE COURT:  Certainly.

04:29PM  25              MR. LYNCH:  Thank you.

04:29PM  1          MR. GLABERSON:  And also, Judge, just while we're

04:29PM  2     reverifying this, I think there was some testimony about

04:29PM  3     several meetings Mr. Harrington had with the witness.  And we

04:29PM  4     just request if there were notes, reports, memoranda made of

04:29PM  5     those meetings, that we just request those be turned over.

04:30PM  6          THE COURT:  You're talking about an attorney's work

04:30PM  7     product?

04:30PM  8          MR. GLABERSON:  I'm talking about witness interview

04:30PM  9     notes or other records that were taken in a meeting with a

04:30PM  10    witness.

04:30PM  11         MR. LYNCH:  We don't know if he had an investigator

04:30PM  12    or what.  We don't know anything.  The first time we heard

04:30PM  13    that Mr. Harrington --

04:30PM  14         THE COURT:  Well, my first question was, are you

04:30PM  15    asking for Mr. Harrington's notes, which would be work

04:30PM  16    product?

04:30PM  17         MR. GLABERSON:  Well, whatever they were, there are

04:30PM  18    things that we're entitled to do under Jencks or --

04:30PM  19         THE COURT:  That's work product if they're

04:30PM  20    Mr. Harrington notes.

04:30PM  21         MR. LYNCH:  Well, it complies with 26.2, Judge, if he

04:30PM  22    has any notes --

04:30PM  23         THE COURT:  Harrington hasn't testified.

04:30PM  24         MR. LYNCH:  No, no, no.

04:30PM  25         MR. GLABERSON:  Meetings with Judge Case --

04:30PM   1          MR. LYNCH:  If he has defense notes that relate that

04:30PM   2   to -- and would be considered a witness statement --

04:30PM   3          THE COURT:  But that's attorney work product.

04:30PM   4          MR. LYNCH:  But he could have an investigator there

04:30PM   5   who took notes, Judge.  We have no idea.  We're just asking if

04:30PM   6   he has it.  If he says no or he had work product, that

04:30PM   7   would --

04:30PM   8          THE COURT:  All right.  All right.  All right.

04:31PM   9          MR. LYNCH:  That's all.

04:31PM   10          THE COURT:  How many angels can dance on the head of

04:31PM   11   a pin?

04:31PM   12          MR. LYNCH:  Probably a thousand.

04:31PM   13          THE COURT:  Why you -- all of you guys have lost

04:31PM   14   sight of the very limited focus of this case.  It's namely

04:31PM   15   whether there was probable cause --

04:31PM   16          MR. LYNCH:  I know.

04:31PM   17          THE COURT:  -- for the issuance of these two

04:31PM   18   warrants.

04:31PM   19          MR. LYNCH:  We're just asking if he does.  That's it.

04:31PM   20          THE COURT:  I'm going to -- you asked the question.

04:31PM   21          MR. LYNCH:  Thank you.

04:31PM   22          THE COURT:  Or Mr. Glaberson was going to ask the

04:31PM   23   question.  I don't know.  Ask it.

04:31PM   24          MR. GLABERSON:  We're just inquiring if there was any

04:31PM   25   material to turn over related to this witness.

04:32PM    1        THE COURT: Mr. Harrington?

04:32PM    2        MR. HARRINGTON: Judge, without making objections to

04:32PM    3   turning over notes, I did not make any notes. I took my queue

04:32PM    4   from the Erie County Sheriff's Department.

04:32PM    5        THE COURT: Was there an investigator with you?

04:32PM    6        MR. HARRINGTON: No. Nobody was.

04:32PM    7        MR. LYNCH: Thank you.

04:32PM    8

04:32PM    9               CROSS-EXAMINATION

04:32PM   10

04:32PM   11   BY MR. GLABERSON:

04:32PM   12   Q. Good afternoon, Judge.

04:33PM   13   A. Good afternoon.

04:33PM   14   Q. So, Judge, just to kind of go back a little over some of

04:33PM   15   your background. You've been a sitting Erie County Court

04:33PM   16   Judge since the beginning of 2011?

04:33PM   17   A. Correct.

04:33PM   18   Q. So, coming up on your 12th year on the bench?

04:33PM   19   A. Yes.

04:33PM   20   Q. You spent about 13 years at the DA's office?

04:34PM   21   A. Yes.

04:34PM   22   Q. And that's three years you spent at Legal Aid?

04:34PM   23   A. Two.

04:34PM   24   Q. Two years?

04:34PM   25   A. Yeah.

CASE -- BY MR. GLABERSON -- 12/21/2022

04:34PM   1   Q.  And just -- I don't think we touched on this, but what

04:34PM   2   did you do at Legal Aid?

04:34PM   3   A.  I created and managed the first Felony Office for Legal

04:34PM   4   Aid.

04:34PM   5   Q.  And that's for defending cases in the state court system?

04:34PM   6   A.  Yes.

04:34PM   7   Q.  And have you practiced in federal court in your career?

04:34PM   8   A.  Not much at all.  No.

04:34PM   9   Q.  And at Legal Aid and the DA's office, that was primarily

04:34PM  10   in state court exclusively?

04:34PM  11   A.  Yes.

04:34PM  12   Q.  Since you became a Judge in 2011, you have reviewed -- I

04:34PM  13   think you give a number of about 500 search warrants?

04:34PM  14   A.  At least, yeah.

04:34PM  15   Q.  And I think you did the majority of the ECSO warrants,

04:35PM  16   something -- words to that effect?

04:35PM  17   A.  Yes.

04:35PM  18   Q.  And does that mean the majority of the warrants that you

04:35PM  19   reviewed were from the Erie County Sheriff's Office?

04:35PM  20   A.  I think, for a time, I probably did the majority of their

04:35PM  21   warrants, but I guess I don't know how many they did, but it

04:35PM  22   seemed that way to me, I guess.

04:35PM  23   Q.  In other words, during that period over your career,

04:35PM  24   you've done a lot -- without putting a number on it -- you

04:35PM  25   reviewed a lot of Erie County Sheriff's Office warrants?

04:35PM   1    A.   Yes.

04:35PM   2    Q.   But you don't know -- there's how many other judges on

04:35PM   3    the county court in Erie County?

04:35PM   4    A.   There's four other county court judges and three or four

04:36PM   5    Court of Claims judges that are acting supreme and two

04:36PM   6    supreme court judges that do criminal.

04:36PM   7    Q.   And the local law enforcement can take search warrants to

04:36PM   8    city court judges in Buffalo City as well?

04:36PM   9    A.   Yes.

04:36PM   10   Q.   And city court judges in Lackawanna?

04:36PM   11   A.   Town, town judges, yes.

04:36PM   12   Q.   Now -- and fair to say you don't know how many any of

04:36PM   13   those other judges that have jurisdiction to do that have

04:36PM   14   reviewed?

04:36PM   15   A.   No.

04:36PM   16   Q.   And it's fair to say that you are accessible, available

04:36PM   17   to law enforcement at nights, on weekends when you're busy,

04:36PM   18   to review search warrant applications?

04:36PM   19   A.   Yes.

04:36PM   20   Q.   And is that kind of a point of pride that you take that

04:37PM   21   you are there to kind of help the system function?

04:37PM   22   A.   Yes.

04:37PM   23   Q.   And if they call you, you'll drop what you're doing at

04:37PM   24   Left Bank and review a warrant if necessary?

04:37PM   25   A.   Correct.

04:37PM  1  Q.  You'll get a call and go down to the sheriff's office to

04:37PM  2  do an in camera interview of an informant at their interview

04:37PM  3  room?

04:37PM  4  A.  Yes.

04:37PM  5  Q.  And, back in February of 2020, I'm not asking for an

04:37PM  6  address or any specifics, but about how far was your house

04:37PM  7  from the Erie County Sheriff's Office at 45 Elm Street by

04:37PM  8  driving?  About how long would it take?

04:37PM  9  A.  About 25 minutes.

04:37PM  10  Q.  You've done that drive yourself?

04:37PM  11  A.  Yes.

04:37PM  12  Q.  And during the period in question, again, not asking for

04:38PM  13  any more specifics than what I'm going to present to you, but

04:38PM  14  was the last four digits of your phone number 3882?

04:38PM  15  A.  Yes.

04:38PM  16  Q.  And that's a number that law enforcement had access to to

04:38PM  17  call you if they needed a search warrant reviewed?

04:38PM  18  A.  Yes.

04:38PM  19  Q.  And at that home that you lived, in or around February of

04:38PM  20  2020, did you have a home office?

04:39PM  21  A.  Yes.

04:39PM  22  Q.  Did you ever do work at home?

04:39PM  23  A.  I bring things home with me, but I usually didn't use the

04:39PM  24  office, but yeah.

04:39PM  25  Q.  And anybody else use the office at your house?

04:39PM    1    A.  My wife.

04:39PM    2    Q.  And did she work in February of 2020?  Did she have a

04:39PM    3    job?

04:39PM    4    A.  Yes.  Yes.  Yeah.

04:39PM    5    Q.  Do you have a fax machine in the office?

04:39PM    6    A.  We did.  It wasn't working, which is part of the printer.

04:39PM    7    That's why I couldn't make copies at home at that time.

04:39PM    8    Q.  And did you have a printer or was it the same thing with

04:39PM    9    the fax?

04:39PM   10    A.  We had a printer that was a scanner, fax machine, but, I

04:39PM   11    think -- at the time, I don't know that it was working the

04:40PM   12    way that it's supposed to.

04:40PM   13    Q.  Fair to say that, at least your memory today, is that

04:40PM   14    back then, in and around February 2020, it was

04:40PM   15    malfunctioning, not working appropriately?

04:40PM   16    A.  Yes.

04:40PM   17    Q.  And if you tried to use it, you would have had problems

04:40PM   18    with it?

04:40PM   19    A.  Correct.

04:40PM   20    Q.  Now, I'm going to ask you about the night in question

04:40PM   21    here, February 19th, 2020.  So, you have reviewed the

04:41PM   22    documents, correct?

04:41PM   23    A.  Yes.

04:41PM   24    Q.  And the documents we just -- you just went through with

04:41PM   25    Mr. Harrington, those -- you've read them, correct?

CASE -- BY MR. GLABERSON -- 12/21/2022

04:41PM   1   A.  Yes.

04:41PM   2   Q.  And you read them before you came in today?

04:41PM   3   A.  Yes.

04:41PM   4   Q.  And you went through your records to see if you had any

04:41PM   5   additional notes and there were not any, correct?

04:41PM   6   A.  Correct.

04:41PM   7   Q.  You've met with Mr. Harrington?

04:41PM   8   A.  I did.

04:41PM   9   Q.  On more than one occasion?

04:41PM  10   A.  I think two occasions, maybe.

04:41PM  11   Q.  And he asked you about these documents as well in those

04:41PM  12   meetings?

04:41PM  13   A.  I guess he did.  He talked more -- we talked more about

04:41PM  14   whether or not I would be allowed to testify, because counsel

04:41PM  15   for OCA was telling me at that time I was not allowed to

04:42PM  16   testify, and I think we've spent more time talking about that

04:42PM  17   and didn't talk all that much substantively about the

04:42PM  18   warrants and that kind of thing.

04:42PM  19   Q.  But part of those discussions led you -- or a subpoena or

04:42PM  20   some type of something -- prompted you to search your records

04:42PM  21   last summer for notes or anything about these warrants,

04:42PM  22   correct?

04:42PM  23   A.  Correct.

04:42PM  24   Q.  And you looked and there aren't any that you have?

04:42PM  25   A.  Correct.

04:42PM   1   Q.  Now, sitting here today, other than what's included in

04:42PM   2   the documents, do you remember Detective Pat McMahon coming

04:42PM   3   to your house the evening of February 19th, 2020?

04:42PM   4   A.  I don't specifically recall that day.  They came to my

04:42PM   5   house many times.

04:42PM   6   Q.  Pat McMahon specifically?

04:42PM   7   A.  He definitely came to my house more than once in the

04:43PM   8   last -- since I have been a judge.  I don't know how many

04:43PM   9   times, but often, they would come with two or three people to

04:43PM  10   my house.

04:43PM  11   Q.  He'd come because he worked with DJ Granville with the

04:43PM  12   sheriffs?

04:43PM  13   A.  Correct.

04:43PM  14   Q.  And DJ Granville would come to you?

04:43PM  15   A.  Yes.

04:43PM  16   Q.  And you met with him on occasion?

04:43PM  17   A.  Yes.

04:43PM  18   Q.  You reviewed warrants that Chief Granville's asked you to

04:43PM  19   review?

04:43PM  20   A.  Yes.

04:43PM  21   Q.  And you've reviewed warrants that Detective Pat McMahon

04:43PM  22   has asked you to review?

04:43PM  23   A.  Yes.

04:43PM  24   Q.  And you've done that since February of 2020.  Have you

04:43PM  25   done that up through the present day?

CASE -- BY MR. GLABERSON -- 12/21/2022

04:43PM  1   A.  Yes.

04:43PM  2   Q.  Do you remember the last time Detective McMahon came to

04:43PM  3   you with a warrant for your review?

04:44PM  4   A.  Where he was the --

04:44PM  5   Q.  Where he was the affiant?

04:44PM  6   A.  Affiant.  It's actually been a while now.  I would have

04:44PM  7   to say it's probably been at least a year now.

04:44PM  8   Q.  Okay.  And do you remember that occasion?  In other

04:44PM  9   words, where you were or where he came to meet you?

04:44PM  10  A.  No.

04:44PM  11  Q.  Okay.  Now, February 19th of 2020, do you recall

04:44PM  12  receiving a phone call from Chief Granville about a warrant

04:44PM  13  application that he was trying to find a judge to review it?

04:55PM  14  A.  I don't specifically recall that day.  No.

04:55PM  15  Q.  And do you recall what you were doing when -- well, do

04:55PM  16  you have any reason to doubt that Detective McMahon came and

04:55PM  17  presented the warrants that are -- originals that are

04:55PM  18  Defendant's Exhibit 8?  Do you have any reason to doubt that

04:55PM  19  he came and you reviewed them and signed them?

04:55PM  20  A.  Oh, no.  He definitely did, but I just don't have

04:55PM  21  specific recollection of that day.

04:55PM  22  Q.  And we're going to look on the ELMO.  This is the 8:23

04:56PM  23  p.m. warrant that's up on the ELMO now.  That's Exhibit 8.

04:56PM  24  A.  Okay.

04:56PM  25  Q.  And that's your signature at the bottom of that search

04:56PM     1    warrant, right?

04:56PM     2    A.  Yes.

04:56PM     3    Q.  And that was at 8:32 p.m.?

04:56PM     4    A.  Yes.

04:56PM     5    Q.  And you know that from looking at the document?

04:56PM     6            THE COURT:  I thought we already established that on

04:56PM     7    direct.

04:56PM     8            MR. GLABERSON:  Yes.  Yes, Your Honor.

04:56PM     9    BY MR. GLABERSON:

04:56PM    10    Q.  You know that from looking at the document?

04:56PM    11    A.  Yes.

04:56PM    12            THE COURT:  I thought he did that on direct.  Why are

04:56PM    13    we doing this?

04:56PM    14            MR. GLABERSON:  I'm just trying to nail down the

04:56PM    15    chronology here.

04:56PM    16            THE COURT:  Nail down?  This is a Judge under oath

04:56PM    17    saying that was his signature.  He said it on direct.

04:57PM    18            MR. GLABERSON:  I know but --

04:57PM    19    BY MR. GLABERSON:

04:57PM    20    Q.  I guess my next question is, do you have an independent

04:57PM    21    memory of it being 8:32 p.m.?

04:57PM    22    A.  Oh, no.

04:57PM    23    Q.  Do you know how long Detective McMahon had been at your

04:57PM    24    house before you signed this particular warrant?

04:57PM    25    A.  No.

| | | |
|---|---|---|
| 04:57PM | 1 | Q.  And do you know or do you recall who, if anybody, was |
| 04:57PM | 2 | with him that night? |
| 04:57PM | 3 | A.  No. |
| 04:57PM | 4 | Q.  Do you know if anybody else was home with you that |
| 04:57PM | 5 | evening? |
| 04:57PM | 6 | A.  No. |
| 04:57PM | 7 | Q.  Do you remember what day of the week it was? |
| 04:58PM | 8 | A.  No. |
| 04:58PM | 9 | Q.  Do you know what you were doing before you got there? |
| 04:58PM | 10 | THE COURT:  You were the one that was objecting to a |
| 04:58PM | 11 | lot of irrelevancies before.  What does this have to do with |
| 04:58PM | 12 | the issue of probable cause?  He's admitted it's his |
| 04:58PM | 13 | signature.  He's admitted he issued the warrants.  Why do we |
| 04:58PM | 14 | know what day of the week it was or what he was doing |
| 04:58PM | 15 | afterwards? |
| 04:58PM | 16 | MR. GLABERSON:  Your Honor, there were a lot of |
| 04:58PM | 17 | questions about what specifically on the night in question |
| 04:58PM | 18 | Judge Case was thinking, what he was assuming. |
| 04:58PM | 19 | THE COURT:  But the government's position is, the |
| 04:58PM | 20 | only issue in this case should be whether there's probable |
| 04:58PM | 21 | cause or not. |
| 04:58PM | 22 | MR. GLABERSON:  And now, on cross-examination, I'm |
| 04:58PM | 23 | trying to flush out how -- the veracity of his memory of that |
| 04:58PM | 24 | night. |
| 04:58PM | 25 | THE COURT:  What's that got to do with his memory? |

04:58PM 1    It's whether he signed the warrant or not.  He admitted he

04:58PM 2    signed the warrant.  The warrant speaks for itself.  That's

04:59PM 3    what I'm going to be reviewing.

04:59PM 4          MR. GLABERSON:  Okay.

04:59PM 5    BY MR. GLABERSON:

04:59PM 6    Q.  Now, this mark on the first page of that 8:32 warrant,

04:59PM 7    you can see on the original -- and I can zoom in -- that

04:59PM 8    there's a Wite Out tape strip across the words lower front.

04:59PM 9    Do you see that, Judge?

04:59PM 10   A.  Yes.

04:59PM 11   Q.  Now, sitting here today, do you have personal knowledge

04:59PM 12   of how that Wite Out got onto that document?

04:59PM 13   A.  No.

04:59PM 14   Q.  Do you recall if it happened at your house or somewhere

04:59PM 15   else?  Do you have any memory of that?

04:59PM 16   A.  No.

04:59PM 17   Q.  Now, after you signed the warrant, did Detective McMahon,

04:59PM 18   and whomever he was with that night, stay at your house or

05:00PM 19   did they leave?

05:00PM 20   A.  I don't recall.

05:00PM 21   Q.  And I think you said before, about a 25-minute drive to

05:00PM 22   45 Elm Street?

05:00PM 23   A.  Yes.

05:00PM 24   Q.  Now, do you have a memory of a phone call from Detective

05:00PM 25   McMahon to you at a few minutes before 9 p.m. on February

| 05:00PM | 1 | 19th?  Do you recall getting that phone call? |
| 05:00PM | 2 | A.  No. |
| 05:00PM | 3 | Q.  And do you recall getting another phone call from him |
| 05:00PM | 4 | about five minutes later? |
| 05:00PM | 5 | A.  No. |
| 05:00PM | 6 | Q.  Now, this is the application for Defendant's Exhibit 8, |
| 05:01PM | 7 | the application for the 9:48 warrant.  So, 9:48, that's the |
| 05:01PM | 8 | time the second warrant we're talking about here was signed, |
| 05:01PM | 9 | correct? |
| 05:01PM | 10 | THE COURT:  That's Government Exhibit 9. |
| 05:01PM | 11 | BY MR. GLABERSON: |
| 05:01PM | 12 | Q.  And do you have a memory of what time Detective McMahon |
| 05:01PM | 13 | returned to your home that evening? |
| 05:01PM | 14 | A.  No. |
| 05:01PM | 15 | Q.  And do you remember how long he might have been there |
| 05:02PM | 16 | before 9:48? |
| 05:02PM | 17 | A.  No. |
| 05:02PM | 18 | Q.  Do you remember having any discussion, or what he might |
| 05:02PM | 19 | have said to you, during that period however long he was |
| 05:02PM | 20 | there? |
| 05:02PM | 21 | A.  Only what's been amended in the application or search |
| 05:02PM | 22 | warrant. |
| 05:02PM | 23 | Q.  And this is -- we were just looking at Defendant's P and |
| 05:02PM | 24 | Government Exhibit 9, paragraph 2A? |
| 05:02PM | 25 | A.  Yes. |

05:02PM  1   Q.  And do you remember him telling you those things that are

05:02PM  2   recorded in paragraph 2A or are you reading them off the page

05:03PM  3   here?

05:03PM  4   A.  No, I remember that.

05:03PM  5   Q.  So, you remember him telling you verbatim what's in this

05:03PM  6   paragraph or in sum and substance?

05:03PM  7   A.  Probably not verbatim but, yeah, certainly sum and

05:03PM  8   substance.

05:03PM  9   Q.  And that's your handwriting, correct?

05:03PM  10   A.  Yes.  That's my handwriting, and my initials right after.

05:03PM  11   Q.  So, fair to say he told you -- you had a discussion with

05:03PM  12   him that led to you writing paragraph 2A on this document?

05:03PM  13   A.  Correct.

05:03PM  14   Q.  And you might have asked questions, but you don't recall

05:03PM  15   if you did of him?

05:03PM  16   A.  Correct.  Right.

05:04PM  17   Q.  And to the extent you asked him any questions, you don't

05:04PM  18   remember specifically what those were?

05:04PM  19   A.  No.

05:04PM  20   Q.  And at the top here?

05:04PM  21   A.  Okay.

05:04PM  22   Q.  Fifty-six Grimes Street, upper rear, attic, and detached

05:04PM  23   garage.  That's your handwriting as well?

05:04PM  24   A.  Yes.

05:04PM  25   Q.  And underneath it looks like you can see there's some --

05:04PM  1  you can kind of see angles from the Wite Out tape.  Do you

05:04PM  2  see that?

05:04PM  3  A.  Yes.

05:04PM  4  Q.  And so, it appears from the document that those weren't

05:04PM  5  written on top of Wite Out tape; is that correct; or a

05:05PM  6  photocopy of it?

05:05PM  7  A.  Right.  Yes.

05:05PM  8  Q.  And you don't know which one, or you don't remember which

05:05PM  9  one at this point, I guess?

05:05PM  10  A.  I don't, but, I mean, I wouldn't have written over Wite

05:05PM  11  Out tape on the original warrant.  Do you know what I mean?

05:05PM  12  Q.  Yes.  Oh, no.  Yeah.  So, does that mean that, based on

05:05PM  13  sitting here today looking at the document, you believe this

05:05PM  14  is a photocopy of the item with the Wite Out on it?

05:05PM  15  A.  Correct.  Yes.

05:05PM  16  Q.  And do you have a memory or do you recall where that

05:05PM  17  photocopy came from?

05:06PM  18  A.  I don't.

05:06PM  19  Q.  And sitting here today, do you have any memory of where

05:06PM  20  or when that photocopy was made?

05:06PM  21  A.  No.

05:06PM  22  Q.  Now, did Detective McMahon tell you anything else beyond

05:06PM  23  what's in paragraph 2A in the other handwriting sections, if

05:06PM  24  you remember?

05:06PM  25  A.  Not that I recall.  And I think it -- had he told me

| | | |
|---|---|---|
| 05:06PM | 1 | something, it would have, as I added paragraph 2A, I would |
| 05:06PM | 2 | have put that in as well if I thought it was relevant anyway. |
| 05:06PM | 3 | Q.  And that's based on your experience and your history as a |
| 05:06PM | 4 | judge and your practice in the past? |
| 05:06PM | 5 | A.  Correct. |
| 05:06PM | 6 | Q.  But, again, there's no specific memory of the other |
| 05:07PM | 7 | events that happened in your house that night? |
| 05:07PM | 8 | A.  No. |
| 05:07PM | 9 | Q.  And are you familiar with some of the -- fellow officer |
| 05:07PM | 10 | role? |
| 05:07PM | 11 | A.  Yes. |
| 05:07PM | 12 | Q.  And so, fair to say that law enforcement in the field |
| 05:07PM | 13 | would have a very difficult time doing their job if they |
| 05:07PM | 14 | couldn't accumulate the knowledge of the investigation and |
| 05:07PM | 15 | then rely on that, correct? |
| 05:07PM | 16 | A.  You mean from other officers? |
| 05:07PM | 17 | Q.  Yes. |
| 05:07PM | 18 | A.  Yes.  Correct. |
| 05:07PM | 19 | Q.  And that's something that, in your experience, officers, |
| 05:07PM | 20 | patrol officers, detectives, do regularly? |
| 05:07PM | 21 | A.  Yes. |
| 05:07PM | 22 | Q.  And your -- signed the original warrant at 8:32? |
| 05:07PM | 23 | A.  Yes. |
| 05:07PM | 24 | Q.  And this warrant ultimately is signed at 9:48.  It's fair |
| 05:07PM | 25 | to say you didn't believe that Detective McMahon went to your |

05:08PM   1   house and got the warrant, went down to 56 Grimes Street,

05:08PM   2   executed the warrant himself, and then came back and told you

05:08PM   3   what happened with the warrant in time for you to sign it at

05:08PM   4   9:48.  That's not what you thought the night in question,

05:08PM   5   correct, if you remember?

05:08PM   6           THE COURT:  You're asking him to assume that?

05:08PM   7           MR. GLABERSON:  I'm asking if he recalls.

05:08PM   8           THE COURT:  Are you asking to assume it?

05:08PM   9           MR. GLABERSON:  Yes.

05:08PM  10           THE WITNESS:  I don't recall.

05:08PM  11   BY MR. GLABERSON:

05:08PM  12   Q.  And you're familiar with -- I guess you have cases where

05:08PM  13   officers have testified before you?

05:09PM  14   A.  Yes.

05:09PM  15   Q.  And you've reviewed their warrants in the past and

05:09PM  16   received their returns?

05:09PM  17   A.  Yes.

05:09PM  18   Q.  And Detective McMahon, DJ Granville, and the rest of the

05:09PM  19   team, they work together, in your experience, basically, all

05:09PM  20   the time?

05:09PM  21   A.  Yes.

05:09PM  22   Q.  With regard to the return, beginning of -- Defendant's

05:09PM  23   Exhibit 8, this is the 26th day of February 2020, the return

05:09PM  24   for both warrants, the one with the Wite Out, and the one

05:09PM  25   with not the Wite Out?

CASE -- BY MR. GLABERSON -- 12/21/2022

| | | |
|---|---|---|
| 05:09PM | 1 | A.  Yes. |
| 05:09PM | 2 | THE COURT:  Government Exhibit 8 and 9. |
| 05:09PM | 3 | MR. GLABERSON:  Yes, and Defendant's Exhibit 8 and |
| 05:10PM | 4 | P-1, I guess. |
| 05:10PM | 5 | BY MR. GLABERSON: |
| 05:10PM | 6 | Q.  But your -- sitting here today, do you recall Pat McMahon |
| 05:10PM | 7 | coming to you and doing this return at your office? |
| 05:10PM | 8 | A.  No. |
| 05:10PM | 9 | Q.  And when you receive a return, do you go through the |
| 05:10PM | 10 | documents? |
| 05:10PM | 11 | A.  Yes. |
| 05:10PM | 12 | Q.  And you look at the inventory attached if there's one |
| 05:10PM | 13 | attached? |
| 05:10PM | 14 | A.  Yes. |
| 05:10PM | 15 | Q.  And then you take control of it? |
| 05:10PM | 16 | A.  Of the return? |
| 05:10PM | 17 | Q.  Document -- of the document? |
| 05:10PM | 18 | A.  Yes.  Right. |
| 05:10PM | 19 | Q.  And I think what you testified before was, and then you |
| 05:10PM | 20 | tell the officer, okay, we'll file this with the clerk's |
| 05:10PM | 21 | office? |
| 05:10PM | 22 | A.  Correct. |
| 05:10PM | 23 | Q.  So, on February 26th, Detective McMahon took both |
| 05:11PM | 24 | warrants and returned them to your office? |
| 05:11PM | 25 | A.  Yes. |

05:11PM 1    Q.  And then, at some point later, they were filed with the

05:11PM 2    clerk's office?

05:11PM 3    A.  Correct.

05:11PM 4    Q.  And that was done by your secretary or somebody in your

05:11PM 5    office?

05:11PM 6    A.  Correct.

05:11PM 7    Q.  And sitting here today, do you recall looking through the

05:11PM 8    warrant return and seeing the Wite Out tape on the search

05:11PM 9    warrant?

05:11PM 10   A.  No.

05:11PM 11            MR. GLABERSON:  One second, Your Honor.

05:11PM 12            THE COURT:  Yes.

05:12PM 13   BY MR. GLABERSON:

05:12PM 14   Q.  There are a couple other items.  So, drawing your

05:12PM 15   attention, Judge --

05:12PM 16            THE WITNESS:  Can I correct just one answer I

05:12PM 17   previously gave, Your Honor?

05:12PM 18            THE COURT:  I'm sorry?

05:12PM 19            THE WITNESS:  I had stated previously that my printer

05:13PM 20   wasn't working at the time.  And, as I'm sitting here

05:13PM 21   thinking, I think it was after we moved.  And we moved --

05:13PM 22            THE COURT:  Don't give addresses.

05:13PM 23            THE WITNESS:  Okay.  We moved in July of 2020 and it

05:13PM 24   was after that that it was not working.  So, it very well

05:13PM 25   could have been working at the time of this in February of

05:13PM  1   2020.  I apologize.

05:13PM  2   BY MR. GLABERSON:

05:13PM  3   Q.  No.  And that printer is the one you had problems with?

05:13PM  4   A.  Yes.

05:13PM  5   Q.  And in February of 2020, that is the printer you had in

05:13PM  6   your home office?

05:13PM  7   A.  Yes.

05:13PM  8   Q.  And it had a fax capability?

05:13PM  9   A.  Correct.

05:13PM  10  Q.  A scan capability?

05:13PM  11  A.  Correct.

05:13PM  12  Q.  And a photocopy?

05:13PM  13  A.  Yes.

05:13PM  14  Q.  So, you could do all those things with that printer?

05:13PM  15  A.  Yes.

05:13PM  16  Q.  All right.  Now, this is Defendant's Exhibit 8.  This is

05:14PM  17  the same signature block from the application for 56 Grimes

05:14PM  18  Street lower front.

05:14PM  19  A.  Okay.

05:14PM  20  Q.  Is that what that is?

05:14PM  21  A.  Yes.

05:14PM  22  Q.  And that's your signature at the bottom?

05:14PM  23  A.  Yes.

05:14PM  24  Q.  And Detective McMahon?

05:14PM  25  A.  Yes.

CASE -- BY MR. GLABERSON -- 12/21/2022

05:14PM   1   Q.  And this is the signature block for the second warrant at

05:14PM   2   9:48, warrant from Defendant's Exhibit 8?

05:14PM   3   A.  Yes.

05:14PM   4   Q.  Fifty-six Grimes Street, upper rear, and detached garage?

05:14PM   5   A.  Correct.

05:14PM   6   Q.  And down at the bottom, you see these extended lines of

05:14PM   7   Detective McMahon and your signature?

05:14PM   8   A.  Yes.

05:14PM   9   Q.  Do you know what those lines are from on this document?

05:15PM  10   A.  No.

05:15PM  11   Q.  And do you know if you signed over the original warrant

05:15PM  12   and just put either a piece of tape or a piece of paper so

05:15PM  13   that you could sign in the same signature block that already

05:15PM  14   had your signature?  Do you know if that happened?

05:15PM  15   A.  I don't remember that, but that could certainly have been

05:16PM  16   the case.  Yes.

05:16PM  17   Q.  Just drawing your attention to the -- do you see this

05:16PM  18   line next to the Honorable?  Do you see that's connected to

05:16PM  19   your signature?

05:16PM  20   A.  Yes.

05:16PM  21   Q.  Going back to the original application from the 8:32

05:16PM  22   warrant, does that appear to be the same line as the H in

05:17PM  23   Honorable?

05:17PM  24   A.  It looks a little different, I guess.

05:17PM  25   Q.  And so, is it, I guess, based -- you don't have a memory

CASE -- BY MR. GLABERSON -- 12/21/2022

80

05:17PM   1   now of signing both of those warrants, correct?

05:17PM   2   A.   I don't remember.

05:17PM   3   Q.   It's possible that you did sign your signature on top of

05:17PM   4   the pre-existing signature to kind of effectuate a new

05:17PM   5   warrant, and that would be the 9:48 warrant?

05:17PM   6           THE COURT:   I'm not sure I understand that question.

05:17PM   7   BY MR. GLABERSON:

05:17PM   8   Q.   In other words, if you just Wite Out the lower front and

05:17PM   9   then you receive the same documents, your signature would

05:17PM  10   still be on them, correct?

05:18PM  11   A.   Oh, correct.   Yeah.

05:18PM  12   Q.   You would need to do something so that you could sign it

05:18PM  13   again?

05:18PM  14   A.   Correct.   Yes.

05:18PM  15   Q.   You wouldn't rely on your pre-existing signature?

05:18PM  16   A.   Correct.   Yes.

05:18PM  17   Q.   You would swear the officer again, correct?

05:18PM  18   A.   Correct.

05:18PM  19   Q.   And you would sign it again?

05:18PM  20   A.   Yes.

05:18PM  21   Q.   And seeing the documents, as they stand now, with just

05:18PM  22   the one strip of Wite Out, that would have to be done some

05:18PM  23   way.   And you don't remember exactly how that was

05:18PM  24   accomplished?

05:18PM  25   A.   Correct.   Right.

05:18PM    1    Q.  Possible that you put a piece of paper or something else

05:18PM    2    over the original signature to sign it again?

05:18PM    3              THE COURT:  Are you questioning the validity of the

05:18PM    4    signature?

05:18PM    5              MR. LYNCH:  No.

05:18PM    6              MR. GLABERSON:  No.  I'm just trying to establish the

05:18PM    7    mechanism by which the Wite Out and the other markings were

05:18PM    8    made for the 9:48 warrant.

05:18PM    9              THE COURT:  No.  The only Wite Out I was concerned

05:18PM   10    with was the one on the covering of the lower front.

05:19PM   11              MR. GLABERSON:  And I'm trying to establish that the

05:19PM   12    warrant was actually signed a second time.

05:19PM   13              THE COURT:  I don't think anybody takes the position

05:19PM   14    that the warrants weren't signed by Judge Case and Judge Case

05:19PM   15    has testified under oath those are his signatures and he

05:19PM   16    issued those warrants.

05:19PM   17              MR. GLABERSON:  All right.  And I only have just, I

05:19PM   18    think, two more questions.

05:19PM   19    BY MR. GLABERSON:

05:19PM   20    Q.  When you say that you received information from Detective

05:19PM   21    McMahon that you believe was his personal knowledge, that's

05:19PM   22    what you testified about?

05:19PM   23    A.  Right.

05:19PM   24    Q.  Does that include information that, through the fellow

05:19PM   25    officer rule, that you received from members of his team that

05:19PM    1    was working hand-in-glove with?

05:20PM    2    A.   Yes.

05:20PM    3            MR. GLABERSON:  I have no more questions.

05:20PM    4            THE COURT:  Mr. Harrington?

05:20PM    5

05:20PM    6                      REDIRECT EXAMINATION

05:20PM    7

05:20PM    8    BY MR. HARRINGTON:

05:20PM    9    Q.   Judge Case, just a couple of questions.

05:20PM   10    A.   Sure.

05:20PM   11    Q.   Mr. Glaberson just asked you about the process of the

05:20PM   12    information that you put into the second warrant application,

05:20PM   13    and you can't recall whether the wording of that was yours or

05:20PM   14    whether it was McMahon's or a combination?

05:21PM   15    A.   Correct.

05:21PM   16    Q.   Okay.  There was no question about the fact the

05:21PM   17    information came from him, correct?

05:21PM   18    A.   Correct.

05:21PM   19    Q.   And did you feel you were assisting him in preparing the

05:21PM   20    warrant?

05:21PM   21    A.   No.  No.  He was -- he gave me the additional information

05:21PM   22    and, I said, that information needs to be in the warrant.

05:21PM   23    And at that point in time, the -- not the warrant -- the

05:21PM   24    application wasn't in front of me.  So, I think I just wrote

05:21PM   25    it and I asked him to look at it to see if it was -- that's

05:21PM    1   what he was saying, and if it was, that he should initial it

05:21PM    2   and I would initial it.

05:21PM    3   Q.  Mr. Glaberson asked you a question -- just to clarify

05:22PM    4   this -- about signing of the second warrant.  Do you recall

05:22PM    5   signing over your signature from the first warrant on a

05:22PM    6   photocopy that had become an original?

05:22PM    7   A.  I don't.  I thought the question was, did they Wite Out

05:23PM    8   lower front and put something over my signature and then

05:23PM    9   photocopy it so that I could then sign it which, I don't

05:23PM   10   remember doing, but that's certainly possible.

05:23PM   11   Q.  Going to show you Defendant's Exhibit P-1, the signature

05:23PM   12   page on 9:48?

05:23PM   13            THE COURT:  Which is Government Exhibit 9.

05:23PM   14   BY MR. HARRINGTON:

05:23PM   15   Q.  Is that your signature?

05:23PM   16   A.  That is my signature.  Yes.

05:23PM   17   Q.  You look at all the signatures throughout these documents

05:23PM   18   that have your name on it; is that right?

05:23PM   19   A.  Yes.

05:23PM   20   Q.  Are there any of those that you have any question about?

05:23PM   21   A.  No.  Those are my signatures.

05:23PM   22            MR. HARRINGTON:  I have nothing further, Judge.

05:23PM   23            THE COURT:  All right.  Thank you, Judge.

05:23PM   24            THE WITNESS:  Thank you, Judge.

05:23PM   25   (The witness was excused at 4:37 p.m.)

05:24PM   1          MR. HARRINGTON:  Judge, let the record show I'm

05:24PM   2   returning the original Erie County Clerk docket to the Judge.

05:24PM   3          THE COURT:  All right.  Let the record reflect that

05:24PM   4   Mr. Harrington is returning the documents that were subpoenaed

05:24PM   5   as part of the subpoena served on Judge Case, and Judge Case

05:24PM   6   is taking those records into his possession, and will

05:24PM   7   transport them back to the appropriate state depository.

05:24PM   8      Any other witnesses, gentlemen?

05:24PM   9          MR. HARRINGTON:  Judge, we do have several witnesses,

05:24PM  10   but we need another day to do it.

05:24PM  11          THE COURT:  All right.  Do you have an idea how many

05:24PM  12   we're talking about and how long; so, whether we need one,

05:25PM  13   two, three days?

05:25PM  14          MR. HARRINGTON:  Judge, I think the most we would

05:25PM  15   need is two, but we may be able to do it in a day.  One of the

05:25PM  16   decisions is whether we decide to call certain witnesses or

05:25PM  17   not, which we're discussing now.

05:25PM  18          THE COURT:  So, we talking about some time in

05:25PM  19   January?

05:25PM  20          MR. HARRINGTON:  Yes.

05:25PM  21          THE COURT:  Want to suggest some dates?

05:25PM  22          MR. HARRINGTON:  I think Mr. Thompson has trial

05:25PM  23   starting in mid-January, Judge, so if we could do it before

05:25PM  24   that, that would probably be good.

05:25PM  25          THE COURT:  Yes.  I'd like to finish this up as soon

05:25PM   1    as possible because I am now taking care of all of the other

05:25PM   2    co-defendants.

05:25PM   3         MR. LYNCH:  Right, Judge.  We agree.  I think -- I

05:25PM   4    don't know if I can suggest the week of the 9th.

05:26PM   5    Mr. Harrington and Mr. Thompson indicated they wanted to meet

05:26PM   6    with me the first week of January.  So, I think, if we

05:26PM   7    could -- I had already told them I could accomplish that.

05:26PM   8    Mr. Glaberson and I would make ourselves available and then

05:26PM   9    the week of the 9th I think would be something that we can

05:26PM  10    accomplish.

05:26PM  11         MR. HARRINGTON:  Judge, our meeting would be to try

05:26PM  12    to narrow down, through stipulations or whatever, any other

05:26PM  13    things that we might want to put it in to avoid having to have

05:26PM  14    witness testify.  So, we want to work toward making it get

05:26PM  15    finished.

05:26PM  16         THE COURT:  So, on the 4th, I have naturalization and

05:27PM  17    I have got some motions.  I'm trying to reopen a suppression

05:27PM  18    hearing.

05:27PM  19         MR. GLABERSON:  Judge, I think we're looking at the

05:27PM  20    following week.

05:27PM  21         THE COURT:  The following week --

05:27PM  22         MR. LYNCH:  Yeah.

05:27PM  23         THE COURT:  -- the 9th?

05:27PM  24         MR. LYNCH:  Correct.

05:27PM  25         THE COURT:  The 9th looks all right for me.

05:27PM   1          MR. LYNCH:  Me too.

05:27PM   2          THE COURT:  The 10th is just a conference I can take

05:27PM   3   care of.  So, the 9th and the 10th are all right.

05:27PM   4          MR. LYNCH:  Why don't we -- can we schedule that for

05:27PM   5   10:30, Mr. Harrington?  And if Mr. Harrington and I decide we

05:27PM   6   don't need both days, we'll just notify Llane right away.

05:27PM   7          MR. THOMPSON:  I have an issue just on the morning of

05:27PM   8   the 9th.  I have an issue, but other than that, the 10th is

05:27PM   9   completely clear.

05:27PM  10          THE COURT:  I could do the afternoon of the 9th and

05:27PM  11   carry over to the 10th?

05:28PM  12          MR. LYNCH:  Fine with me.

05:28PM  13          MR. HARRINGTON:  Judge, I have a sentencing with

05:28PM  14   Judge Sinatra at 1 o'clock.  I could probably ask to move that

05:28PM  15   to a different time.

05:28PM  16          THE COURT:  I don't want to interfere with that.

05:28PM  17          MR. LYNCH:  Why don't we just plan on 2?  Would that

05:28PM  18   be okay, Mr. Harrington?  Would that give you enough time?

05:28PM  19          MR. HARRINGTON:  Sure.

05:28PM  20          MR. LYNCH:  Judge Sinatra is relatively quick with

05:28PM  21   sentencings.

05:28PM  22          MR. THOMPSON:  I actually have a competency hearing,

05:28PM  23   not mine, but for a client the afternoon of the 9th.

05:28PM  24          THE COURT:  So, the 10th I'm okay on, and the 11th

05:28PM  25   I'm okay on.

05:28PM    1                MR. LYNCH:  That's fine with us too.  Well, I mean --

05:28PM    2                MR. THOMPSON:  Me too.

05:28PM    3                MR. HARRINGTON:  I'm good all of those.

05:28PM    4                THE COURT:  So, 10th and 11th?

05:28PM    5                MR. LYNCH:  Yes.

05:28PM    6                THE COURT:  In the meantime, Mr. Harrington, does the

05:29PM    7     defendant understand and agree and acknowledge that, upon the

05:29PM    8     filing of the motion, which is his motion to suppress in this

05:29PM    9     case, that filing automatically caused the Speedy Trial clock

05:29PM   10     to stop, pursuant to the provision in Title 18 of the United

05:29PM   11     States Code Section 3161 (h)(1)(D), and that the clock will

05:29PM   12     remain stopped until that motion has been resolved and,

05:29PM   13     therefor, the time until that resolution will not count

05:29PM   14     against the government for purposes of the Speedy Trial Act or

05:29PM   15     any other statutory time requirements that might be

05:29PM   16     applicable?

05:29PM   17                MR. HARRINGTON:  Yes, sir.

05:29PM   18                THE COURT:  Thank you.

05:29PM   19                MR. LYNCH:  Thank you, Judge.  Thank you, Llane.

05:29PM   20                THE COURT:  All right.  So, we're adjourned until

05:29PM   21     January the 10th at 10:30.

          22     (Proceedings concluded at 4:50 p.m.)

          23

          24

          25

1              *     *     *     *     *     *     *

2

3              I certify that the foregoing is a

4       correct transcription of the proceedings

5       recorded by me in this matter.

6

7

8

9                              s/ Megan E. Pelka, RPR

10                             Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25