UNITED STATES  DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------x          20-CR-29(RJA-HKS)
UNITED STATES OF AMERICA,

vs.
                                       Buffalo, New York
DAVID WASHINGTON                       January 25, 2024
and DAVID BURGIN,
            Defendants.
----------------------------x

**ORAL ARGUMENT**

TRANSCRIPT OF PROCEEDINGS
BEFORE MAGISTRATE JUDGE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE


TRINI E. ROSS, ESQ.
United States Attorney
BY:  TIMOTHY C. LYNCH, AUSA
BY:  EVAN K. GLABERSON, AUSA
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202

FOR DEFENDANT:        MARK A. FOTI, ESQ.
(Washington)          16 W. Main Street
(Not present)         Suite 100
                      Rochester, New York 14614

FOR DEFENDANT:        DONALD M. THOMPSON, ESQ.
(Burgin)              16 W. Main Street
                      Suite 243
                      Rochester, New York 14614
                           -and-
                      HARRINGTON AND MAHONEY
                      BY:  JAMES P. HARRINGTON, ESQ.
                      70 Niagara Street
                      Third Floor
                      Buffalo, New York 14202

TRANSCRIBER:          Diane S. Martens
                      dimartens55@gmail.com


(Proceedings recorded by electronic audio recording,
 transcript produced by computer.)

U.S. v. Washington/Burgin - 20-CR-29

# P R O C E E D I N G S

2          *               *               *

4     (**WHEREUPON**, Defendant Burgin present.)

5     **THE CLERK:**   This is United States v. David Washington

6  and David Burgin, docket number 20-CR-29.

7     This is the date set for oral argument on supplemental

8  motions.

9     Assistant United States Attorneys Timothy Lynch and Evan

10  Glaberson appearing on behalf of the government.

11     James Harrington and Donald Thompson appearing with

12  David Burgin.

13     **MAGISTRATE JUDGE SCHROEDER:**   Good morning.

14     **MR. HARRINGTON:**   Morning, Judge.

15     **MR. THOMPSON:**   Morning, your Honor.

16     **MAGISTRATE JUDGE SCHROEDER:**   I understand that Mr. Foti

17  and Mr. Washington are not appearing?

18     **MR. LYNCH:**   Judge, I can report on that.

19     I spoke to Mr. Foti just a few minutes ago and he

20  indicated to me that he had checked the calendar and he

21  didn't see the case on.  That's what he said, and he

22  apologized to the Court.  Otherwise, he would have been here,

23  so -- and his client would have been here.

24     I think Mr. Harrington had a request to the Court, also.

25     Mr. Foti indicated that he would be available to

U.S. v. Washington/Burgin - 20-CR-29

1    reschedule for December 9th -- I'm sorry, February 9th.

2        **MAGISTRATE JUDGE SCHROEDER:**  I'm bewildered.  How could

3    he not know it was on the calendar if we've been messing with

4    this situation for months?

5        **MR. LYNCH:**  Yeah, that you'll have to ask him when he

6    arrives on February 9th.  He said he was going to communicate

7    something to the Court, I assume by letter.

8        **MAGISTRATE JUDGE SCHROEDER:**  Mr. Harrington.

9        **MR. HARRINGTON:**  Judge, the government and we were ready

10   to argue today but I, we got a response from the government

11   on Monday which, which is when it was due and they raised a

12   couple issues there that we feel -- we could talk about them

13   orally but we think it would be helpful to give you something

14   in writing from us in response to those.

15       But, in addition to that, we submitted a long list of

16   factual things that we're asking the Court to make findings

17   on because --

18       **MAGISTRATE JUDGE SCHROEDER:**  Some of which the

19   government says it's --

20       **MR. HARRINGTON:**  Right.

21       **MAGISTRATE JUDGE SCHROEDER:**  Willing to --

22       **MR. HARRINGTON:**  Right.

23       **MAGISTRATE JUDGE SCHROEDER:**  -- agree to which causes me

24   to say why not just enter into a stipulation of facts?

25       **MR. HARRINGTON:**  Well, we may.  But that leads to the

U.S. v. Washington/Burgin - 20-CR-29

1    next part of that which is some of the things that they've

2    already agreed to, I've realized have some inaccuracies so

3    that we need to make sure that if we stipulate or if you

4    approve it, that it's completely accurate.

5         So, we've agreed that I will meet with Mr. Lynch and Mr.

6    Glaberson next week and we will go through them all together

7    and I think we can reach accord on almost all of them.

8         And then in the meantime, we can prepare our response to

9    this.  And if the government approves -- or if the Court

10   approves, we agreed we would come back on February the 9th.

11   Our reply would be filed on February the 7th, if that's all

12   right with the judge.

13        **MAGISTRATE JUDGE SCHROEDER:**  Before you spend a lot of

14   time, you and Mr. Lynch, on this so-called stipulation of

15   facts, I'm still somewhat misunderstanding, I guess, as to

16   why we have to get into that kind of detail when I've already

17   indicated that, as far as I'm concerned, the search at 56

18   Grimes on February the 19th, 2020 was illegal.

19        **MR. HARRINGTON:**  Well, Judge, while we agree with you --

20        **MAGISTRATE JUDGE SCHROEDER:**  And --

21        **MR. HARRINGTON:**  -- wholeheartedly --

22        **MAGISTRATE JUDGE SCHROEDER:**  And so whether a door was

23   locked or wasn't locked or whether a stairway went from the

24   office to the attic or went from a bedroom to the attic, to

25   me, I fail to see any significance as to that kind of detail

U.S. v. Washington/Burgin - 20-CR-29

1  when I've indicated just being on the second floor of the

2  building was invalid and illegal.

3      **MR. HARRINGTON:**  Judge, unfortunately, from the defense

4  side, we know that there are people above you on a number of

5  levels --

6      **MAGISTRATE JUDGE SCHROEDER:**  What, you think they

7  wouldn't listen to me?

8      **MR. HARRINGTON:**  -- who may not agree with you and we

9  want to make sure we have other bases for them to consider,

10  in the event that they should improperly disagree with you.

11      **MAGISTRATE JUDGE SCHROEDER:**  No, I understand that.

12      But then it just comes down to the issue, as I see it,

13  of the first search warrant in question said it was

14  authorizing a search of the lower front of 56 Grimes.  It's

15  indisputable, based on the testimony at the hearings, that

16  the agents went up on to the second floor before they had a

17  second search warrant.

18      So, even if some higher court -- although it's hard to

19  imagine -- but even if they were to disagree with me and my

20  finding as to the second search warrant and its invalidity

21  and the activities of the law enforcement personnel in going

22  to the second floor without a search warrant, it seems to me

23  the only issue is what was authorized in the first warrant?

24  And that was an entry and search in the lower front, period.

25  Whether doors were locked or whether there were offices

U.S. v. Washington/Burgin - 20-CR-29

1  upstairs or bedrooms upstairs or apartments upstairs was

2  irrelevant.

3       **MR. LYNCH:**  Well, Judge, you know, again, we've --

4       **MAGISTRATE JUDGE SCHROEDER:**  I know you disagree with my

5  Report and Recommendation.

6       **MR. LYNCH:**  Right, because the defendant does have -- I

7  mean, the defendant has a burden to establish reasonable

8  expectation of privacy that's objectively and subjectively

9  reasonable but --

10      **MAGISTRATE JUDGE SCHROEDER:**  Let me interrupt you there.

11      One, if I recall, an affidavit was filed by Mr. Burgin

12  saying he had an office up there and he utilized that

13  apartment up there.  His mother owned the building and we had

14  testimony from Mr. Burgin himself indicating that --

15      (Extraneous noise.)

16      **MR. LYNCH:**  True, Judge, and I understand that.  But we

17  may -- we articulated at least four grounds why we thought

18  that, based on the law, that there were reasonable challenges

19  to his, his claim in that regard and some of it had to do

20  with, you know, the multiple access -- there were multiple

21  people who had access to the facility.  It was a commercial

22  premises.  The defendant, you know --

23      **MAGISTRATE JUDGE SCHROEDER:**  Wait a minute.  Wait a

24  minute.  Who had multiple access of the second floor?  Only,

25  as I recall the testimony of everybody that testified, it was

U.S. v. Washington/Burgin - 20-CR-29

1    Mr. Burgin and that tenant in the front --

2         **MR. LYNCH:**  So --

3         **MAGISTRATE JUDGE SCHROEDER:**  -- and the mother who owned

4    the building.

5         **MR. LYNCH:**  Right.  And Mr. Pierce because we know he

6    had the keys.

7         **MAGISTRATE JUDGE SCHROEDER:**  Well, no, the evidence

8    only -- relating to Mr. Pierce was he was seen going in and

9    out of the front door of 56 Grimes and that's why the

10   warrant, the first warrant said "lower front".

11        **MR. LYNCH:**  I think the defendant said Mr. Pierce had

12   it.  His own testimony was Mr. Pierce had it, his

13   brother-in-law had it, quote, unquote, anyone who has been

14   there in the last 22 years might have access.  He didn't know

15   because he didn't own the building.

16        But then if we even assume Mr. Loman exists, we know

17   that the key to the front landing of the second floor was the

18   same key that you used to enter the back landing on the

19   second floor.  So if you had access to the front area, you

20   had access to the back area.  And so our point was that whole

21   area -- they're not separate.  It's all one, one continuous

22   location.  And he said there were locked doors but our

23   photographic evidence demonstrates there were no locked doors

24   inside the second floor premises.

25        And so those were reasonable challenges we made that the

U.S. v. Washington/Burgin - 20-CR-29

1   R and R didn't address.  And so that's what -- that's really

2   what -- I mean, principally, we will be objecting on the

3   grounds that the Court didn't adequately consider the burden

4   that the defendant had to come forward with by a

5   preponderance of the evidence that he had a reasonable

6   expectation of privacy.  That's the first thing.

7       **MAGISTRATE JUDGE SCHROEDER:**  Well --

8       **MR. LYNCH:**  The second thing is --

9       **MAGISTRATE JUDGE SCHROEDER:**  Well, wait.

10      The entire second floor circumstance was conducted

11  illegally --

12      **MR. LYNCH:**  Okay.

13      **MAGISTRATE JUDGE SCHROEDER:**  -- in my R and R.

14      **MR. LYNCH:**  Right.  But if he doesn't have a reasonable

15  expectation of privacy in the second floor, then it doesn't

16  matter.

17      **MAGISTRATE JUDGE SCHROEDER:**  But he testified that he

18  utilized that apartment.  He testified that he had an office

19  there.  There was nothing put forth before Judge Case to

20  indicate anything about multiple people having access to the

21  second floor or that the defendant didn't have any

22  expectation of privacy in the second floor.  All that they

23  did with the second warrant was have Judge Case apparently

24  white out the words "lower front" and insert the additional

25  words "second floor for 56 Grimes but nothing else in the

U.S. v. Washington/Burgin - 20-CR-29

1  form of support for probable cause was inserted.

2      **MR. LYNCH:**  Yeah, Paragraph 2A was put into the second

3  affidavit regarding information --

4      **MAGISTRATE JUDGE SCHROEDER:**  Then they threw in the

5  garage --

6      **MR. LYNCH:**  Attic.

7      **MAGISTRATE JUDGE SCHROEDER:**  -- and attic but yet they

8  don't put forth in an affidavit by the sheriff's deputy as to

9  why the garage and the attic in any way would show the

10  existence of contraband.

11      **MR. LYNCH:**  And then we also establish coming -- as the

12  Court is aware, common areas are not, you know, they are not

13  subject to the same protections that a premises or a

14  residence would be.  So --

15      **MAGISTRATE JUDGE SCHROEDER:**  Where was there a common

16  area in the --

17      **MR. LYNCH:**  -- the attic.

18      **MAGISTRATE JUDGE SCHROEDER:**  Yeah but they actually

19  broke down the door.

20      **MR. LYNCH:**  No, they didn't.

21      **MAGISTRATE JUDGE SCHROEDER:**  They breached the door on

22  the second floor --

23      **MR. LYNCH:**  Right.

24      **MAGISTRATE JUDGE SCHROEDER:**  -- into that apartment area

25  and then they went to the attic.

U.S. v. Washington/Burgin - 20-CR-29

1      **MR. LYNCH:**  But the attic was accessible to Ray Loman

2    and to anyone else on the second floor.

3      **MR. HARRINGTON:**  Judge, that's -- wait.  Wait a minute.

4    He's making all sorts of arguments here.

5      First of all, we don't agree with them.

6      But, secondly, either we're going to argue it today or

7    we're not going to argue it today.  And, I mean, for example,

8    the issue about his standing here was never raised by the

9    government.  We submitted the affidavit.  We put on proof

10   about it and never questioned.

11     **MAGISTRATE JUDGE SCHROEDER:**  And I found that Mr. Burgin

12   had standing.

13     **MR. HARRINGTON:**  Right.

14     **MAGISTRATE JUDGE SCHROEDER:**  That's why we held a

15   evidentiary hearing.

16     **MR. HARRINGTON:**  Okay.

17     **MR. LYNCH:**  Well, but -- well, I mean to say we never

18   objected.  We, we -- first of all, we have claimed it

19   throughout.  We claimed it in our initial response to their

20   papers.  They filed a supplemental affidavit.  Okay, that was

21   enough to get a hearing.  Now we had a hearing and now we can

22   still --

23     **MR. HARRINGTON:**  But --

24     **MR. LYNCH:**  Just because you -- just because you had a

25   hearing doesn't mean you have established that you have a

U.S. v. Washington/Burgin - 20-CR-29

1   reasonable expectation of privacy.

2        **MAGISTRATE JUDGE SCHROEDER:**  Wait a minute.

3        **MR. LYNCH:**  It means you have --

4        **MAGISTRATE JUDGE SCHROEDER:**  Wait a minute.

5        **MR. LYNCH:**  -- enough to conduct --

6        **MAGISTRATE JUDGE SCHROEDER:**  Wait a minute.

7        **MR. LYNCH:**  -- a hearing.

8        **MAGISTRATE JUDGE SCHROEDER:**  Wait a minute.  Wait a

9   minute.  But Mr. --

10       **MR. LYNCH:**  We still have --

11       **MAGISTRATE JUDGE SCHROEDER:**  Mr. Burgin testified --

12       **MR. LYNCH:**  Okay.

13       **MAGISTRATE JUDGE SCHROEDER:**  But he testified as to why

14  he felt he had an expectation of privacy.

15       **MR. LYNCH:**  That --

16       **MAGISTRATE JUDGE SCHROEDER:**  He testified under oath as

17  to how he used those second floor premises and the government

18  never presented anything to contradict that.

19       **MR. LYNCH:**  Well, one, I cross-examined him, Judge, on

20  it.

21       **MAGISTRATE JUDGE SCHROEDER:**  And I've read the

22  cross-examination and you didn't establish anything to

23  indicate that Mr. Burgin didn't have an office there or that

24  he didn't use that second floor apartment.  In fact, the

25  government's claim was he was using it because they found the

U.S. v. Washington/Burgin - 20-CR-29

1     mail addressed to the other address.

2          **MR. HARRINGTON:**  Right.

3          **MAGISTRATE JUDGE SCHROEDER:**  So the government itself

4     was claiming he was using that place.

5          **MR. LYNCH:**  But, but, but there was other evidence --

6     Judge, all I'm saying is your R and R didn't address that.

7     Your R and R --

8          **MAGISTRATE JUDGE SCHROEDER:**  It didn't have to because

9     there was an invalid second search warrant --

10         **MR. LYNCH:**  So --

11         **MAGISTRATE JUDGE SCHROEDER:**  -- and the going into the

12    second floor for a protective sweep was invalid --

13         **MR. LYNCH:**  Okay.

14         **MAGISTRATE JUDGE SCHROEDER:**  Based on the testimony of

15    sheriff's deputy --

16         **MR. LYNCH:**  But that's --

17         **MAGISTRATE JUDGE SCHROEDER:**  -- being in the stairwell.

18         **MR. LYNCH:**  And then the only other -- I mean, the other

19    major point that, you know, we, we obviously -- your R and R

20    doesn't address inevitable discovery and that's --

21         **MAGISTRATE JUDGE SCHROEDER:**  Oh, that's an interesting

22    question.

23         How is it inevitably discoverable that the contents of

24    the second floor apartment was going to occur if there had

25    not been a valid entry into that second floor?  How was it

U.S. v. Washington/Burgin - 20-CR-29

1   going to be inevitably discovered?

2       **MR. LYNCH:**  Because once -- well, one, they got a search

3   warrant for the lower.

4       **MAGISTRATE JUDGE SCHROEDER:**  I'm sorry?

5       **MR. LYNCH:**  They got a search warrant for the lower

6   validly authorized.

7       **MAGISTRATE JUDGE SCHROEDER:**  The lower front.

8       **MR. LYNCH:**  Correct, I got it.

9       **MAGISTRATE JUDGE SCHROEDER:**  Which is a very limited

10  area.

11      **MR. LYNCH:**  Okay, but once you go in the premises,

12  Judge, there is to lower front.  We all know that.

13      **MAGISTRATE JUDGE SCHROEDER:**  There was a lower front.

14      **MR. LYNCH:**  There was no lower front.

15      **MAGISTRATE JUDGE SCHROEDER:**  There was a front door

16  on --

17      **MR. LYNCH:**  Right.

18      **MAGISTRATE JUDGE SCHROEDER:**  -- 56 Grimes which they saw

19  the codefendant enter and leave.  They went for the search

20  warrant based on what they observed.  The law enforcement

21  authorities utilized the term "lower front".

22      **MR. LYNCH:**  Right.  (Indiscernible.)

23      **MAGISTRATE JUDGE SCHROEDER:**  Now, I will give you the

24  front or lower floor was a bar area.

25      **MR. LYNCH:**  Correct.

U.S. v. Washington/Burgin - 20-CR-29

1      **MAGISTRATE JUDGE SCHROEDER:**  But that's all it was.  It

2  was an open area.

3      **MR. LYNCH:**  Correct.

4      **MAGISTRATE JUDGE SCHROEDER:**  That has nothing to do with

5  the second floor.  And how can you claim that what was on the

6  second floor would be inevitably discovered when they were on

7  the first floor?

8      **MR. LYNCH:**  Well, Judge, we actually -- I mean, one, we

9  cited Second Circuit cases that suggest that, you know,

10  situations where a protective sweep was done and --

11      **MAGISTRATE JUDGE SCHROEDER:**  A valid -- a valid

12  protective sweep.

13      **MR. LYNCH:**  An invalid one in the *Whitehorn* case and in

14  the *Schleede* case.  But, but --

15      **MAGISTRATE JUDGE SCHROEDER:**  Let me ask you this.  Do

16  you -- do you, as an officer of the court, really believe

17  that the actions of Captain --

18      **UNIDENTIFIED SPEAKER:**  Chief Granville.

19      **MAGISTRATE JUDGE SCHROEDER:**  -- Granville when he was

20  leading 12 to 14 officers to go into the lower front as the

21  warrant indicated, the front door on 56 Grimes that they saw

22  the codefendant go in and out twice, that he then goes into

23  the side door because Special Agent Webb says oh, no, no, no,

24  we have to go in the side door?  He goes into the side door

25  with all the officers behind him and he's now in a confined

U.S. v. Washington/Burgin - 20-CR-29

1   stare well with nothing but stairs going to the second floor,

2   that he acted reasonably instead of backing out and then

3   reconsidering what they should have done?  Which they

4   ultimately did.  They went in through the front door.

5       **MR. LYNCH:**  But I guess my point is on the inevitable

6   discovery -- and I, I understand Mr. Harrington's point,

7   we're not here to argue but the Court did open up the

8   inquiry.

9       Our point is inevitable discovery, Judge, that doctrine

10  applies because there was a Fourth Amendment violation.  So

11  we know that there's a string of cases that authorize and

12  will admit certain evidence over a suppression motion even

13  when there's a Fourth Amendment violation.  Otherwise, these

14  doctrines wouldn't exist.  And so the inevitable discovery

15  doctrine applies.  The independent source doctrine applies.

16      I mean, we, we had briefed this from the beginning of

17  the case.  It was part of our proof in the hearing.  So, the

18  R and R didn't address it and we think that those are valid

19  arguments.  I mean, we're fine to take it up to Judge Arcara

20  and that's okay.  But since we were coming back here anyways,

21  we opened up, obviously, arguments for the Court to

22  understand what our position was going to be.  If, if you

23  decline to entertain them or amplify your decision in any

24  way, we'll take it up to Judge Arcara -- that's perfectly

25  fine -- where there is a remedy for us.

U.S. v. Washington/Burgin - 20-CR-29

1      But I guess those are just some of the arguments that we

2  think that are factually and legally sound and while I

3  understand your concern about the entry into the second floor

4  not only once, not only twice, but three times, we understand

5  that, Judge, but -- and there is a balancing that is

6  conducted and, and there is an interest in the government

7  ensuring that even if there's police, alleged police

8  misconduct, that there is still an interest that society has

9  in making sure that the guilty essentially get convicted.

10  And there is a balancing that has to be conducted.  That's

11  why the inevitable discovery doctrine applies or is, is a

12  valid basis for the introduction of certain evidence.  And

13  we've, I think, Judge, legitimately set forth strong factual

14  and legal arguments for why that applies.

15      **MAGISTRATE JUDGE SCHROEDER:**  Let me ask you:  Why was

16  the exclusionary rule adopted?

17      **MR. LYNCH:**  Well, of course.  I mean, we agree.  There

18  has to be --

19      **MAGISTRATE JUDGE SCHROEDER:**  Why?

20      **MR. LYNCH:**  -- certain -- there has to be --

21      **MAGISTRATE JUDGE SCHROEDER:**  It was adopted to deter --

22      **MR. LYNCH:**  Yep.

23      **MAGISTRATE JUDGE SCHROEDER:**  -- illegal activity by law

24  enforcement officers.

25      **MR. LYNCH:**  Correct.  I -- Judge, I wholeheartedly

U.S. v. Washington/Burgin - 20-CR-29

1  agree.  But there are exceptions to the exclusionary rule and

2  one of them is the inevitable discovery doctrine.

3      **MAGISTRATE JUDGE SCHROEDER:**  And I ruled otherwise.  I

4  ruled that the conduct of the police officers, the sheriff's

5  officers and Special Agent Webb in this case, was abhorrent.

6      **MR. LYNCH:**  But that still -- we have raised a legal

7  argument based on facts that are in the record that the court

8  just didn't address.  And, and --

9      **MAGISTRATE JUDGE SCHROEDER:**  Only because I thought the

10  issues were mooted out by reason of the fact that the second

11  warrant was invalid and the search was invalid.

12      **MR. HARRINGTON:**  Judge -- Judge, this points out why

13  I -- we came back here asking you for other findings.  This

14  is exactly what it is.

15      **MAGISTRATE JUDGE SCHROEDER:**  I know.

16      **MR. HARRINGTON:**  And when you talk about things like

17  inevitable discovery, good faith and the rest of this

18  sophistry that does away with people's rights under the

19  Fourth Amendment, I mean, you can't trust anything, even a

20  brilliant decision from a magistrate judge.

21      **MAGISTRATE JUDGE SCHROEDER:**  I have real concerns with

22  respect to both sides' positions in that, once again, I know

23  you spend a good deal of time on the failure to comply with

24  New York Criminal Procedure Law or Penal Law on the obtaining

25  of the warrant, the execution of the warrant, the nonfiling

U.S. v. Washington/Burgin - 20-CR-29

1    of the warrant and so forth.

2        To me, the case law by the Supreme Court of the United

3    States clearly establishes that when deciding Fourth

4    Amendment issues, it's solely a federal analysis that

5    applies.  Even if state law is totally disregarded or

6    violated, so long as the Fourth Amendment procedures are

7    followed, it doesn't make any difference.

8        **MR. HARRINGTON:**  And what, what we say is there has to

9    be a baseline for that some place down in the gutter that

10   they can't just put flimsy allegations of probable cause,

11   violate the law over and over again and all the rest.  All we

12   want to do is make a record.  Even though --

13       **MAGISTRATE JUDGE SCHROEDER:**  Oh, no, I understand.

14       **MR. HARRINGTON:**  We're aware of what the cases say.

15   We're aware of that.

16       **MAGISTRATE JUDGE SCHROEDER:**  And I agree with you.  They

17   have to establish probable cause.  That's the requirement of

18   the Fourth Amendment.

19       **MR. HARRINGTON:**  Right.  And one of the -- we argue that

20   they didn't.

21       **MAGISTRATE JUDGE SCHROEDER:**  I know.  I'm --

22       **MR. HARRINGTON:**  In the first warrant --

23       **MAGISTRATE JUDGE SCHROEDER:**  I'm just saying --

24       **MR. LYNCH:**  In the first warrant --

25       **MAGISTRATE JUDGE SCHROEDER:**  I'm just saying the

U.S. v. Washington/Burgin - 20-CR-29

1    procedure of arguments as to the failure to comply with New

2    York State law doesn't impact on the probable cause issue.

3        **MR. HARRINGTON:**  But it matters because of the police

4    conduct itself, okay.  It's not like you got some rookie

5    comes in and he makes a bunch of mistakes and the dumb judge

6    gives him a warrant and off he goes and it ends up in federal

7    court.  That's not what we have here.  We argue that from the

8    beginning of this case through your decision, including the

9    testimony of these officers on the stand, that there was

10   misleading of all of the courts.  That's what we argue.

11       **MAGISTRATE JUDGE SCHROEDER:**  I understand.  I

12   understand.

13       **MR. LYNCH:**  And then --

14       **MAGISTRATE JUDGE SCHROEDER:**  And --

15       **MR. LYNCH:**  And Mr. Glaberson makes a good point, too,

16   Judge, to me, which is that the last thing I want to do is

17   come back here from Judge Arcara.  I mean, if we go up and he

18   says, well, I need more factual findings or, you know, go

19   back and have Judge Schroeder determine the standing issue

20   that you've raised here.  You know, we want to move this case

21   forward and the last thing I want to do is go up and then

22   find out I'm back here again -- not that I don't like you

23   Judge.  I like you.  I just -- I want to move this case

24   along.

25           And so really we're hoping that, you know, if we're

U.S. v. Washington/Burgin - 20-CR-29

1    back -- if we're already back here on supplemental motions,

2    I'd ask you to just really look at the arguments we've made

3    and just see if there's a way that, you know, one, I'd like

4    to convince you to think otherwise about your decision but if

5    you don't, at least decide the issues that we've raised.

6        **MAGISTRATE JUDGE SCHROEDER:**  Oh, I plan on --

7        **MR. LYNCH:**  Okay.

8        **MAGISTRATE JUDGE SCHROEDER:**  -- doing that.  I was just

9    looking for some further enlightenment to make sure that I'm

10   not missing something that I should consider.

11       For example, here is one issue that is troubling to me

12   from both perspectives.  And it's this:

13       There is case law that clearly establishes the principle

14   that a Constitutional right cannot be vicariously adopted by

15   a codefendant or by a third-party.

16       And so we have this issue that the claim is being made

17   by Mr. Washington that the search of 56 Grimes was illegal in

18   violation of the Fourth Amendment.  I've already ruled or

19   recommended that, yes, the search at 56 Grimes was in

20   violation of the Fourth Amendment but it was in violation of

21   the Fourth Amendment rights of Mr. Burgin, not Mr.

22   Washington.

23       And, therefore, if I follow the established case law of

24   the United States Supreme Court and lower courts, Mr.

25   Washington cannot validly and vicariously latch on to that

U.S. v. Washington/Burgin - 20-CR-29

1   violation because it's not his Fourth Amendment right that

2   was violated, it was Burgin's.

3       However, the other side of the coin that troubles me is

4   to what extreme can law enforcement go and have that

5   principle continue to apply?

6       And I give you this hypothetical:  A bunch of storm

7   troopers knowingly, intentionally storm into a residence of a

8   citizen who is suspected of being a drug king and a weapons

9   purveyor, without a search warrant, without anything, they

10  just storm in and they scoop up everything.  And in reviewing

11  and analyzing what they've scooped up from this act, they

12  find names and emails and documents leading to other people

13  and they use that evidence and that information to go and get

14  a search warrant for Citizen A, telling the judge that we

15  have recovered evidence that indicates that Citizen A is a

16  co-purveyor of firearms and drugs with this notorious other

17  individual and they don't tell the judge how they got this

18  evidence.

19      It seems to me that if we're going to be a law-abiding

20  Democracy, there's got to be some remedy to not allow that to

21  happen.  And that might be a further expansion of the

22  exclusionary rule as a means of deterring that kind of

23  activity by law enforcement personnel.

24      I put that out there for both sides' consideration in

25  further enlightening me.

U.S. v. Washington/Burgin - 20-CR-29

1      **MR. LYNCH:**  Well, obviously, that doesn't apply to

2  Mr. Burgin but we'll tell, we'll tell Mr. Foti that --

3      **MAGISTRATE JUDGE SCHROEDER:**  Yeah, that's why I'm --

4      **MR. LYNCH:**  Yeah.

5      **MAGISTRATE JUDGE SCHROEDER:**  -- somewhat concerned about

6  Mr. Foti not being present.

7      **MR. LYNCH:**  Right.  We'll send him an email addressing

8  that issue so he can be prepared for it.

9      **MAGISTRATE JUDGE SCHROEDER:**  All right.  Let me just

10 make sure that I now know all of the present outstanding

11 issues and so that we can wrap this thing up.

12     As to the defendant Washington, as I understand it,

13 Mr. Harrington, one of the claims is that the government has

14 not yet provided Rule 12 notice to the defendant.  It's at

15 Page 6 of your submission.

16     **MR. LYNCH:**  No, I think that --

17     **MR. HARRINGTON:**  Mr. Burgin.

18     **MR. LYNCH:**  Mr. Burgin is different.  You said Mr.

19 Washington.

20     **MAGISTRATE JUDGE SCHROEDER:**  I'm sorry, you're right.

21 No, I can't address Washington because Foti's not here.

22     As to Burgin, the defendant is asking me to make

23 supplemental findings of fact to the R and R and, as I've

24 indicated, based on what the government responded, it had no

25 objection to some of it but, yet, Mr. Harrington now

1    indicates there might be some further refinement that's
2    necessary.
3        I would accept a stipulation of facts just so I can make
4    a ruling.  But I still say I don't see the relevancy of it on
5    the issue of probable cause.  That is whether the doors were
6    locked, were the doors entered or what they entered into, et
7    cetera.
8        I also understand that the argument made on behalf of
9    the Defendant Burgin about the noncompliance with the New
10   York State law on search warrants.
11       But, once again, there, I rely on the Supreme Court
12   decision in *California v. Greenwood*, 486 United States 35, a
13   1988 decision, and *Virginia v. Moore*, a Supreme Court
14   decision, 553 U.S. 164, a 2008 decision which basically says
15   that even though individual states may construe their own
16   Constitutions as imposing more stringent constraints on
17   police conduct than does the federal Constitution, state law
18   does not alter the content of the Fourth Amendment and,
19   therefore, the analysis is to be done in a federal case in
20   accordance with federal law on the application of the Fourth
21   Amendment.
22       The third claim on behalf of the defendant Burgin, as I
23   understand it, is the claim that there was no probable cause
24   for the issuance of the second search warrant at Grimes.  I
25   considered that issue moot when I did my original Report and

U.S. v. Washington/Burgin - 20-CR-29

1    Recommendation.  Because I was finding that the second search

2    warrant was invalid based on the facts that have been

3    established in the evidentiary hearings.

4        The fourth issue relates to the stop of the defendant's

5    car on July 19th, 2019, and the seizure of phones from that

6    car.

7        Now, the government in its responding papers had

8    indicated that there was a valid vehicle and traffic stop of

9    Mr. Burgin's automobile.  There was no testimony in the

10   evidentiary hearings.  The testimony that I recall was that

11   when they went back to 56 Grimes after the nephew had been

12   arrested, they followed the automobile.  They saw Mr. Burgin

13   driving to the gas station which was in the same vicinity,

14   maybe even across the street from the AutoZone store.  He was

15   at the gasoline pumps and they came and they approached his

16   vehicle and asked him where he was coming from or where he

17   was going and they didn't like his answers and claimed his

18   answers were a lie.

19       Nowhere in the testimony of any of those, either the

20   sheriff's deputies, Webb didn't testify --

21       **MR. HARRINGTON:**  Judge, there's confusion here because

22   we're talking about a different stop.

23       **MAGISTRATE JUDGE SCHROEDER:**  We're not talking about the

24   gas station stop?

25       **MR. HARRINGTON:**  No.  We're talking about almost a year

U.S. v. Washington/Burgin - 20-CR-29

1  before.  The previous July Mr. Burgin was stopped out here on
2  the traffic circle and taken into custody and they
3  searched --

4      **MAGISTRATE JUDGE SCHROEDER:**  Oh, that's right.

5      **MR. HARRINGTON:**  -- his car.  Right.  And Mr. Lynch
6  withdrew that any evidence that from stop being offered and
7  we said we still need evidence on it because it shows up in
8  later warrants issues -- as a basis for later search warrants
9  for phones and other premises.

10     **MAGISTRATE JUDGE SCHROEDER:**  My question that I wanted
11 answered and reaffirmed was:  Was there ever a vehicle and
12 traffic violation issued to Mr. Burgin?

13     **MR. LYNCH:**  So, okay, so now we're -- just so we're
14 clear, we're referring now to the February 2020 stop, 2019 --
15 or --

16     **MAGISTRATE JUDGE SCHROEDER:**  July 19th --

17     **MR. LYNCH:**  July 19th, 2019?

18     **MAGISTRATE JUDGE SCHROEDER:**  -- 2019.

19     **MR. LYNCH:**  So that occurred what Mr. Harrington said,
20 out here, they detained Mr. --

21     **MAGISTRATE JUDGE SCHROEDER:**  Burgin.

22     **MR. LYNCH:**  -- Burgin.  He went back to BPD
23 headquarters.  We withdrew any evidence.  We're not, we're
24 not --

25     **MAGISTRATE JUDGE SCHROEDER:**  You took cell phones from

U.S. v. Washington/Burgin - 20-CR-29

1  the car.

2      **MR. LYNCH:**  Right.  And we said we're not going to use

3  that evidence.  So we withdrew our notice to the defendant

4  that we were going to use that.  So, therefore, we never had

5  a hearing on that issue.

6      **MAGISTRATE JUDGE SCHROEDER:**  Did they return the phones?

7      **MR. LYNCH:**  I don't know that they've even made a claim

8  for the return of the phones but I don't even think we've

9  accessed some of those phones.  There were many of them we

10  weren't accessed (sic).  So that one -- but if you're now

11  referring to the February 19th, 2020, stop at the Valero gas

12  station across the street from the AutoZone --

13      **MAGISTRATE JUDGE SCHROEDER:**  Well, wait.

14      Before -- I had indicated that that seems to still be a

15  viable issue raised in the supplemental filing:  Where it's

16  stated on behalf of Mr. Burgin that the stop of the

17  defendant's car on July 19, 2019, and the seizure of the

18  phones, even though the government has withdrawn the use of

19  this evidence, that a paragraph in Webb's affidavit for the

20  search warrant, 20-MJ-65, somehow or other is invalid.

21      And, so, all I'm asking is:  Is that still really an

22  issue since the government says it's not going to use --

23      **MR. LYNCH:**  Right.

24      **MAGISTRATE JUDGE SCHROEDER:**  -- the evidence?

25      **MR. LYNCH:**  That was our point.

U.S. v. Washington/Burgin - 20-CR-29

1      **MAGISTRATE JUDGE SCHROEDER:**  So why is that an issue,

2   Mr. Harrington?

3      **MR. HARRINGTON:**  Because it's used later in other search

4   warrants.

5      **MR. LYNCH:**  But I -- which one, Mr. Harrington?  Because

6   I don't remember anyone where we've used that.

7      **MR. THOMPSON:**  While he's doing that, Judge, just back

8   to the Court's question.

9      We've requested the phones be returned.  They haven't

10  been returned.

11     **MAGISTRATE JUDGE SCHROEDER:**  All right.  Seems to me if

12  the government has acknowledged it's not going to use the

13  phones, they should be returned as the property of Defendant

14  Burgin.

15     **MR. LYNCH:**  I don't remember the request being made but

16  we'll certainly take care of it.

17     **MAGISTRATE JUDGE SCHROEDER:**  All right.  So that becomes

18  a moot issue, correct?

19     **MR. THOMPSON:**  Right.

20     **MR. LYNCH:**  Correct.

21     **MAGISTRATE JUDGE SCHROEDER:**  Okay.

22     Then the Defendant Burgin also claims that the search

23  and seizure -- or the seizure and search of the cell phones

24  were based on an illegal car stop of February 19th, 2020.

25     **MR. LYNCH:**  Right.

U.S. v. Washington/Burgin - 20-CR-29

1    **MAGISTRATE JUDGE SCHROEDER:**  Which I found in my Report

2    and Recommendation.  That's the gas station stop.

3        **MR. LYNCH:**  Correct.

4        And in that regard, Judge, we agree, there was no

5    traffic violation.  But our argument from the beginning has

6    been they had probable cause to arrest Mr. Burgin that day.

7        **MAGISTRATE JUDGE SCHROEDER:**  What was the probable

8    cause?

9        **MR. LYNCH:**  Well, they had the informant who said --

10       **MAGISTRATE JUDGE SCHROEDER:**  Only, only the nephew.

11       **MR. LYNCH:**  No, remember what the informant said?  The

12   informant said:  I met with David Burgin.  David Burgin told

13   me that the cocaine was going to come from his nephew

14   Pierce -- from Pierce.  And they were then in communication

15   with -- the source was in communication with a Pierce.  They

16   said, hey, I've already gotten the kilos that are here at my

17   house, or wherever they were found.  I got them from Pierce

18   and Burgin.

19       Okay, that's one -- that's already some cocaine.

20       Then he says I'll set up a buy for another kilo.

21       **MAGISTRATE JUDGE SCHROEDER:**  Right.

22       **MR. LYNCH:**  Pierce delivers the, the cocaine to them.

23       Pierce had come from 56 Grimes which law enforcement

24   knew from other informants was being used by Burgin that

25   Washington also used it as a stash house.  They then see

U.S. v. Washington/Burgin - 20-CR-29

1  Burgin's vehicle there.  He then leaves.  Then they approach

2  him.  He lies to them and they take him into custody.  Now --

3      **MAGISTRATE JUDGE SCHROEDER:**  But what, what -- but they

4  didn't charge him with anything.

5      **MR. LYNCH:**  Okay.  But they don't have to charge him

6  with anything and that's what we -- no, Judge, we made that

7  point in our papers.  The subjective intent of the officer is

8  completely irrelevant.  The only issue before the Court --

9      **MAGISTRATE JUDGE SCHROEDER:**  I understand that.

10      **MR. LYNCH:**  The only issue the Court has to decide is

11  whether there was probable cause based on the information

12  provided.

13      **MAGISTRATE JUDGE SCHROEDER:**  And I said there wasn't --

14      **MR. LYNCH:**  Well --

15      **MAGISTRATE JUDGE SCHROEDER:**  -- because I didn't hear

16  any testimony or any evidence to indicate what the probable

17  cause was --

18      **MR. LYNCH:**  Judge, they could have --

19      **MAGISTRATE JUDGE SCHROEDER:**  -- for, for stopping him in

20  his automobile which was already stopped at the gas station

21  and seizing evidence from his automobile.

22      **MR. LYNCH:**  Well, no, they didn't seize evidence from

23  his automobile.

24      **MAGISTRATE JUDGE SCHROEDER:**  They took phones, didn't

25  they?

U.S. v. Washington/Burgin - 20-CR-29

1    **MR. LYNCH:**  They seized his automobile.  Then they got a

2  search warrant for the automobile.

3    **MAGISTRATE JUDGE SCHROEDER:**  Well, they seized the

4  entire automobile.

5    **MR. LYNCH:**  Correct, but --

6    **MAGISTRATE JUDGE SCHROEDER:**  Then there was the

7  so-called dog sniff, which is also a mystery because we never

8  had an affidavit --

9    **MR. LYNCH:**  Why would --

10    **MAGISTRATE JUDGE SCHROEDER:**  -- from the officer

11  indicating what the dog actually did.  The government

12  produced an affidavit about the dog's training but

13  mysteriously --

14    **MR. LYNCH:**  No --

15    **MAGISTRATE JUDGE SCHROEDER:**  -- couldn't find the other

16  evidence.

17    **MR. LYNCH:**  -- that's a different case.

18    I put the dog handler on.  The dog handler went through

19  exactly what happened.  That's a different case.  That's the

20  other case with Washington's vehicle.

21    This had to do with Burgin.  We put Bob Galbraith on.

22  Bob Galbraith testified regarding what exactly it occurred.

23    **MAGISTRATE JUDGE SCHROEDER:**  They didn't find any drugs

24  in the automobile.

25    **MR. LYNCH:**  Right.  No, they did not.

U.S. v. Washington/Burgin - 20-CR-29

1     **MAGISTRATE JUDGE SCHROEDER:**  So why did they seize the

2  phones?

3     **MR. LYNCH:**  Well, because he -- well, I mean, they had

4  evidence of his involvement in narcotics trafficking.  Phones

5  are --

6     **MAGISTRATE JUDGE SCHROEDER:**  Based on the February stop,

7  the February --

8     **MR. LYNCH:**  Yeah.

9     **MAGISTRATE JUDGE SCHROEDER:**  -- 19th --

10     **MR. LYNCH:**  Based on the informant's information and

11  everything else.  I mean, drug -- I mean, phones are tools of

12  drug trafficking.  And it was more than one phone.  It was

13  multiple phones.

14     **MR. HARRINGTON:**  Judge, but that --

15     **MAGISTRATE JUDGE SCHROEDER:**  I think they're

16  contesting -- wait.

17     **MR. HARRINGTON:**  Right.  Right.

18     **MAGISTRATE JUDGE SCHROEDER:**  I know they're contesting

19  2 out of 26 phones.  But that might be from the seizure at

20  Bennett Village.

21     **MR. LYNCH:**  So, I mean, you can -- they could have

22  arrested.

23     **MAGISTRATE JUDGE SCHROEDER:**  I know I'm mixing up.

24     **MR. LYNCH:**  I know.

25     But they could have arrested him for drug conspiracy.

U.S. v. Washington/Burgin - 20-CR-29

1    That's, that's my point, Judge.  That's probable cause.  They

2    had an informant.  They had a witness.  They had drugs on the

3    table.

4        **MAGISTRATE JUDGE SCHROEDER:**  But they didn't arrest him.

5        **MR. LYNCH:**  But whether they did or didn't -- the reason

6    why the courts have said you don't look at just what the

7    officer's intent is because otherwise you would have

8    individual officers who ultimately are going to decide:  I

9    thought there was probable cause, I didn't know there was

10   probable cause.  That's why it's an objective determination

11   by the Court to look at all the facts that are developed and

12   make an objective decision based on the law.

13       **MAGISTRATE JUDGE SCHROEDER:**  Which they did.

14       **MR. LYNCH:**  Not -- because, otherwise, you have rookie

15   officer who doesn't think he has probable cause and you have

16   veteran officer who does think there's probable cause and you

17   have inconsistent --

18       **MAGISTRATE JUDGE SCHROEDER:**  And I heard the testimony

19   of the witnesses and I concluded, after reviewing the

20   transcripts and citing to the transcripts, there was no

21   probable cause for the February 19th, 2020, automobile

22   search -- seizure of the automobile and then the search of

23   it.

24       **MR. HARRINGTON:**  Judge, that -- that leads us also into

25   the issue of the phone calls of Mr. Pierce and the

U.S. v. Washington/Burgin - 20-CR-29

1   confidential --

2       **MAGISTRATE JUDGE SCHROEDER:**  Confidential informant.

3       **MR. HARRINGTON:**  -- informant.  Which we presented

4   testimony to the Court and a different translation of it

5   which is far different than which Mr. Lynch wants to argue

6   about what was going on between Pierce and the confidential

7   informant.  So that needs to be reviewed, also.

8       **MAGISTRATE JUDGE SCHROEDER:**  All right.  Well, I just

9   want to make sure I'm covering what still remains to be

10  addressed.

11      The next claim was the seizure and search of the DVR

12  that was taken from 56 Grimes on February 19th, 2020,

13  pursuant to search warrant 20-MJ-55.

14      Why is that even to be treated as an issue if I rule

15  that everything on the second floor that was seized was

16  seized illegally?

17      **MR. HARRINGTON:**  For the same reason before as I argue

18  that the search warrant was invalid, okay, I'm arguing that

19  the DVR was not part of either search warrant.  They had no

20  authority to take it whether they were in there legally or

21  not legally.  Mr. Lynch argues differently.  Mr. Glaberson

22  argued differently.  But we want a decision from the Court

23  as to --

24      **MAGISTRATE JUDGE SCHROEDER:**  But isn't that argument --

25      **MR. HARRINGTON:**  -- whether --

U.S. v. Washington/Burgin - 20-CR-29

1    **MAGISTRATE JUDGE SCHROEDER:**  -- by both the government

2    and you moot by reason of my finding?

3    **MR. HARRINGTON:**  It is unless we get a crazy Second

4    Circuit.

5    **MAGISTRATE JUDGE SCHROEDER:**  All right.  I understand.

6    **MR. LYNCH:**  He says crazy.  I say correct decision from

7    the Second Circuit.

8    **MAGISTRATE JUDGE SCHROEDER:**  I'm not going to

9    characterize the Second Circuit.

10   **MR. HARRINGTON:**  I'm not afraid of the Second Circuit.

11   **MAGISTRATE JUDGE SCHROEDER:**  Now, there's also,

12   according to Defendant Burgin, the issue of 79 Brunswick,

13   the search there, claiming that the search warrant for the

14   79 Brunswick, which I believe is search warrant 20-MJ-35,

15   with specific emphasis on Paragraph 35 in that application or

16   that affidavit, that that's all based on what was determined

17   and learned from the illegal search at 56 Grimes and that the

18   defendant claims is all fruit of a poison tree, correct?

19   **MR. HARRINGTON:**  In part.  But, Judge, there's other

20   things -- and the Court has to look at it, exclude what

21   you've suppressed and look at it and see if you think, with

22   that stuff out of it, there's still probable cause that's

23   what we're asking the Court to make a finding.

24   **MAGISTRATE JUDGE SCHROEDER:**  Yeah, if I take Paragraph

25   35 out of the affidavit --

U.S. v. Washington/Burgin - 20-CR-29

1      **MR. LYNCH:**  Is there still --

2      **MAGISTRATE JUDGE SCHROEDER:**  -- whether there is

3  sufficient probable cause remaining as to the issuance of the

4  warrant.

5      **MR. LYNCH:**  Right.

6      **MAGISTRATE JUDGE SCHROEDER:**  Okay.  I just want to make

7  sure --

8      **MR. LYNCH:**  Yeah, we're all in agreement on that.

9      **MAGISTRATE JUDGE SCHROEDER:**  -- we're checking off all

10  of the issues that need to be further considered.

11      And the last one as to Defendant Burgin I have is

12  the August 25th, 2020, seizure of 26 cell phones, 18 from

13  79 Brunswick pursuant to search warrant issued based on the

14  56 Grimes events as set forth in Paragraph 12 of the

15  affidavit in support of that search warrant.

16      And then there is this second issue raised about

17  staleness, correct --

18      **MR. HARRINGTON:**  Right.

19      **MAGISTRATE JUDGE SCHROEDER:**  -- that's the issue?

20      **MR. LYNCH:**  Right.

21      **MAGISTRATE JUDGE SCHROEDER:**  Now, we have the *Smith* case

22  to also consider in the context of the search of phones.  And

23  I understand the position of both parties but I just want to

24  make sure that I'm not missing something.

25      The government asserts, rightfully, that the final

U.S. v. Washington/Burgin - 20-CR-29

1  decision of *Smith* by the Second Circuit that 31 days

2  presumptively is a delay in violation, under the facts of

3  that case, of Smith's Fourth Amendment rights.  And that even

4  though the phones were seized well before the *Smith* decision

5  and held by the government, the law enforcement personnel had

6  no way of knowing what the Second Circuit Court of Appeals

7  was going to rule in *Smith* and because they lack that

8  knowledge, there was no obligation to undertake an actual

9  search of the phones in a diligent efficacious manner.  And

10  that when the final decision came from the Second Circuit

11  talking about a presumption of 31 days being too long, within

12  a matter of 30 some days, August 30th or somewhere around

13  there --

14       **MR. LYNCH:**  August 25th.

15       **MAGISTRATE JUDGE SCHROEDER:**  -- August 25th, application

16  was made for a search warrant.

17       **MR. LYNCH:**  Right.  And I think the -- the other

18  argument we made, Judge, is their initial papers said stale,

19  the affidavit is stale.

20       Now they didn't cite *Smith* in their original papers.  I

21  raised that in my response that I filed in January of 2022.

22  I said it does not appear that they're making a *Smith* motion

23  because -- I apologize, Judge, just one second.

24       I have it in my notes.  So it's footnote 9 of my motion

25  response.  Okay.  So, in -- so this is January of 2022.  The

U.S. v. Washington/Burgin - 20-CR-29

1    defendant does not cite *United States v. Smith* which was

2    decided after the warrants were issued in this case.  So the

3    government has not addressed the reasonableness of the delay

4    in obtaining the warrants for cell phones seized in July of

5    2019.  So, they cite -- they just generally cite staleness.

6        So, their reply that they filed, I believe the next

7    month, February of 2022, they didn't address it in their

8    reply.  The defendants -- none of the defendants'

9    affidavits -- address the usefulness of any of these cell

10   phones to him.  I mean, quite frankly, 26 devices, I can't

11   imagine that any one was particularly of significance to him

12   when you have 26 cell phones when most people only have one.

13       But setting that aside, I don't think that Mr. Burgin

14   ever made a sufficient claim for a *Smith* motion and we took

15   his staleness argument as just being whether information

16   that's on a phone can be sought -- a search warrant can be

17   sought months after the item has been seized and whether that

18   information is now stale when we know that electronic

19   evidence and it's even set forth in the affidavit, electronic

20   evidence is much different than other types of evidence that

21   could be dissipated or could be gone from a house or some

22   location.  Here, electronic evidence stays in many forms on a

23   electronic device including in deleted areas and fragmented

24   areas and things like that.

25       So, I don't necessarily know that he's brought a *Smith*

U.S. v. Washington/Burgin - 20-CR-29

1  motion.  He's never cited *Smith* so how would the government

2  know that that's, in fact, what they're claiming?

3       **MAGISTRATE JUDGE SCHROEDER:**  Is it the government's

4  position that if the seizure of an electronic device is done

5  on the basis that the electronic device is an instrumentality

6  of criminal activity or a tool of criminal activity, that,

7  notwithstanding *Smith*, there's no requirement that there be a

8  diligent effort to search the contents of that evidence, that

9  phone, because it's, by itself, is evidence being held?

10      **MR. LYNCH:**  I think that is, I don't know that it -- I'm

11  not saying that wins the day every single time, Judge, I'm

12  not saying that.  But that is a critical factor because in

13  *Smith*, it was much different.  The item was not seized

14  because of a warrant.  It was seized in plain view.

15      **MAGISTRATE JUDGE SCHROEDER:**  Right.

16      **MR. LYNCH:**  And so --

17      **MAGISTRATE JUDGE SCHROEDER:**  On the Thruway.

18      **MR. LYNCH:**  Yeah.  And so this was much different.  I

19  mean, the original warrant in this case when we searched

20  79 Brunswick, the Court authorized the search of the item --

21  or the seizure of the items and the search of those items.

22      **MAGISTRATE JUDGE SCHROEDER:**  Which would cause *Smith* to

23  come into play because if the seizure -- I mean, if there was

24  to be a seizure and then a search, the search theoretically

25  under *Smith* should have been done diligently.

U.S. v. Washington/Burgin - 20-CR-29

1    **MR. LYNCH:**  There -- yes.  But that's only one factor.

2    **MAGISTRATE JUDGE SCHROEDER:**  No, I understand.

3    **MR. LYNCH:**  The one --

4    **MAGISTRATE JUDGE SCHROEDER:**  I understand there's --

5    **MR. LYNCH:**  Yeah.

6    **MAGISTRATE JUDGE SCHROEDER:**  -- four factors in *Smith*.

7    **MR. LYNCH:**  Yeah.

8    **MAGISTRATE JUDGE SCHROEDER:**  But I guess I still have

9    the question of if you seize something as an instrument of

10   criminal activity, like cell phones are as the courts have

11   held in drug cases, they're the tools of the trade.

12   **MR. LYNCH:**  Right.

13   **MAGISTRATE JUDGE SCHROEDER:**  So you seize that

14   instrument itself as a piece of evidence just like a gun.

15   **MR. LYNCH:**  Yeah, I mean, I definitely, if they're --

16   **MAGISTRATE JUDGE SCHROEDER:**  The only question I have

17   is:  Does that mean the government can sit on that evidence

18   ad infinitum before actually making a search of the phone?

19   **MR. LYNCH:**  Yes.  I think we could sit on it.  We may do

20   it at our own peril for the use of the actual item -- the

21   contents of that item but we could keep that item forever,

22   right.  I mean, a phone is evidence of drug trafficking.  If

23   a person has six phones in their car, I could argue, look it,

24   ladies and gentlemen, who else has six phones but a drug

25   dealer has six phones in his car, even if we never even get

U.S. v. Washington/Burgin - 20-CR-29

1  into the contents of them.

2      **MAGISTRATE JUDGE SCHROEDER:**  No, I understand.

3      **MR. LYNCH:**  Yeah.

4      **MAGISTRATE JUDGE SCHROEDER:**  The government's not

5  obligated to return evidence --

6      **MR. LYNCH:**  Correct.

7      **MAGISTRATE JUDGE SCHROEDER:**  -- of criminal activity.

8  My question is but does there come a time when the

9  government's got to take some action --

10      **MR. LYNCH:**  I think --

11      **MAGISTRATE JUDGE SCHROEDER:**  -- searching that.

12      **MR. LYNCH:**  I think the Second Circuit has indicated,

13  yes, we do have an obligation to take some efforts as one

14  factor that has to be examined.

15      **MAGISTRATE JUDGE SCHROEDER:**  Okay.

16      **MR. THOMPSON:**  Judge, could I just clarify a little

17  bit --

18      **MAGISTRATE JUDGE SCHROEDER:**  Certainly.

19      **MR. THOMPSON:**  -- on that?  It's a little bit of a

20  different issue.  It's not exactly what the Court was

21  addressing.  But we're talking 26 electronic devices.  We're

22  not talking about 26 cell phones.

23      **MAGISTRATE JUDGE SCHROEDER:**  You're talking about 2,

24  right?

25      **MR. THOMPSON:**  2.

U.S. v. Washington/Burgin - 20-CR-29

1    **MAGISTRATE JUDGE SCHROEDER:**  Item --

2    **MR. THOMPSON:**  Yes.

3    **MAGISTRATE JUDGE SCHROEDER:**  -- number seven and item

4  number eight.

5    **MR. THOMPSON:**  Right.  And there are computers and

6  there's other stuff.  When you say 26, Mr. Lynch said, you

7  know, that Mr. Burgin had 26 cell phones, he didn't.  That's

8  not accurate.  And it's a little bit different -- it's a

9  little bit difficult for us --

10    **MAGISTRATE JUDGE SCHROEDER:**  Well, 18 were seized from

11  the Brunswick address, 79 Brunswick, I believe 18 cell phones

12  were seized, 2 of which are allegedly --

13    **MR. THOMPSON:**  No, no.  No.

14    **UNIDENTIFIED SPEAKER:**  Your Honor --

15    **MR. LYNCH:**  Yeah, and I -- Judge, I, I, I, if -- I don't

16  doubt that Mr. -- I don't have that search warrant in front

17  of me, so I apologize, Judge.  I'm not sure.

18    **MAGISTRATE JUDGE SCHROEDER:**  Well, I was just going by

19  what was listed in the supplemental submissions.

20    **MR. THOMPSON:**  And we can clarify that in our

21  submissions to the Court, Judge.

22    The other thing on the question of delay, Judge, while

23  you're looking for that, is it's hard for us to make

24  particular allegations with respect to the delay of the

25  search on the devices because we never got any discovery with

U.S. v. Washington/Burgin - 20-CR-29

1  respect to those searches.

2      **MAGISTRATE JUDGE SCHROEDER:**  Okay.  Let me go back.  On

3  August 25th, 2020, 26 cell phones were seized, 18 came from

4  79 Brunswick.

5      **MR. THOMPSON:**  I think that's just a misstatement,

6  Judge.

7      **MAGISTRATE JUDGE SCHROEDER:**  Okay, that's what I read.

8      **MR. THOMPSON:**  Right.  I understand.

9      **MAGISTRATE JUDGE SCHROEDER:**  But as I further understand

10  it, on behalf of Defendant Burgin, it's only claimed that two

11  phones are involved.

12      **MR. GLABERSON:**  Your Honor --

13      **MAGISTRATE JUDGE SCHROEDER:**  Phones number seven and

14  number eight.

15      **MR. GLABERSON:**  -- that's related to Mr. Washington.

16      **MAGISTRATE JUDGE SCHROEDER:**  Which --

17      **MR. GLABERSON:**  Phones -- there were 13 devices.  That

18  search warrant 20-MJ-1137 authorized the digital search of 26

19  total devices and 13 of those devices came from 69 Bennett

20  Village Terrace and David Washington asserted that 2 of

21  those, seven -- number seven and number eight belonged to

22  him.

23      **MAGISTRATE JUDGE SCHROEDER:**  But in the Burgin papers on

24  the 79 Brunswick search, they're referring to search warrant

25  20-MJ-35 and Paragraph 35 in that affidavit.  I believe --

U.S. v. Washington/Burgin - 20-CR-29

1      **MR. GLABERSON:**  Yes, it was incorporated by reference.

2      **MAGISTRATE JUDGE SCHROEDER:**  And it's that search

3   warrant 20-MJ-35 that it's utilized to seize the cell phones,

4   18 of them from 79 Brunswick.  And that Paragraph 35

5   basically is referencing the events of what occurred at 56

6   Grimes.

7      **MR. THOMPSON:**  Yeah.

8      **MAGISTRATE JUDGE SCHROEDER:**  And defendant is saying if

9   you take out Paragraph 35, there's no probable cause

10   established for the issuance of search warrant 20-MJ-35.

11   That's what I understand the argument to be.

12      **MR. GLABERSON:**  Understood.  I was just clarifying with

13   respect to which devices they were talking about.

14      **MAGISTRATE JUDGE SCHROEDER:**  Okay.  Now, unfortunately,

15   we don't have Mr. Foti and Mr. Washington because I wanted to

16   address some issues there, to just kind of focus and narrow

17   as much as we could narrow things down.

18      So what I'm hearing today is that we need another

19   session like this but only for purposes of going through it

20   with the Washington issues.

21      **MR. LYNCH:**  And I think Mr. Harrington wants an

22   opportunity to respond.

23      The one thing I, I -- I just want to note for the record

24   today, Judge, the defendants approached us today asking for

25   additional time to respond -- to amplify their responses to

U.S. v. Washington/Burgin - 20-CR-29

1  some of our arguments but, otherwise, today Mr. Glaberson and

2  I were prepared to go forward with oral argument on all of

3  these motions today.

4      **MAGISTRATE JUDGE SCHROEDER:**  I understand.

5      **MR. LYNCH:**  Including Mr. Washington's and it's the --

6  Mr. Washington's attorney who didn't appear today, and then

7  Mr. Harrington's obviously has asked for additional time to

8  assist the Court.  And I just note the government's

9  preparedness for the proceedings.

10     **MAGISTRATE JUDGE SCHROEDER:**  I understand.

11     And just so Mr. Burgin understands -- and, of course,

12  the same will apply to Mr. Washington -- there are motions

13  pending on behalf of both defendants and the filing of those

14  motions automatically cause the speedy trial clock to stop

15  and to remain stopped until those motions have been finally

16  resolved.

17     And, therefore, the time until that resolution of

18  motions has occurred is to be excluded for purposes of the

19  time requirement set forth in the Speedy Trial Act.

20     And that exclusion of time is done and is hereby so done

21  pursuant to the provisions contained in Title 18 of the

22  United States Code Section 3161(h)(1)(D).

23     Correct, Mr. Harrington?

24     **MR. HARRINGTON:**  Yes, Judge.

25     **MAGISTRATE JUDGE SCHROEDER:**  Correct, Mr. Lynch?

U.S. v. Washington/Burgin - 20-CR-29

1    **MR. LYNCH:**  Yes, Judge.

2    **MAGISTRATE JUDGE SCHROEDER:**  All right.

3    **MR. LYNCH:**  I think --

4    **MAGISTRATE JUDGE SCHROEDER:**  So --

5    **MR. LYNCH:**  Yeah, I think we picked February 9th in the

6    morning, Judge.  I think it's -- as long as Ms. Guidotti

7    picks a time, we've already indicated we're all available.

8    **MAGISTRATE JUDGE SCHROEDER:**  What does my calendar look

9    like?

10    (WHEREUPON, a discussion was held off the record

11       between Judge Schroeder and courtroom deputy.)

12    **MAGISTRATE JUDGE SCHROEDER:**  Make sure Mr. Foti becomes

13    aware.

14    **MR. LYNCH:**  We asked him about his availability

15    specifically for that date.  He said he was available.

16    **MAGISTRATE JUDGE SCHROEDER:**  All right.

17    **MR. LYNCH:**  So, just so the Court's clear as to what

18    the -- just the mechanics of what's going to occur over the

19    next two weeks.

20    Mr. Harrington and Mr. Glaberson and Mr. Thompson and I

21    are going to meet next -- so the 30th, that's Tuesday, to

22    discuss the potential stipulation regarding certain facts.

23    By December 7th, which is -- or, I'm sorry, February 7th

24    which is Wednesday of the following week, Mr. Thompson and

25    Mr. Harrington will file any reply to the government's

U.S. v. Washington/Burgin - 20-CR-29

1   supplemental response.

2       And then we'll be here for oral argument on

3   February 9th.

4       **MAGISTRATE JUDGE SCHROEDER:**  Okay.  Now I've got a

5   couple of housekeeping matters to attend to.

6       There was to be an affidavit submitted on behalf of

7   Mr. Burgin, right?

8       **THE CLERK:**  Financial affidavit.

9       **MAGISTRATE JUDGE SCHROEDER:**  Financial affidavit.

10      **MR. HARRINGTON:**  Right.  That was a confusion between

11  Mr. Thompson and I, Judge.  We, we worked on it when you

12  appointed him but we got to review it --

13      **MAGISTRATE JUDGE SCHROEDER:**  Okay.

14      **MR. HARRINGTON:**  -- now to make sure it's the accurate.

15      **MAGISTRATE JUDGE SCHROEDER:**  Because there's not going

16  to be any payment made --

17      **MR. HARRINGTON:**  Right.

18      **MAGISTRATE JUDGE SCHROEDER:**  -- until that affidavit is

19  filed with the clerk's office.  So, I would suggest you get

20  it in forthwith.

21      Now, I don't want you to treat it as a sanction or a

22  criticism in any way but it does give me some leverage by

23  reason of the fact that the deadline wasn't met in this

24  context.

25      I have been searching diligently, as has my court

U.S. v. Washington/Burgin - 20-CR-29

1  deputy, to find an attorney to represent a defendant in a

2  collateral case arising out of the ***Fero case.

3        Mr. Rosenthal, is it?

4        **THE CLERK:**  Rosenthal.

5        **MAGISTRATE JUDGE SCHROEDER:**  Rosenthal.

6        **MR. LYNCH:**  I'm a witness on the ***Feros case, Judge,

7  so I'm not involved in that.

8        **MAGISTRATE JUDGE SCHROEDER:**  Without any success either

9  by way of attorneys being conflicted or not available.

10       And it's come down to this, Mr. Thompson.

11       **MR. THOMPSON:**  You --

12       **MAGISTRATE JUDGE SCHROEDER:**  I would like to assign you

13  as a member of the Criminal Justice Act panel of attorneys to

14  undertake the representation of Mr. Rows she know that you

15  will.  It's just a two-defendant case.  It's a trafficking

16  case but it's just two defendants.  Because we need to move

17  it on.  It's been pending now for a while and there are

18  speedy trial rights involved, at least for the codefendant.

19       **MR. THOMPSON:**  So, Judge, if I could --

20       **MAGISTRATE JUDGE SCHROEDER:**  I will give you a

21  reasonable amount of time, knowing how busy you are here, but

22  I've reached the point of desperation.

23       **MR. THOMPSON:**  If I could, Judge, I would like to, you

24  know, thank the Court for its faith in me and accept the

25  assignment provisionally at the moment.  And let me tell you

U.S. v. Washington/Burgin - 20-CR-29

1  why, Judge.

2      **MAGISTRATE JUDGE SCHROEDER:**  Sure.

3      **MR. THOMPSON:**  Because there is another case involving

4  the Feros matter that just resulted in an indictment that may

5  or may not require the appointment of Capital counsel.  By my

6  count, in this district, there are four -- well, there's six

7  qualified learned counsel for Capital cases.

8      **MAGISTRATE JUDGE SCHROEDER:**  Right.

9      **MR. THOMPSON:**  Two are in my firm.  Two are in

10  Mr. Harrington's firm but I don't think they're taking

11  Capital cases.  And two have never taken a Capital case.

12      So I think there's going to be a determination very

13  shortly, like within a week or so, as to whether or not

14  there's going to be a need for appointment of Capital counsel

15  in that case.  If there is, I'd like to remain available for

16  that because of the very limited options within this

17  district.  If --

18      **MAGISTRATE JUDGE SCHROEDER:**  Now let me ask this --

19      **MR. THOMPSON:**  Yes.

20      **MAGISTRATE JUDGE SCHROEDER:**  Is that Capital case going

21  to be one where it's going -- there's going to be a need for

22  assigning counsel or is it one where there will be retained

23  counsel?

24      **MR. THOMPSON:**  There would be --

25      **MAGISTRATE JUDGE SCHROEDER:**  Because if it's assigned

U.S. v. Washington/Burgin - 20-CR-29

1   counsel, there are the two public defenders in Rochester who
2   are qualified as learned counsel in a death case.  They're
3   obviously engaged right now in the Gendron case but since
4   you're indicating this particular Capital case is just at the
5   embryonic stages --
6       MR. THOMPSON:  Right.
7       MAGISTRATE JUDGE SCHROEDER:  -- it may be that those two
8   public defenders would be available, if it's to be an
9   assigned case.
10      MR. THOMPSON:  I think the magistrate judge has been
11  asked to make a determination within a week or so as to
12  whether or not there's a need for appointment of Capital
13  counsel.  There are theoretically four Capital defendants in
14  that case.  The government could say we're never going to
15  pursue Capital prosecution with respect to one or two or
16  three of those defendants and there might be only one left
17  out there.  Right now, there are four that could qualify.
18      So that's the concern, I guess.  I think that's going to
19  be resolved fairly expeditiously.  It's already been
20  presented to the magistrate and he's asked for further --
21      MAGISTRATE JUDGE SCHROEDER:  Is that --
22      MR. THOMPSON:  -- filing.
23      MAGISTRATE JUDGE SCHROEDER:  Is that in front of
24  Magistrate Judge Pedersen?
25      MR. THOMPSON:  McCarthy.

U.S. v. Washington/Burgin - 20-CR-29

1    **MAGISTRATE JUDGE SCHROEDER:** Oh.

2    **MR. THOMPSON:** Judge McCarthy.

3    **MAGISTRATE JUDGE SCHROEDER:** Oh, so, it's here?

4    **MR. THOMPSON:** It's here in Buffalo, yes.

5    **MAGISTRATE JUDGE SCHROEDER:** Here in Buffalo.

6    **MR. THOMPSON:** So that's my only reservation, Judge.

7    And I have to look at any potential conflicts. I'm

8    actually involved in another kind of offshoot of Feros

9    prosecution but I think it's all by itself. I don't think it

10   creates a conflict for anything else. I just want to check

11   it to be sure.

12   **MAGISTRATE JUDGE SCHROEDER:** Certainly.

13   **MR. THOMPSON:** But with those reservations, I'd be happy

14   to accept it, Judge. I'd just like to figure out if there's

15   going to be a need for Capital counsel and, if so, I'd like

16   to be available for that purpose. If that's irrelevant, then

17   I'm in.

18   **MAGISTRATE JUDGE SCHROEDER:** All right. We have

19   Mr. Rosenthal on tomorrow.

20   **THE CLERK:** Today.

21   **MAGISTRATE JUDGE SCHROEDER:** Today.

22   **MR. THOMPSON:** You want me to hang around.

23   **MAGISTRATE JUDGE SCHROEDER:** If you wouldn't mind. What

24   time do we have it scheduled for?

25   **THE CLERK:** 1:30.

U.S. v. Washington/Burgin - 20-CR-29

1    **MAGISTRATE JUDGE SCHROEDER:**  1:30.  All right.

2    Do we have a bail issue pending?

3    **MR. LYNCH:**  Not on this case.

4    **MAGISTRATE JUDGE SCHROEDER:**  Okay.

5    **MR. THOMPSON:**  Right.  Right.

6    **MR. LYNCH:**  That's all been resolved.

7    **MAGISTRATE JUDGE SCHROEDER:**  I'm sorry.

8    **MR. LYNCH:**  That's all resolved.

9    **MAGISTRATE JUDGE SCHROEDER:**  It's been resolved.

10   **MR. LYNCH:**  Yeah.

11   **MAGISTRATE JUDGE SCHROEDER:**  So we've addressed

12   everything that's pending that needs to be finally addressed.

13   **MR. LYNCH:**  Correct.

14   **MR. THOMPSON:**  Judge, I had another suggestion.  I mean,

15   this might mess up our schedule, maybe it's a bad suggestion.

16   But you said you wanted to address issues with respect

17   to Mr. Washington, as well.  And I don't know if you want to

18   address them at the same time along with Mr. Burgin's issues

19   or you want to do them separately.

20   I'm ordering a copy of this transcript anyway.  If the

21   issues were in the transcript, I'd provide it to Mr. Foti and

22   he could be prepared to address those issues sooner maybe

23   than having him come back to court and reviewing those with

24   him.  I don't know.  Just my thought.

25   **MAGISTRATE JUDGE SCHROEDER:**  Well, I think that's an

U.S. v. Washington/Burgin - 20-CR-29

1  excellent suggestion.  So let me just make a record of what I
2  was going to address and Mr. Foti can then be better
3  prepared --
4      **MR. THOMPSON:**  Very well.
5      **MAGISTRATE JUDGE SCHROEDER:**  -- for February 9th.
6      As I view the submissions made on behalf of the
7  Defendant Washington, I concluded these were the outstanding
8  claims being made by that defendant.
9      One, that the government has not provided Rule 12 notice
10  to the defendant.  That appears at Page 6 of the Washington
11  submission.
12      Two, that the defendant is "awaiting receipt of digital
13  data from all cell phones".  That also is stated on Page 6 of
14  the Washington submission.
15      Three, there are numerous suppression motions as set
16  forth on Pages 8 and 9 and 10, which the defendant states
17  that five of the suppression motions have been resolved.  See
18  docket 514.  And my Report and Recommendation with respect to
19  the search of the Washington Cadillac which I had recommended
20  suppression of evidence and the 56 Grimes Street search.
21      The fourth issue is the search of the Ford Ranger
22  automobile of Mr. Washington at 69 Bennett Village.  I did
23  hold an evidentiary hearing on that and I did submit a Report
24  and Recommendation recommending denial of the defendant's
25  motion.  It all centered on the issue of consent as to

U.S. v. Washington/Burgin - 20-CR-29

1    whether consent had been validly given by Mr. Washington to
2    the special agent when they were sitting in a car outside of
3    69 Bennett Village.

4        The fifth claim, as I understand it, is the defendant
5    says that there are presently pending five motions.  That's
6    found on Page 15 of the submission which relate to the
7    February 2020 searches, that three of those motions relate to
8    real property -- which I'm assuming he meant houses or
9    residences -- and two motions relate to the cell phones that
10   were seized from 69 Bennett Village.  The further claim of
11   the Defendant Washington is that the three property searches
12   are all based on the events that occurred at 56 Grimes on
13   February 19th, 2020, and, therefore, those subsequent
14   searches being based on the Grimes events were really
15   products or fruits of a poisoned tree.  That's basically set
16   forth on Page 16 of the submission.

17       The question I raise, as I previously did at the start
18   here this morning, is it appears to me that Defendant
19   Washington is attempting to vicariously adopt the Fourth
20   Amendment rights of the Defendant Burgin by claiming that 56
21   Grimes was a violation of the Fourth Amendment, albeit a
22   violation of Mr. Burgin's rights; nevertheless, that
23   violation poisoned the tree which produced fruit for the
24   search at properties in which Mr. Washington had an interest
25   and, therefore, applying the principle of the fruit of the

U.S. v. Washington/Burgin - 20-CR-29

1    poison tree, those searches are invalid.  And that's set

2    forth, once again, on Page 16 of the submission.

3         And then Defendant Washington also raises the claim that

4    there was delay in getting the search warrants for all of the

5    cell phones that were seized in which Mr. Washington had an

6    interest.  And that raises the issue that I've previously

7    addressed here this morning of the *Smith* case and the concept

8    of the cell phones being considered instruments or tools of

9    criminal activity per se, and, therefore, there's a

10   difference in that context from those phones and what the

11   factual situation was in the *Smith* case.

12        In *Smith*, as I understand it, there was the vehicle and

13   traffic stop made on the New York State Thruway by the state

14   trooper and during the course of that vehicle and traffic

15   stop, the trooper noticed what I'll call an iPad or a tablet

16   and had some question or issue about what was contained in

17   that, whether there might be some kind of contraband and

18   that, as a result, Smith was taken to the trooper barracks

19   and the tablet or the iPad or the device was seized -- or the

20   device was seized.

21        And the sole purpose, as the Court found, for the taking

22   of the device was to determine whether there was evidence of

23   criminal activity involved, had nothing to do with the

24   vehicle and traffic charge.  And, therefore, if that was the

25   purpose of seizing that, coupled with the fact that in this

U.S. v. Washington/Burgin - 20-CR-29

 1  day and age, electronic devices contain our entire lives in

 2  most instances by what we store on them.

 3      There was a question as to whether the authorities were

 4  diligent in undertaking the application for a search warrant

 5  authorizing the search of that device and, if they were not,

 6  then the evidence taken from the device should be suppressed.

 7      And it was in the *Smith* case, then, that the presumption

 8  of failure to take diligent action was created, using a time

 9  period of 31 days, under those facts.

10      So that's what I'm anticipating Mr. Foti to address.

11      **MR. THOMPSON:**  One other CJA matter, Judge, in order to

12  expedite our schedule here and hopefully comply with our

13  schedule, can I have authority to request an expedited

14  transcript?

15      **MAGISTRATE JUDGE SCHROEDER:**  I have no hesitancy to

16  grant that.  I just don't know if there's any kind of freeze

17  because of the budgetary problems.

18      **MR. THOMPSON:**  Okay.  I'll request it.  The problem --

19      **MAGISTRATE JUDGE SCHROEDER:**  If it's available that way,

20  I'll authorize it.

21      **MR. THOMPSON:**  Okay, very well.

22      **MAGISTRATE JUDGE SCHROEDER:**  I just don't know if the

23  Congressional budgetary situation has put any kind of a hold

24  on those kinds of expenditures.

25      **MR. THOMPSON:**  My concern is if it's not expedited,

U.S. v. Washington/Burgin - 20-CR-29

1   we're not going to have it before February 9th.  So I'm going

2   to try to get it as quickly as I can.

3   **MAGISTRATE JUDGE SCHROEDER:**  I understand.  All right.

4   Thank you, everyone.

5   (WHEREUPON, proceedings adjourned.)

6

7

8   *           *           *

9   <u>**CERTIFICATE OF TRANSCRIBER**</u>

10

11   In accordance with 28, U.S.C., 753(b), I

12   certify that this is a true and correct record of proceedings

13   from the official audio recording of the

14   proceedings held in the United States District Court

15   for the Western District of New York before the

16   Honorable H. Kenneth Schroeder, Jr. on January 25, 2024.

17

18

19   <u>S/ Diane S. Martens</u>

20   Diane S. Martens
     Transcriber

21

22

23

24

25