**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                    **Plaintiff,**

                                                      **20-CR-29A**

 **v.**

**DAVID BURGIN,**

                    **Defendant.**
_____


### SECOND SUPPLEMENTAL REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions.


### PRELIMINARY STATEMENT

        This matter was remanded to the undersigned by the Hon. Richard J.

Arcara for the sole purpose of making a determination of standing on the part of the

defendant, David Burgin ("the defendant"), by setting forth detailed "factual findings and

conclusions regarding defendant's expectation of privacy in the contested areas of 56

Grimes Street."  Dkt. #756, p. 6.

## DISCUSSION AND ANALYSIS

The defendant  originally filed a motion wherein he sought, among other things, "suppression of evidence for violations of his Fourth Amendment rights under the U.S. Constitution."  Dkt. #282, p. 1, ¶ 2.  In support of this motion, the defendant filed an affidavit wherein he states that 56 Grimes Street, Buffalo, New York "is and was owned by [his] mother, Karen Copeland in February 2020."  Dkt. #282-2, p. 2, ¶ 3.  He further states in that affidavit that he "also had access to, use of and control of the property for a number of purposes on that date [February 2020] and for years before that." Dkt. #282-2, pp. 2-3, ¶ 4.  In paragraph 6 of that affidavit, he also states that he "had authority to allow the use of the first floor and upstairs [of the building] to others." Dkt. #282-2, p. 3, ¶ 6.  In paragraph 7 of his affidavit, the defendant states that he "had keys to the building and the locks on the apartments in the building" and that "within [his] family, [he was] considered the manager of the property."  Dkt. #282-2, p. 3.

As to the two apartments on the second floor in 56 Grimes, the defendant states that the "front apartment was rented out to a person who lived at the property" and that he "collected the rent for this apartment from this person personally." Dkt. #282-2, p. 3, ¶ 8.  The apartment in the rear of the second floor, although not permanently occupied in February 2020, was utilized by the defendant in that he "stayed in this apartment during the daytime or overnight on occasions over the years [he] had control of the property" and he "often had clothes and furniture at the property."

2

He also "paid the monthly gas and cable bills for this apartment" and "also regularly had overnight guests stay with [him] there."  Dkt. #282-2, pp. 9-10, ¶ 9.

In the second floor space between the front apartment and the rear apartment, the defendant "maintained an office for [his] previous collection business," and in that area "there were items, such as a computer, current mail, and documents from [his] previous business" which "were seized from the second floor when the search warrant in this case was executed."  Dkt. #282-2, p. 4, ¶ 9.

Lastly the defendant states in this affidavit that he "had personally made improvements and arranged for third party improvements on the first and second floors in the building since [his] mother has owned the property" and that he "could come and go from these premises as [he] pleased" and that he "did so two or three times a week for at least the last 10 years."  Dkt. #282-2, p. 4, ¶s 11 and 12.

In his affidavit sworn to October 13, 2021, the defendant merely mentions the attic in the premises located at 56 Grimes Street as being "a half floor" with miscellaneous odd items and heating and air conditioning piping in the attic."  Dkt. #282-2, p. 4, ¶ 10.  In his affidavit sworn to August 23, 2022, the defendant states that his "control of, unlimited access to, and the use of the attic at 56 Grimes Street was the same as the rest of the building."

3

He further states that the "access to the attic was by two doors, one in the front apartment and one in the back apartment which [he] used. The attic door in the front was locked and [they] did not have a key for it. The one in the back apartment did have a key." The defendant "stored business records from a previous business and other personal records of [his] in the attic for years." Lastly, the defendant states that "there was no access to the attic from the back of the stairway from the first floor to the second floor. The stairway ended at the back apartment" and "there was no access to the attic from the common areas on the second floor." Dkt. #449, p. 3, ¶s 14,15, 16, 17 and 18.

The government filed a response to defendant Burgin's suppression motions in the form of a memorandum but did not submit any affidavits or other evidence refuting the claims made by the defendant in Dkt. #s 282-2 and 449 as set forth above with respect to his use and control of the property at 56 Grimes Street, Buffalo, New York. In objecting to the defendant's standing to suppress evidence, the government merely argues that the defendant "made no claim as to any expectation of privacy in the attic or in the stairs to the attic, where the drugs, currency, and firearms were located." Dkt. #322, p. 17. However, this claim was dissipated by the defendant's affidavit of August 23, 2022. Dkt. #449. The government argues, but submits no evidence to establish, that the attic and stairway to the attic at 56 Grimes, Buffalo, New York constituted a "common area accessible to all tenants and the landlord" thereby requiring denial of the defendant's motion to suppress. Dkt. #322, pp. 17-18.

In evaluating all of the facts and circumstances made known to this Court previously and at this time, I concluded and found, and once again hereby reiterate, that the unrefuted statements set forth in his affidavits sworn to October 13, 2021 and August 23, 2022 were and are legally sufficient to create a reasonable expectation of privacy by the defendant in the entire premises of 56 Grimes Street, *i.e.*, the first floor, the second floor rear apartment, the business area between the front and rear apartments on the second floor and that of the attic and stairways in the building and warranted the holding of an evidentiary hearing on the issues. Since the government attempted to create a factual dispute as to the accessibility of the attic and the stairways in the building, I concluded and once again conclude that this "factual dispute" existed because of the defendant's affidavit statements and the government's legal averments and that the issues could only be resolved by an evidentiary hearing. *See United States v. Mathurin*, 148 F.3d 68 (2d Cir. 1998).

### The Evidentiary Hearing

The defendant testified on January 11, 2023 and a transcript of his testimony was prepared and filed with the Court on March 20, 2023 as Dkt. #544.[1] The following is a listing of the defendant's sworn testimony relating to the issue of whether he had a reasonable expectation of privacy in the premises located at 56 Grimes Street,

---

[1] References to this transcript are designated by "T" followed by the page number.

Buffalo, New York on February 19, 2020.

1. The defendant's mother owned 56 Grimes Street, Buffalo, New York since 2000.  T. pp. 4, 61.

2. The defendant was "generally in charge of the property" (56 Grimes).  T. p 7.

3. The gas bill for the property at 56 Grimes Street is in his name.  T. p. 7.

4. On the second floor of 56 Grimes Street are two apartments and an office.  The front apartment is rented to Ray Lowman; the middle area is an office; and the rear apartment.  T. p. 8.

5. Over a period of time the defendant made the premises more secure by changing "the lower windows" into "block windows;" "changed the doors;" put in "metal security doors" and "bricked off the back door."  T. p. 9.

6. The office on the second floor between the front and rear apartments was "separated" from the apartments by way of a "locked door" and walls.  T. p. 11.

7. The defendant "stayed" and "used" the second floor rear apartment since 2012.  He stayed in the apartment a "couple of times a week" and "slept overnight there."  T. pp. 11-23.

8. The defendant was the only one who used the office on the second floor.  T. p. 12.

9. The defendant installed a "security camera" at the top of the stairs on the second floor which faced down the stairs toward the bottom of the stairs on the first floor.  T. p. 16.

10. Defendant's Exhibit Q, photo 15 was "taken from inside of the office area and showing (sic) into the rear apartment."  This photo also depicts a "desk and a computer" which belonged to the defendant.  T. pp. 34-35.

11. Defendant's Exhibit Q, photo 15 also depicts an open doorway which leads into the rear apartment and this door was "kept locked."  T. pp. 35-36.

12. Defendant's Exhibit Q, photo 18 is a photo of the kitchen area in the rear second floor apartment depicting a door leading to the attic and that door "is the only access to the attic" and that door is "locked."  T. p. 38.  The defendant had keys to that door. T. p. 45.

13. Defendant's Exhibit R, photo 4 depicts the attic where the defendant "stored [his] office equipment from a prior business" and a "lot of [his] files and paperwork and documents and stuff was (sic) kept in the attic."  T. p. 39.

14. Defendant's Exhibit R, photo 5 depicts the "upper front kitchen" and shows a door leading to the attic which was "always locked" and "it was never used."  T. pp. 39, 45.

15. Defendant's Exhibit R, photo 5 also depicts the upper front apartment living room including a door that leads to the attic which door "was always locked" and there were no keys to it and [they] "never used it."  T. p. 39.

16. Defendant's Exhibit T – diagram of the second floor areas drawn by the defendant.  This diagram indicates the locked door separating the front apartment and the business office and the locked door separating the business office from the rear apartment.  T. p. 43.

17. Defendant's Exhibit 2 depicts rear apartment with the words "locked door" to the apartment.  It also depicts another "locked door" with an arrow pointing to the "landing back hall."  This is the "rear steps entry to [the rear] apartment."  T. p. 44.  Also depicted in the notation "locked door attic" which is the access from the rear apartment into the attic.  The defendant had the keys to that door.  There was no access to the attic from the front apartment into the attic.  T. pp. 44-45.

Cross-Examination of the Defendant:

18. "Not everyone [in his family] had keys to [his] upper rear apartment." T. p. 62.

19. Mr. Lowman, the tenant in the second floor front apartment, "had no access to the downstairs" in 56 Grimes Street. He could not "access the lower front." The "only way he could access the lower front is if one of us let him in the lower front." T. p. 71.

20. The office area on the second floor "was locked from the front apartment." T. p. 79.

21. "A lot of [the defendant's] stuff was stored in the attic." He had "files in the attic; office equipment in the attic, computers in the attic." T. pp. 90-91.

22. He helped remodel the building; he had keys;" he handled scheduling of parties in the building to "make sure there wasn't no (sic) conflictions." T. p. 92.

**Credibility of the Defendant on the Issue of Privacy**

I observed the demeanor of the defendant during his testimony, both on direct and cross-examination, and found no reason to disbelieve him as to his occupancy of the second floor rear apartment at 56 Grimes in February of 2020 and his efforts to maintain and control the use of the entire structure located at 56 Grimes Street, including his efforts to make the areas within the building by use of "locked doors" and a security camera more secure from intruders.

I also found and do once again find that his testimony relating to the repairs and improvements made to the building as described above and his paying the gas bill for the premises at 56 Grimes Street, Buffalo, New York to be credible.

**Expectation of Privacy – Burden of Proof**

In order to establish a violation of his Fourth Amendment rights, the defendant must meet a two-fold requirement, "first that [he has] exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable'." *Katz v. United States*, 389 U.S. 347, 361 (1967); *Rakas v. Illinois*, 439 U.S. 128, 140-41; *see also United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991).

The fact that the defendant's mother owned the property at 56 Grimes Street, Buffalo, New York does not prevent the defendant from asserting his rights under the Fourth Amendment. It is well established that a person need not always have a recognized common-law property interest in a place searched to be able to claim a reasonable expectation of privacy in it. *Byrd v. United States*, 584 U.S. 395, 404 (2018). As the Supreme Court said in *Jones v. United States*, 362 U.S. 257, 267 (1960), "No just interest of the government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when

its fruits are proposed to be used against him."  The affidavits of the defendant sworn to October 13, 2021 (Dkt. #282-2) and August 23, 2022 (Dkt. #449) and the sworn testimony given by the defendant in the evidentiary hearing (Dkt. #544) clearly established that he was entitled to have the merits of his motion to suppress adjudicated.  *Id.* at 267.

The testimony of the defendant at the evidentiary hearing as described above clearly established that he had control of the premises at 56 Grimes Street and the right to exclude others as well as the fact that he frequently "stayed" in the second floor rear apartment.  His control of the property was also established in his testimony that doors were kept "locked" including those to the attic and that he possessed the keys to the doors so locked except for one attic door which was always locked and not used.  The government has not provided any substantive evidence to contradict or refute the testimony of the defendant on these issues.  At best, the government attempted to show in a speculative way that some of the locks in the doors in question used "skeleton keys," thereby implying, I assume, that such doors could be easily opened by anyone and therefore it was unreasonable for the defendant to have an expectation of privacy to those areas protected by the locked doors.  This "speculation" by the government was and is entirely rejected.

The testimony of the defendant on the issue of his use and control of the property at 56 Grimes Street, Buffalo, New York in February of 2020 clearly and

10

substantially met the requirements to establish a reasonable expectation of privacy in the second floor and attic areas of 56 Grimes Street.  *See Rakas v. Illinois*, 439 U.S. 128, 143, n. 12.  More specifically, the testimony of the defendant as outlined above provided the necessary elements to establish or "exhibited an actual (subjective) expectation of privacy and second, that [his] expectation [was and is] one that society is prepared to recognize as 'reasonable'."  *Katz v. United States*, 389 U.S. 347, 361 (1967); *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991).

## CONCLUSION

Based on the foregoing and in keeping with Judge Arcara's remand (Dkt. #756), I make the following findings and reiterations previously made by me during the course of proceedings in the case relating to the issues of standing by the defendant to make a motion to suppress the use of the evidence seized from 56 Grimes Street, Buffalo, New York on February 19, 2020 and whether he had a reasonable expectation of privacy in the premises searched at 56 Grimes Street, Buffalo, New York.

1. The affidavits of the defendant sworn to on October 13, 2021 (Dkt. #282-2) and August 23, 2022 (Dkt. #449) were legally sufficient to establish standing in the defendant to make a motion to suppress the use of this evidence seized from 56 Grimes Street, Buffalo, New York and were and are legally sufficient to require an evidentiary hearing on his motion to suppress the use of the evidence seized from 56 Grimes Street, Buffalo, New York.

11

2. The testimony of the defendant at the evidentiary hearing, which I accepted as uncontradicted by the government and true as given by the defendant, clearly established that the defendant had a reasonable expectation of privacy, for Fourth Amendment purposes, in the second floor areas and the attic located at 56 Grimes Street, Buffalo, New York.

3. When I made my statements on the record on January 25, 2024 (Dkt. #741-1) as to the defendant's standing to make a motion to suppress the use of evidence seized from 56 Grimes Street on February 19, 2020, *i.e.*, that he had standing, and that he had a reasonable expectation of privacy in the second floor areas and attic located at 56 Grimes Street, Buffalo, New York, they were made based on the knowledge that I had obtained from reading the defendant's affidavits and my notes taken during the evidentiary hearing conducted on January 11, 2023 when the defendant testified.

Therefore, based on the foregoing, it is recommended that these findings made by this Court be accepted and that the government's objections relating to the issues of standing and expectation of privacy be in all respects denied.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this

12

Report, Recommendation and Order in accordance with the above statute,

Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments,

case law and/or evidentiary material which could have been, but were not presented to

the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v.*

*Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of**

**such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*,

474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.

1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for

the Western District of New York, "written objections shall specifically identify the

portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority."  **Failure to**

**comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to**

**consider the objection.**


DATED:      Buffalo, New York
            February 28, 2025


                              *S/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**

14